IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PLAINTIFF JOSEPH WARD, by his next friend FRANCES BOURLIOT; | § § § | |
| PLAINTIFF MICHAEL ANDERSON, by his next friend PHIL CAMPBELL; | § § § | |
| PLAINTIFF ISAAC LEMELLE, by his next friend MARK WESTENHOVER; | § § § | CIVIL ACTION NO. 1:16-cv-00917 |
| PLAINTIFF Disability Rights Texas, | § § | |
| Plaintiffs, | § § § | **42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | § § | |
| DR. JOHN HELLERSTEDT, in his official capacity as Commissioner of the Texas Department of State Health Services, | § § § § | **CLASS ACTION** |
| Defendant. | § | |

Plaintiffs Joseph Ward, Isaac Lemelle, and Michael Anderson, who appear individually and on behalf of all others similarly situated, and Plaintiff Disability Rights Texas, hereby complain of Dr. John Hellerstedt, Commissioner of the Texas Department of State Health Services, and allege as follows:

**INTRODUCTION**

1.      When an individual charged with a crime is found to be incompetent to stand trial, Texas law requires that the Texas Department of State Health Services ("the Department" or "DSHS") provide the incompetent detainee with treatment aimed at restoring the individual to competency.  Texas law further requires that this specialized competency-restoration treatment must be provided by the Department, and the treatment can only be provided in a state mental

health facility or, under certain circumstances and with proper supervision, in a community-based outpatient program overseen by the Department.[1]

2.      Because the Department routinely fails or refuses to provide competency-restoration treatment within a reasonable period of time from the date of the state criminal-court order requiring such treatment, individuals adjudged incompetent are placed on a waiting list until a bed at a Department mental health facility becomes available.  It is not uncommon for these individuals, after the issuance of the order committing them to treatment, to wait in jail for weeks or even months until the Department accepts custody.  Often, these incompetent detainees—despite being presumed innocent—end up being confined in jail prior to adjudication and pending treatment longer than if they had been found guilty of the alleged crime.

3.      This situation is not new.  The Department created its waiting list for individuals found incompetent to stand trial and ordered to a Department mental health facility in 2006.  Since 2006, the number of criminal defendants found incompetent and ordered for restoration treatment has only increased.

4.      As a result of the delays caused by the Department, individuals with mental illness languish in county jails without appropriate mental health treatment until a bed becomes available at a Department mental health facility.  Because jails are not designed or administered to provide competency-restoration treatment or for the psychiatric needs of individuals with mental illness, Plaintiffs receive little or no meaningful competency-restoration treatment while they wait for a bed at a Department facility.  As such, individuals with mental illness suffer needless deterioration

---

[1] In 2013, the Texas Legislature appropriated money for two pilot jail-based competency restoration programs.  *See* Acts 2013, 83rd Leg., ch. 797 (S.B. 1475), § 2, eff. Sept. 1, 2013.  As of the date of this filing, no jail-based competency-restoration program has been established.  Even if such a program is established, the Department will still fund and operate the program.

of their mental health as they wait in jails, frequently in prolonged isolation, for weeks and months before they receive the competency-restoration services Defendant is responsible for providing.

5.      The delays caused by the Department violate the due process rights of these incompetent detainees as guaranteed by the Fourteenth Amendment.  Defendant has a duty to accept and treat mentally incompetent detainees within a reasonable period of time, which must be measured in days, not weeks or months.  Defendant's failure to provide timely restoration treatment, however, forces Plaintiffs and members of the Class they represent to wait weeks and months in county jails for court-ordered competency restoration services that Defendant and his Department are statutorily required to provide.  Accordingly, Plaintiffs seek a declaration of their rights and an order enjoining Defendant from violating their rights.

## JURISDICTION AND VENUE

6.      This civil action is authorized by 42 U.S.C. § 1983 to redress the deprivation under color of law of rights guaranteed by the United States Constitution.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8.      Plaintiff Joseph Ward is a defendant in a criminal case in the 351st Judicial District Court in Harris County, Texas.  On or about February 17, 2016, Mr. Ward was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  Despite the criminal court's order, DSHS has not allowed Harris County to transfer Mr. Ward to a state mental health facility, and, as a result, he continues to be confined in the Harris County Jail.  Mr. Ward does not receive competency-restoration treatment in Jail and has been waiting to be transferred

to a state mental health facility for competency treatment for over twenty-two weeks.  Plaintiff Joseph Ward's current mental state limits his ability to protect his legal interests.  As such, a next friend is necessary to represent his interests.  Plaintiff Ward's defense attorney, Frances Bourliot, has volunteered and agreed to serve as Plaintiff Ward's next friend.

9.      Plaintiff Isaac Lemelle is a defendant in a criminal case in the 147th Judicial District Court in Travis County, Texas.  On or about March 30, 2016, Mr. Lemelle was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  The order also required the Sheriff to transport Mr. Lemelle to a state mental health facility.  Despite the criminal court's order, DSHS has not allowed Travis County to transfer Mr. Lemelle to a state mental health facility, and, as a result, he continues to be confined in the Travis County Jail. Mr. Lemelle does not receive competency-restoration treatment in Jail and has been waiting to be transferred to a state mental health facility for competency treatment for approximately 21 weeks.  Plaintiff Lemelle's current mental state limits his ability to protect his legal interests.  As such, a next friend is necessary to represent his interests.  Plaintiff Lemelle's defense attorney, Mark Westenhover, has volunteered and agreed to serve as Plaintiff Lemelle's next friend.

10.      Plaintiff Michael Anderson is a defendant in a criminal case in the 299th Judicial District Court in Travis County, Texas.  On or about April 18, 2016, Mr. Anderson was found incompetent to stand trial and ordered to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  The order also required the Sheriff to transport Mr. Anderson to a state mental health facility.  Despite the criminal court's order, DSHS has not allowed Travis County to transfer Mr. Anderson to a state mental health facility, and, as a result, he continues to be confined in the Travis County Jail. Mr. Anderson

does not receive competency-restoration treatment in Jail and has been waiting to be transferred to a state mental health facility for competency treatment for approximately 13 weeks.  Plaintiff Anderson's current mental state limits his ability to protect his legal interests.  As such, a next friend is necessary to represent his interests.  Plaintiff Anderson's defense attorney, Phil Campbell, has volunteered and agreed to serve as Plaintiff Anderson's next friend.

11.     Plaintiff Disability Rights Texas ("DRTX") is an independent, private, non-profit agency, created by federal law and designated by the Governor of Texas as the federal protection and advocacy ("P&A") system for Texas.  DRTX has the authority under federal law to pursue legal, administrative, and other appropriate remedies on behalf of Texans with disabilities, including those with mental illness, to redress violations of their rights, including advocacy to implement changes in the policies, procedures, and practices of systems that impact persons with mental illness.  42 U.S.C. § 10805(a)(1)(B).  DRTX brings this action for declaratory and prospective injunctive relief to require Defendant to change his agency's policies, procedures, and practices to ensure that all persons who have been found incompetent to stand trial receive the prompt competency-restoration treatment to which they are entitled by law.

12.     DRTX's governing board ("Board"), in accordance with 42 U.S.C. § 0805(c)(1)(B); 42 U.S.C. § 15044(a); *see also* 42 C.F.R. § 51.22(b)(2), is composed of members who broadly represent, or are knowledgeable about, the needs of the clients with disabilities served by the P&A system.  DRTX's Board includes nine (9) individuals who are persons with disabilities, six (6) individuals who are family members of persons with disabilities, and one (1) person who is a provider of disability-related services.  The DRTX Board is responsible for planning, designing, and implementing activities necessary to carry out DRTX's federal mandate. 42 U.S.C. § 10805(2)(A) & (B).  Additionally, DRTX has an Advisory Council; sixty-six percent

of the Advisory Council's members either have a mental illness or are family members of persons with a mental illness. DRTX's Board and Advisory Council establish DRTX's priorities for representation, and oversee and influence the activities that DRTX undertakes in order to meet the requirements of its federal authorizing legislation. 42 U.S.C. § 10805(a)(6)(B).

13.     DRTX also provides an opportunity for persons with disabilities to comment on its priorities and activities, and has a grievance procedure for clients to "assure that individuals with mental illness have full access to the services of the system." 42 U.S.C. § 10805(a)(8) and (9); 42 U.S.C. § 15044(a). As such, DRTX represents persons with mental illness and provides them the means by which they can protect their collective interests.

14.     Further, DRTX has expended and continues to expend resources advocating on behalf of individuals found incompetent to stand trial, but who have been denied competency-restoration treatment, by representing individual clients and by advocating at the State and local level for alternatives to hospital-based competency-restoration treatment. Through this work, DRTX has received complaints from hundreds of detainees in the Texas county jails who have been found incompetent to stand trial and have waited for weeks or months to be transferred to a state hospital for competency-restoration treatment. Each of these clients and individuals, including the Plaintiffs, is a member of DRTX and has suffered, or is continuing to suffer, an injury that would allow him or her to bring suit in his or her own right.

15.     The interests DRTX seeks to protect are germane to its purpose of advocating for and protecting the legal rights of all Texans with disabilities. Neither the claims asserted nor the declaratory and injunctive relief requested requires the participation of the individual members in this suit. The benefits of the relief sought will necessarily inure to DRTX's members who are in need of competency-restoration treatment.

16.    Defendant Dr. John Hellerstedt is currently the duly appointed Commissioner of the Texas Department of State Health Services and has been delegated the administration of that agency.   As Commissioner, Defendant Hellerstedt is ultimately responsible for ensuring that DSHS is in full compliance with federal and state law, as well as agency rules, regulations, and policies.   Defendant Hellerstedt is responsible for "administering human services programs regarding mental health, including: administering and coordinating mental health services at the local and state level; operating the state's mental health facilities," and "designat[ing] the state hospitals to which persons with mental illness from each district shall be admitted." TEX. HEALTH & SAFETY CODE ANN. § 1001.072 and §552.001.   Defendant Hellerstedt is sued in his official capacity and may be served with process at the Department of State Health Services, 1100 West 49th Street, Austin, Texas 78756.

## CLASS ACTION ALLLEGATIONS

17.    Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated as members of the following proposed plaintiff class:

> All persons who are now, or will be in the future, charged with a crime in the State of Texas, and: (a) who are ordered to receive competency restoration services at a Texas DSHS facility; (b) who are waiting in jail for those services; and (c) for whom DSHS receives the court order.

18.    Plaintiffs seek class-wide declaratory and injunctive relief pursuant to Rule 23(b)(2).

19.    While the precise number of Class Members is not known to Plaintiffs with certainty because the number necessarily fluctuates, on information and belief, Plaintiffs estimate that there are approximately 280 individuals at present.  An exact number of current Class members

is known to Defendant and can be determined through discovery; as for potential future Class Members, that number is indeterminable.

20.     The Class Plaintiffs' claims are typical of the claims of all members of the Class because the individual Plaintiffs have all been adjudicated, or will be adjudicated, to be incompetent to stand trial and are, or will be, confined in jail while waiting for competency-restoration treatment at a Department mental health facility.  Plaintiffs and all members of the Class have similarly suffered harm, or will suffer harm in the future, arising from Defendant's actions and inaction.

21.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  These common legal and factual questions include:

Whether Defendant has failed to provide competency-restoration treatment to Plaintiffs and other Class Members in a timely manner;

Whether Defendant's failure to admit individuals with mental illness to the DSHS's mental health facilities for competency restoration purposes in a reasonably timely manner violates the Fourteenth Amendment to the United States Constitution;

Whether Plaintiffs and other Class Members are entitled to the declaratory and injunctive relief they seek; and

Whether Plaintiffs and other Class Members are entitled to an award of reasonable attorney's fees and costs.

22.     Class Plaintiffs will fairly and adequately represent and protect the interests of the Class.  There are no conflicts of interest between the Class Plaintiffs and the other members of the Class.  The Class members will vigorously prosecute this action on behalf of the Class.  The Class Plaintiffs are represented by competent counsel with considerable skill and experience in civil rights and mental health litigation, who will vigorously prosecute this case on behalf of the Class.

23.     Defendant has acted or failed or refused to act on grounds generally applicable to the entire Class.

24.     The claims asserted herein are capable of repetition while evading review.  There is a continuing and substantial public interest in these matters, justifying declaratory and injunctive relief in favor of Plaintiffs and the Class.

25.     This suit may be maintained as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure because Plaintiffs and other members of the Class seek declaratory and injunctive relief, and all of the necessary factors of numerosity, commonality, typicality, and adequacy are present.

26.     A class action is the best available method for adjudication of these legal issues because individual litigation of these claims would be impracticable and would be unduly burdensome to the courts.  Further, this suit may be maintained as a class action because common questions of law and fact predominate over questions affecting only individual class members, and individual litigation would increase the likelihood of inconsistent or contradictory judgments.  A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## FACTUAL ALLEGATIONS

27.     Defendant and his Department, through their actions and inaction, knowingly cause incompetent detainees to be incarcerated for weeks or months without providing them the treatment needed to restore their competency.

**A.      Defendant's duty to timely admit mentally incompetent detainees to a DSHS facility for competency restoration services**

28.     Under state and federal law, individuals who lack the ability to understand the nature of the criminal court proceedings against them may not be tried.

29.    Article 46B of the Texas Code of Criminal Procedure sets forth the procedures that Texas courts must follow when a criminal defendant's mental competency is challenged during criminal proceedings.

30.    A person is incompetent to stand trial if he or she does not have "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding," or "a rational as well as factual understanding of the proceedings against the person."  TEX. CODE CRIM. PROC. ANN. arts. 46B.003(a)(1)&(2).

31.    "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial."  *Id.,* art. 46B.004(a).  "If the court determines that there is evidence to support a finding of incompetence, the court . . . shall stay all other proceedings in the case."  *Id.,* art. 46B.004(d).  "If the defendant is found incompetent to stand trial, the court shall proceed under Subchapter D."  *Id.*

32.    Pursuant to Subchapter D, aricle 46B.071, the court, on a determination that a criminal defendant is incompetent to stand trial, shall either commit the defendant to a mental health facility designated by the Department of State Health Services under 46B.073, or release the defendant on bail subject to conditions under 46B.072.  *Id.,* art. 46B.071.

33.    For a defendant not released on bail, "[t]he court shall commit a defendant . . . to a mental health facility or residential care facility for a period not to exceed 60 days (misdemeanor) or 120 days (felony) *for further examination and treatment toward the specific objective of attaining competency to stand trial*."  *Id.,* art. 46B.073(b) (emphasis added).

34.    If a defendant is charged with a "violent offense," as listed in article 17.032(a), other than an assault, or the indictment alleges an affirmative finding that a deadly weapon was used during the commission of a felony, "the court shall enter an order committing the defendant

to the maximum security unit [MSU] of any facility designated by the department . . ..”  *Id.,* art. 46B.073(c).  If the defendant is not charged with one of the enumerated offenses, “the court shall enter an order committing the defendant to a mental health facility or residential care facility . . ..” *Id.,* art. 46B.073(d).

35.     An order committing the defendant for restoration of competency “must place the defendant in the custody of the sheriff for transportation to the facility in which the defendant is to receive treatment for purposes of competency restoration.”  *Id.,* art. 46B.075.

36.     Not later than the date of the order of commitment, the court must send a copy of the order to the facility to which the defendant is committed.  *Id.,* art. 46B.076(a).

37.     The facility to which the defendant is committed must: develop an individual program of treatment; assess and evaluate whether the defendant will obtain competency in the foreseeable future; and report to the court and local mental health or mental retardation authority on defendant’s progress toward achieving competency.  *Id.,* art. 46B.077(a).

38.     Not later than the 15th day before the date on which the restoration period is to expire, the head of the facility must so notify the court that the restoration period is about to expire. *Id.,* art. 46B.079(a).  Further, the head of the facility must also “promptly” notify the court when the defendant has obtained competency to stand trial or upon a determination that the defendant will not attain competency in the foreseeable future.  *Id.,* art. 46B.079(b).

39.     On the return of the defendant to the court, the court must make a determination as to the defendant’s competency to stand trial.  The court must make this determination not later than the 20th day after the court received the notice from the head of the facility required by article 46B.079.  *Id.,* art. 46B.084(a).  If the defendant is found competent to stand trial, criminal

11

proceedings may be resumed; if the defendant is found incompetent to stand trial, the court may determine whether the defendant should be subject to civil commitment.

**B.      County jails are unable to provide competency-restoration services to individuals found incompetent to stand trial**

40.      County jails in Texas are inappropriate settings for the care and treatment of individuals with mental illness or intellectual disabilities (formerly called "mental retardation"). Jails are not designed to be therapeutic—they are inherently punitive, and as such are not appropriate settings in which to provide treatment aimed at restoring a person to competency.

41.      Correctional facilities, particularly facilities designed for short-term detention, do not have the staffing, funding, or capabilities to provide proper care and treatment for individuals with significant mental health needs.

42.      Detainees who are found incompetent to stand trial are often the most severely mentally ill in Texas jail settings.

43.      Most Texas jails do not have the ability to provide even basic psychiatric stabilization and management.  As a result, many detainees with serious mental illness are harmed by the lack of adequate treatment as manifested by either increased symptoms of their underlying psychiatric disorder or lack of improvement regarding their current symptoms.  By refusing to timely take custody of incompetent detainees, Defendant and his Department cause such persons to be confined in county jails under conditions nearly certain to exacerbate their mental illness.

44.      Because county jails are often unable to provide even basic mental health treatment, incompetent detainees frequently end up between a rock and a hard place: either they are housed in the general jail population—often with convicted offenders—or they are placed in solitary confinement, which causes their mental health to further deteriorate.  This deterioration conflicts

with the State's interest in prompt evaluation and treatment so that such persons may be brought to trial.

45.     Besides struggling to provide even basic mental health care, county jails in Texas do not have the specific services necessary to restore individuals to competency to stand trial, such as the most current medications, identification of specific social needs to restore and maintain competency, and training specific to the restoration of competency.  In contrast, state mental health facilities are specifically designed to provide inpatient treatment to restore incompetent detainees to competence, thereby enabling them to stand trial.

46.     Nevertheless, Defendant knowingly, intentionally, and deliberately refuses to accept individuals found incompetent to stand trial into state mental health facilities, in violation of the requirements of Chapter 46B of the Texas Code of Criminal Procedure, the orders of the criminal courts, and the U.S. Constitution.

**C.     Defendant and his agency have failed to provide individuals found incompetent to stand trial and ordered to a Department mental health facility with competency restoration services in a timely manner**

47.     According to a 2014 Joint Report by the National Sheriff's Association and the Treatment Advocacy Center, "Texas is among the states with the lowest number of public psychiatric beds and among the stingiest states in per capita mental health spending."

48.     In June of 2014, the number of incompetent detainees waiting to be transferred to a state mental health facility was about 170; by February of 2016, the number had risen to more than 380.  By February 2016, incompetent detainees were waiting an average of 41 days in local jails.  As of April 1, 2016, the longest wait time for a non-maximum security bed was 275 days—almost nine months.  According to the Department, as of April 1, 2016, the average wait time for a maximum security bed was 122 days.  Currently, about 283 individuals are waiting in county

jails for a maximum security bed, and of those individuals, about 246 have been waiting longer than 21 days.  The individual who has been waiting in jail for a maximum security bed the longest has been waiting about 321 days.  As for the wait list for a non-maximum security bed, there are currently about 96 individuals waiting in jail for such a bed, and of those 96, about 4 have been waiting longer than 21 days.  The individual who has been waiting in jail the longest for a non-maximum security bed has been waiting 34 days.

49.    According to a May 13, 2016 investigative report by ABC-13, state statistics going back to 2006 show that the number of incompetent detainees waiting in jails for competency-restoration treatment "has never been this long," and that the number of individuals on the wait list has grown by "20% in the last six months."

50.    The delay in receiving competency-restoration treatment necessarily extends the time within which an individual can be tried once restored to competency.

51.    Because incompetent criminal defendants have not been convicted of any crime, they have an interest in freedom from incarceration, and a liberty interest in receiving restorative treatment.  Because such incompetent detainees must be provided with restorative treatment, lack of funds, staff, or facilities cannot justify the Defendant's failure to provide the treatment.

52.    As a direct and proximate result of the foregoing, the individual Plaintiffs and the Class will continue to be deprived of their liberty rights without due process of law, in violation of their constitutional rights.

53.    Plaintiff Joseph Ward is a defendant in a criminal case in the 351st Judicial District Court of Harris County, Texas.  On or about February 17, 2016, Mr. Ward was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  Despite the

criminal court's order, DSHS has not allowed Harris County to transfer Mr. Ward to a state mental health facility, and, as a result, he continues to be confined in the Harris County Jail. Mr. Ward does not receive competency-restoration treatment in Jail and has been waiting to be transferred to a state mental health facility for competency treatment for over 22 weeks.

54.     Mr. Ward has been diagnosed with schizoaffective disorder, HIV, epilepsy, asthma, and hypertension. Harris County Jail staff note that Mr. Ward has a history of neurocognitive impairment. In February 2016, during a mental health assessment, staff noted Mr. Ward's confusion and inability to remember information such as street names, location, and names of doctors. Staff noted that "competency restoration may be unlikely or slow based on current clinical presentation of the assessment."

55.     Mr. Ward has a long psychiatric history and previous incarcerations where he has been found incompetent to stand trial. During this recent incarceration, Mr. Ward requested, and currently voluntarily takes, his psychotropic medications; however, he continues to report command auditory hallucinations as recently as May of 2016.

56.     Plaintiff Isaac Lemelle is a defendant in a criminal case in the 147th Judicial District Court in Travis County, Texas. On or about March 30, 2016, Mr. Lemelle was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Lemelle to the state mental health facility. Despite the criminal court's order, DSHS has not allowed Travis County to transfer Mr. Lemelle to a state mental health facility, and, as a result, he continues to be confined in the Travis County Jail. Mr. Lemelle does not receive competency-restoration treatment in Jail.

57.     Mr. Lemelle is diagnosed with unspecified schizophrenia and other psychotic disorders and antisocial personality disorder. The Travis County Jail has classified his mental health needs as severe. He has a long history of mental illness, and was first treated by the Austin Travis County Mental Health Authority in 2008, at age thirteen.

58.     During his current incarceration, Mr. Lemelle has exhibited numerous symptoms and behaviors as a result of his mental illness, including throwing urine and smearing feces, behaviors which have required his placement in the Jail's psychiatric lockdown units in a single cell.  Individuals in psychiatric lockdown are permitted outside of their cell in the dayroom for one hour a day.  They are not guaranteed any time outdoors.  Jail personnel are required to conduct visual checks every 30 minutes.  Mr. Lemelle has also required protective restraints.

59.     On February 23, 2016, while Mr. Lemelle was in jail waiting to be found incompetent to stand trial, officers were notified that Mr. Lemelle stated he wanted to kill himself and may have swallowed a razor.  While attempting to place Mr. Lemelle in a restraint chair to examine his mouth for a razor, and to transport him to an isolation cell, Mr. Lemelle spit at a corrections officer.   This incident led to the additional charge of harassment of a public servant being pressed against Mr. Lemelle.  Following this incident, Mr. Lemelle was transported to a Full Suicide Precautions ("FSP") unit, where he was placed in a rubber cell and provided only a smock as clothing.  In FSP units, Jail staff are required to conduct 15 minute visual checks.  Medical and psychiatric evaluations and meetings are conducted through a food chute, i.e., a small opening on the door of each individual cell that is used to pass food to the individuals.  Mr.  Lemelle has also been accused of approximately fifteen (15) rule violations (on four separate occasions) that required review by the Travis County Sheriff's Office disciplinary board.

60.     Plaintiff Michael Anderson is a defendant in a criminal case in the 299th Judicial District Court, Travis County, Texas.  On or about April 18, 2016, Mr. Anderson was found incompetent to stand trial and ordered to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  The order also required the Sheriff to transport Mr. Anderson to the state mental health facility.  Despite the criminal court's order, DSHS has not allowed Travis County to transfer Mr. Anderson to a state mental health facility and, as a result, he continues to be confined in the Travis County Jail.  Mr. Anderson receives no competency-restoration treatment in Jail.

61.     Mr. Anderson has been diagnosed with schizophrenic disorder, an intellectual disability, schizoaffective disorder, and diabetes.  He has a long history of mental illness and has been treated by the Austin Travis County Mental Health Authority since 1993.

62.     While incarcerated, Mr. Anderson has exhibited symptoms of and behaviors related to his mental illness.  Records by the Jail counselor indicate that Mr. Anderson has exhibited incoherent thought processes and delusional content and thought processes.  As recently as June 2016, records show that Mr. Anderson urinates on himself and in his cell.  Following this incident, Mr. Anderson was placed in a single cell, where Jail staff are required to conduct visual checks every 30 minutes.

## CAUSE OF ACTION
### Fourteenth Amendment to the U.S. Constitution

63.     The allegations contained in paragraphs 1 through 62 above are incorporated herein.

64.     The Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

65.     Criminal defendants who have not been convicted and have been adjudicated incompetent to stand trial have liberty interests in freedom from incarceration and in receiving competency-restoration treatment.

66.     Due process requires that the nature and duration of confinement must bear a reasonable relation to the purpose for which an individual is confined.

67.     Once an individual is found unable to aid and assist in his or her own defense, the only lawful purpose for confinement is to provide treatment so as to return him or her to competency.

68.     County jails do not have the resources or expertise to provide the restorative treatment required by the U.S. Constitution.

69.     No legitimate state interest justifies the confinement of mentally incompetent criminal defendants in county jails for months on end.   The nature and duration of their incarceration bear no reasonable relation to the restorative purpose for which the court has committed those individuals to treatment.

70.     The Class Plaintiffs and the other members of the Class are entitled to an order of the Court declaring that, by requiring mentally incompetent defendants to remain in county jails for protracted periods, and by failing to provide restorative treatment in a reasonable timely manner, Defendant has violated the Fourteenth Amendment due process rights of the Plaintiffs and the other Class members.

71.     Unless enjoined by the Court, Defendant will continue to violate the constitutional rights of the Plaintiffs and the other Class members.   The Plaintiffs and the other Class members are therefore entitled to an order of the Court enjoining Defendant from further violations of the

Plaintiffs' rights to due process in relation to their continued confinement while awaiting restorative treatment at a DSHS mental health facility.

## ATTORNEY'S FEES

72.     Plaintiffs are entitled to recover their attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

THEREFORE: Plaintiffs respectfully request this Court to:

A.      Certify the Class, as defined above;

B.      Enter an Order declaring that, by requiring defendants found incompetent to stand trial to remain in county jails for protracted periods, and by failing to provide restorative treatment in a reasonably timely manner, Defendant is depriving Plaintiffs and Class Members of their due process rights under the Fourteenth Amendment to the United States Constitution;

C.      Issue preliminary and permanent injunctive relief restraining Defendant from violating the Fourteenth Amendment to the United States Constitution in relation to the confinement of individuals awaiting competency-restoration treatment;

D.      Award Plaintiffs their reasonable attorney's fees and costs; and

E.      Grant all such other relief as the Court may deem just and proper.

Respectfully submitted,

BETH MITCHELL
State Bar No. 00784613

PETER HOFER
State Bar No. 09777275

CHRISTINA HERRERO
State Bar No. 24080185

DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)
bmitchell@drtx.org
phofer@drtx.org
cherrero@drtx.org

COTY MEIBEYER
State Bar No. 24085469

DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691 (Phone)
(713) 974-7695 (Fax)
cmeibeyer@drtx.org

ATTORNEYS FOR PLAINTIFFS