IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH WARD, by his next friend FRANCES BOURLIOT; | § § § | |
| MICHAEL ANDERSON, by his next friend PHIL CAMPBELL; | § § § | |
| ISAAC LEMELLE, by his next friend MARK WESTENHOVER; | § § § | |
| MARC LAWSON, by his next friend KRISTA CHACONA; | § § § | |
| JENNIFER LAMPKIN, by her next friend ELSIE CRAVEN; | § § § | CIVIL ACTION NO. 1:16-cv-00917-LY |
| ALEXANDER SOTO; and | § § | |
| MORGAN ARESHCHENKO, by her next friend JUANITA WILLIAMS, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| DR. JOHN HELLERSTEDT, in his official capacity as Commissioner of the Texas Department of State Health Services, | § § § § | **CLASS ACTION** |
| Defendant. | § § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT
FOR INJUNCTIVE AND DECLARATORY RELIEF**

Pursuant to Federal Rules of Civil Procedure 15(a)(1)(B), Plaintiffs Joseph Ward, Michael Anderson, Isaac Lemelle, Marc Lawson, and Jennifer Lampkin, who appear individually and on behalf of all others similarly situated, hereby file their First Amended Complaint against Dr. John Hellerstedt, Commissioner of the Texas Department of State Health Services, and allege as follows:

## INTRODUCTION

1.      When an individual charged with a crime is found to be incompetent to stand trial, Texas law requires that the Texas Department of State Health Services ("the Department" or "DSHS") provide the incompetent detainee with treatment aimed at restoring the individual to competency.  Texas law further requires that this specialized competency restoration treatment must be provided by the Department, and the treatment can only be provided in a state mental health facility or, under certain circumstances and with proper supervision, in a community-based outpatient program overseen by the Department.[1]

2.      When an individual charged with a crime is found not guilty by reason of insanity, and the court determines that the offense of which the person was acquitted involved dangerous conduct, Texas law requires that the court commit the insanity acquittee to a facility designated by the Department for evaluation of the person's present mental condition and for treatment.  These services can only be provided by the Department.  Texas law states that the insanity acquittee cannot remain in jail awaiting transfer to a facility designated by the Department for a period longer than 14 days.

3.      Because the Department's facilities are full, the Department refuses to accept custody of those ordered to its care and instead places persons found incompetent to stand trial and persons found not guilty by reason of insanity on a waiting list until a bed at a Department mental health facility becomes available.  It is not uncommon for these individuals, after the issuance of the order committing them to the Department's facilities, to wait in jail for months until the Department accepts custody.

---

[1] In 2013, the Texas Legislature appropriated money for two pilot jail-based competency restoration programs.  *See* Acts 2013, 83rd Leg., ch. 797 (S.B. 1475), § 2, eff. Sept. 1, 2013.  As of the date of this filing, no jail-based competency-restoration program has been established.  Even if such a program is established, the Department will still fund and operate the program.

4.      Often, incompetent detainees—despite being presumed innocent—end up being incarcerated in jail prior to adjudication and pending treatment longer than if they had been found guilty of the alleged crime.  In addition, insanity acquittees—despite being acquitted—also end up being incarcerated in jail for months after an adjudication that absolves their criminal responsibility.

5.      This situation is not new.  The Department created its waiting list for individuals found incompetent to stand trial or found not guilty by reason of insanity and ordered to a Department mental health facility in 2006.  Since 2006, the number of criminal defendants found incompetent or not guilty by reason of insanity and ordered to a Department facility for evaluation and/or treatment has only increased.

6.      As a result of the delays caused by the Department, incompetent detainees and insanity acquittees languish in county jails absent a criminal conviction until a bed becomes available at a Department mental health facility.  Additionally, Texas jails are not designed or administered to provide either competency restoration treatment for incompetent detainees or evaluation and/or treatment services for the psychiatric needs of insanity acquittees, leaving Plaintiffs with no meaningful competency restoration or evaluation and treatment while they wait for a bed at a Department facility.  As such, incompetent detainees and insanity acquittees suffer needless deterioration of their mental health as they wait in jails, frequently in prolonged isolation, for weeks and months before they receive the services Defendant is responsible for providing.

7.      The delays caused by the Department violate the due process rights of incompetent detainees and insanity acquittees as guaranteed by the Fourteenth Amendment.  Defendant has a duty to accept and treat detainees within a reasonable period of time, which must be measured in days, not weeks or months.  For insanity acquittees, Texas law specifically mandates that such

persons not remain in jail in excess of 14 days.  Defendant's failure to timely accept transfer of

incompetent detainees and insanity acquittees to its facilities and to provide timely restoration and

evaluative treatment, however, forces Plaintiffs and members of the Classes they represent to

remain incarcerated for weeks and months in county jails absent criminal convictions and without

any of the  court-ordered competency restoration treatment or evaluation and/or treatment services

that Defendant and his Department are statutorily required to provide.  Accordingly, Plaintiffs seek

a declaration of their rights and an order enjoining Defendant from violating their rights.

## JURISDICTION AND VENUE

8.     This civil action is authorized by 42 U.S.C. § 1983 to redress the deprivation under

color of law of rights guaranteed by the United States Constitution.  This Court has jurisdiction

over this action pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights).

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

10.     Plaintiff Joseph Ward is a defendant in a criminal case in the 351st Judicial District

Court in Harris County, Texas.  On or about February 17, 2016, Mr. Ward was found incompetent

to stand trial and was ordered to be committed to a mental health facility for further examination

and treatment toward the specific objective of attaining competency to stand trial.  Despite the

criminal court's order, the Department has not allowed Harris County to transfer Mr. Ward to a

state mental health facility, and, as a result, he continues to be incarcerated in the Harris County

Jail.  Mr. Ward does not receive competency restoration treatment in Jail and has been waiting to

be transferred to a state mental health facility for competency treatment for over 27 weeks.

Plaintiff Joseph Ward's current mental state limits his ability to protect his legal interests.  As such,

a next friend is necessary to represent his interests.  Plaintiff Ward's defense attorney, Frances Bourliot, has volunteered and agreed to serve as Plaintiff Ward's next friend.

11.     Plaintiff Michael Anderson is a defendant in a criminal case in the 299th Judicial District Court in Travis County, Texas.  On or about April 18, 2016, Mr. Anderson was found incompetent to stand trial and ordered to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  The order also required the Sheriff to transport Mr. Anderson to a state mental health facility.  Despite the criminal court's order, the Department has not allowed Travis County to transfer Mr. Anderson to a state mental health facility, and, as a result, he continues to be incarcerated in the Travis County Jail. Mr. Anderson does not receive competency-restoration treatment in Jail and has been waiting to be transferred to a state mental health facility for competency treatment for approximately 19 weeks.  Plaintiff Anderson's current mental state limits his ability to protect his legal interests.  As such, a next friend is necessary to represent his interests.  Plaintiff Anderson's defense attorney, Phil Campbell, has volunteered and agreed to serve as Plaintiff Anderson's next friend.

12.     Plaintiff Isaac Lemelle is a defendant in a criminal case in the 147th Judicial District Court in Travis County, Texas.  On or about March 30, 2016, Mr. Lemelle was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  The order also required the Sheriff to transport Mr. Lemelle to a state mental health facility.  Despite the criminal court's order, the Department has not allowed Travis County to transfer Mr. Lemelle to a state mental health facility, and, as a result, he continues to be incarcerated in the Travis County Jail. Mr. Lemelle does not receive competency-restoration treatment in Jail and has been waiting to be transferred to a state mental health facility for competency treatment for approximately 21 weeks.

Plaintiff Lemelle's current mental state limits his ability to protect his legal interests.  As such, a next friend is necessary to represent his interests.  Plaintiff Lemelle's defense attorney, Mark Westenhover, has volunteered and agreed to serve as Plaintiff Lemelle's next friend.

13.    Plaintiff Marc Lawson is a defendant in a criminal case in the 390th Judicial District Court in Travis County, Texas.  On or about May 11, 2016, Mr. Lawson was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment towards the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Lawson to a state mental health facility.  Despite the criminal court's order, the Department has not allowed Travis County to transfer Mr. Lawson to a state mental health facility, and, as a result, he continues to be incarcerated in the Travis County Jail. Mr. Lawson does not receive competency restoration treatment in Jail and has been waiting to be transferred to a state mental health facility for competency treatment for approximately 15 weeks. Plaintiff Lawson's current mental state limits his ability to protect his legal interests.  As such, a next friend is necessary to represent his interests.  Plaintiff Lawson's defense attorney, Krista Chacona, has volunteered and agreed to serve as Plaintiff Lawson's next friend.

14.    Plaintiff Jennifer Lampkin is a defendant in a criminal case in the 403rd Judicial District Court in Travis County, Texas.  On or about April 6, 2016, Ms. Lampkin was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment towards the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Ms. Lampkin to a state mental health facility. Despite the criminal court's order, the Department has not allowed Travis County to transfer Ms. Lampkin to its state mental health facility, and, as a result, she continues to be incarcerated in the Travis County Jail.  Ms. Lampkin does not receive competency restoration treatment in Jail and

has been waiting to be transferred to a state mental health facility for competency treatment for approximately 19 weeks.  Plaintiff Lampkin's current mental state limits her ability to protect her legal interests.  As such, a next friend is necessary to represent her interests.  Plaintiff Lampkin's defense attorney, Elsie Craven, has volunteered and agreed to serve as Plaintiff Lampkin's next friend.

15.    Plaintiff Alexander Soto was a defendant in a criminal case in the 351st Judicial District Court in Harris County, Texas.  On or about May 10, 2016, Mr. Soto was found not guilty by reason of insanity and was ordered to be committed to a maximum security mental health facility for evaluation of his present mental condition and for treatment.  Despite the criminal court's order and the 14-day time limit required by Texas Code of Criminal Procedure Article 46C.160, the Department has not allowed Harris County to transfer Mr. Soto to a state mental health facility, and, as a result, he continues to be incarcerated in the Harris County Jail.  Mr. Soto has not received the court-ordered evaluation and treatment in Jail and has been waiting to be transferred to a state mental health facility for over 17 weeks.

16.    Plaintiff Morgan Areshchenko was a defendant in a criminal case in the 427th Judicial District Court in Travis County, Texas.  On or about April 4, 2016, Ms. Areshchenko was found not guilty by reason of insanity and was ordered to be committed to a maximum security mental health facility for evaluation of her present mental condition and for treatment.  Despite the criminal court's order and the 14-day time limit required by Texas Code of Criminal Procedure Article 46C.160, the Department has not allowed Travis County to transfer Ms. Areshchenko to a state mental health facility, and, as a result, she continues to be incarcerated in the Travis County Jail.  Ms. Areshchenko has not and cannot receive the court-ordered evaluation and treatment in Jail, and has been waiting to be transferred to a state mental health facility for over 22 weeks.  To

assist Morgan in the representation of her interests, Plaintiff Areshchenko's mother, Juanita Williams, has volunteered and agreed to serve as Plaintiff Areshchenko's next friend.

17.     Defendant Dr. John Hellerstedt is currently the duly appointed Commissioner of the Texas Department of State Health Services and has been delegated the administration of that agency.   As Commissioner, Defendant Hellerstedt is ultimately responsible for ensuring that the Department is in full compliance with federal and state law, as well as agency rules, regulations, and policies.   Defendant Hellerstedt is responsible for "administering human services programs regarding mental health, including: administering and coordinating mental health services at the local and state level; operating the state's mental health facilities," and "designat[ing] the state hospitals to which persons with mental illness from each district shall be admitted." TEX. HEALTH & SAFETY CODE ANN. § 1001.072 and §552.001.   Defendant Hellerstedt is sued in his official capacity and is served with this First Amended Complaint through his attorneys of record, Thomas A. Albright and Michael R. Abrams.

## CLASS ACTION ALLLEGATIONS

18.     Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated as members of the following proposed plaintiff classes:

> All persons who are now, or will be in the future, charged with a crime in the State of Texas, and: (a) who are ordered to a Texas DSHS facility where they are to receive competency restoration services; and (b) for whom DSHS receives the court order; but (c) who remain incarcerated an unconstitutional permissible length of time waiting to be accepted at a Texas DSHS facility.

> All persons who are now, or will be in the future, charged with a crime in the State of Texas and who are found not guilty by reason of insanity, and: (a) who are ordered to receive evaluation and/or treatment services at a DSHS facility; (b) who are incarcerated and are waiting for those services for more than 14 days; and (c) for whom DSHS receives the court order.

19.     Plaintiffs seek class-wide declaratory and injunctive relief pursuant to Rule 23(b)(2).

20.     While the precise number of Class Members in each class is not known to Plaintiffs with certainty because the number necessarily fluctuates, on information and belief, Plaintiffs estimate that there are approximately 346 individuals at present who, although ordered to a Department mental health facility to receive competency restoration services or evaluation and treatment services, remain incarcerated in jail for months waiting for transportation to a Department mental health facility.  An exact number of current Class members in each class is known to the Department and can be determined through discovery; as for potential future Class Members, that number is indeterminable.

21.     As for the class of individuals who have been found incompetent to stand trial, the Plaintiffs' claims are typical of the claims of all members of the Class because the individual Plaintiffs and the Class have all been adjudicated, or will be adjudicated, to be incompetent to stand trial and are, or will be, incarcerated in jail while waiting for a bed at a Department mental health facility to receive the statutorily required competency restoration treatment.  Plaintiffs and all members of the Class have similarly suffered harm, or will suffer harm in the future, arising from Defendant's actions and inaction.

22.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  These common legal and factual questions include:

Whether the Department has failed to accept the ordered transfer of Plaintiffs and other Class Members to its facilities for competency-restoration treatment in a timely manner;

Whether Defendant's failure to admit individuals determined incompetent to stand trial and ordered to the DSHS's mental health facilities for competency restoration

purposes in a reasonably timely manner violates the Fourteenth Amendment to the United States Constitution;

Whether Plaintiffs and other Class Members are entitled to the declaratory and injunctive relief they seek; and

Whether Plaintiffs and other Class Members are entitled to an award of reasonable attorney's fees and costs.

23.     As for the class for individuals who have been found not guilty by reason of insanity, the Plaintiffs' claims are typical of the claims of all members of the Class because the individual Plaintiffs and the Class have all been, or will be, found not guilty by reason of insanity and are, or will be, incarcerated in jail while waiting for a bed at a Department mental health facility to receive the statutorily required evaluation and/or treatment services.  Plaintiffs and all members of the Class have similarly suffered harm, or will suffer harm in the future, arising from Defendant's actions and inaction.

24.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  These common legal and factual questions include:

Whether the Department has failed to accept transfer of individual Plaintiffs and other class members who have been found not guilty by reason of insanity for evaluation and/or treatment services in a timely manner;

Whether the Department's failure to admit individuals who have been found not guilty by reason of insanity and ordered by the criminal court to its mental health facility for evaluation and/or treatment services in a reasonably timely manner violates the Fourteenth Amendment to the United States Constitution;

Whether Plaintiffs and other Class Members are entitled to the declaratory and injunctive relief they seek; and

Whether Plaintiffs and other Class Members are entitled to an award of reasonable attorney's fees and costs.

25.     As to both proposed classes, Plaintiffs will fairly and adequately represent and protect the interests of the Class.  There are no conflicts of interest between the Plaintiffs and the other members of the Class.  The Class members will vigorously prosecute this action on behalf of the Class.  The Plaintiffs are represented by competent counsel with considerable skill and experience in civil rights and mental health litigation, who will vigorously prosecute this case on behalf of the Class.

26.     For both incompetent detainees and insanity acquittees, the Department has acted or failed or refused to act on grounds generally applicable to the entire Class.

27.     The claims asserted herein are capable of repetition while evading review.  There is a continuing and substantial public interest in these matters, justifying declaratory and injunctive relief in favor of Plaintiffs and the Classes.

28.     This suit may be maintained as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure because Plaintiffs and other members of the Classes seek declaratory and injunctive relief, and all of the necessary factors of numerosity, commonality, typicality, and adequacy are present.

29.     A class action is the best available method for adjudication of these legal issues because individual litigation of these claims would be impracticable and would be unduly burdensome to the courts.  Further, this suit may be maintained as a class action because common questions of law and fact predominate over questions affecting only individual class members, and individual litigation would increase the likelihood of inconsistent or contradictory judgments.  A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## FACTUAL ALLEGATIONS

30.     Defendant and his Department, through their actions and inaction, cause incompetent detainees and insanity acquittees to be incarcerated for weeks or months before the Department provides them their court-ordered competency restoration treatment, evaluation and/or treatment services.

**A.     Defendant's duty to timely admit incompetent detainees to a DSHS facility for competency restoration services**

31.     Under state and federal law, individuals who lack the ability to understand the nature of the criminal court proceedings against them may not be tried.

32.     Article 46B of the Texas Code of Criminal Procedure sets forth the procedures that Texas courts must follow when a criminal defendant's mental competency is challenged during criminal proceedings.

33.     A person is incompetent to stand trial if he or she does not have "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding," or "a rational as well as factual understanding of the proceedings against the person."  TEX. CODE CRIM. PROC. ANN. arts. 46B.003(a)(1)&(2).

34.     "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial."  *Id.*, art. 46B.004(a).  "If the court determines that there is evidence to support a finding of incompetence, the court . . . shall stay all other proceedings in the case."  *Id.*, art. 46B.004(d).  "If the defendant is found incompetent to stand trial, the court shall proceed under Subchapter D."  *Id.*

35.     Pursuant to Subchapter D, article 46B.071, the court, on a determination that a criminal defendant is incompetent to stand trial, shall either commit the defendant to a mental

health facility designated by the Department of State Health Services under 46B.073, or release the defendant on bail subject to conditions under 46B.072. *Id.*, art. 46B.071.

36.    For a defendant not released on bail, "[t]he court shall commit a defendant . . . to a mental health facility or residential care facility for a period not to exceed 60 days (misdemeanor) or 120 days (felony) *for further examination and treatment toward the specific objective of attaining competency to stand trial.*" *Id.*, art. 46B.073(b) (emphasis added).

37.    If a defendant is charged with a "violent offense," as listed in article 17.032(a), other than an assault, or the indictment alleges an affirmative finding that a deadly weapon was used during the commission of a felony, "the court shall enter an order committing the defendant to the maximum security unit [MSU] of any facility designated by the department . . .." *Id.*, art. 46B.073(c). If the defendant is not charged with one of the enumerated offenses, "the court shall enter an order committing the defendant to a mental health facility or residential care facility . . .." *Id.*, art. 46B.073(d).

38.    An order committing the defendant for restoration of competency "must place the defendant in the custody of the sheriff for transportation to the facility in which the defendant is to receive treatment for purposes of competency restoration." *Id.*, art. 46B.075.

39.    Not later than the date of the order of commitment, the court must send a copy of the order to the facility to which the defendant is committed. *Id.*, art. 46B.076(a).

40.    The facility to which the defendant is committed must: develop an individual program of treatment; assess and evaluate whether the defendant will obtain competency in the foreseeable future; and report to the court and local mental health or mental retardation authority on defendant's progress toward achieving competency. *Id.*, art. 46B.077(a).

41.     Not later than the 15th day before the date on which the restoration period is to expire, the head of the facility must so notify the court that the restoration period is about to expire. *Id.*, art. 46B.079(a). Further, the head of the facility must also "promptly" notify the court when the defendant has obtained competency to stand trial or upon a determination that the defendant will not attain competency in the foreseeable future. *Id.*, art. 46B.079(b).

42.     On the return of the defendant to the court, the court must make a determination as to the defendant's competency to stand trial. The court must make this determination not later than the 20th day after the court received the notice from the head of the facility required by article 46B.079. *Id.*, art. 46B.084(a). If the defendant is found competent to stand trial, criminal proceedings may be resumed; if the defendant is found incompetent to stand trial, the court may determine whether the defendant should be subject to civil commitment.

**B.     Defendant's duty to timely admit individuals found not guilty by reason of insanity to a DSHS facility for evaluation and/or treatment**

43.     Article 46C of the Texas Code of Criminal Procedure sets forth the procedures that Texas courts must follow when the defense of insanity is raised on behalf of a criminal defendant.

44.     A person is not guilty by reason of insanity if a judge or jury has determined: "(1) the prosecution has established beyond a reasonable doubt that the alleged conduct constituting the offense was committed; and (2) the defense has established by a preponderance of the evidence that the defendant was insane at the time of the alleged conduct." TEX. CODE CRIM. PROC. ANN. art. 46C.153(a).

45.     "[A] defendant who is found not guilty by reason of insanity stands acquitted of the offense charged and may not be considered a person charged with an offense." *Id.*, art. 46C.155(a)

46.     Since the individual is acquitted of the offense and no longer considered a person charged with an offense, "…the court may [only] order the defendant detained in jail or any other suitable place for a period not to exceed 14 days." *Id.*, art. 46C.160(a).

47.     Following a finding that an individual is not guilty by reason of insanity, the court must immediately determine whether the offense of which the person was acquitted involved dangerous conduct, as defined in art. 46C.157.

48.     If the court determines that the offense involved dangerous conduct, "[t]he court shall order the acquitted person to be committed for evaluation of the person's present mental condition and for treatment to the maximum security unit of any facility designated by the [Department of State Health Services]." *Id.*, art. 46C.251(a); *see also* 46C.001(2) (defining "department").

49.     When there is a finding of dangerous conduct and an insanity acquittee is committed to a Department facility for evaluation and/or treatment services, the facility designated by the Department receives a copy of the transcript of all medical testimony and certain identifying information regarding the insanity acquittee. *Id.*, arts. 46C.251(b)(1)&(2).

50.     Upon transfer of the insanity acquittee to a facility designated by the Department within 14 days, and following the evaluation and/or treatment of the insanity acquittee, the Department must file a report that describes and explains the procedure, techniques, and tests used in the examination of the person. *Id.*, art. 46C.252(b).  "The report must address:

> (1) whether the acquitted person has a mental illness or [intellectual disability] and, if so, whether the mental illness or [intellectual disability] is severe;
> (2) whether as a result of any severe mental illness or [intellectual disability] the acquitted person is likely to cause serious harm to another;
> (3) whether as a result of any impairment the acquitted person is subject to commitment under Subtitle C or D, Title 7, Health and Safety Code;
> (4) prospective treatment and supervision options, if any, appropriate for the acquitted person; and

(5) whether any required treatment and supervision can be safely and effectively provided as outpatient or community-based treatment and supervision."

*Id.*, art. 46C.252(c).

51.     On the return of the insanity acquittee to court, the court shall conduct a hearing on disposition and shall order the acquitted person (i) committed for inpatient treatment or residential care, (ii) to receive outpatient or community-based treatment and supervision, (iii) transferred to an appropriate court for civil commitment proceedings under the Texas Health and Safety Code, or (iv) discharged and immediately released.  *Id.*, arts. 46C.253(b)-(e).

**C.     County jails are unable to provide competency restoration services to individuals found incompetent to stand trial and are unable to provide evaluation and/or treatment services to individuals found not guilty by reason of insanity**

52.     County jails in Texas are inappropriate settings for the care and treatment of individuals with mental illness or intellectual disabilities (formerly called "mental retardation"). Jails are not designed to be therapeutic—they are inherently punitive—nor do they provide any treatment aimed at restoring a person to competency or evaluation and/or treatment services for individuals found not guilty by reason of insanity.

53.     Correctional facilities, particularly facilities designed for short-term detention, do not have the staffing, funding, or capabilities to provide treatment aimed at restoring a person to competency or evaluation and/or treatment services for individuals found not guilty by reason of insanity.

54.     Detainees who are found incompetent to stand trial and detainees who are found not guilty by reason of insanity are often the most severely mentally ill in Texas jail settings.

55.     Most Texas jails do not have the ability to provide even basic psychiatric stabilization and management.  As a result, many detainees with serious mental illness are harmed by the punitive jail setting as manifested by either increased symptoms of their underlying

psychiatric disorder or lack of improvement regarding their current symptoms.  By refusing to timely take custody of detainees (both incompetent detainees and insanity acquittees), Defendant and his Department cause such persons to be incarcerated in county jails under conditions nearly certain to exacerbate their mental health condition(s).

56.     Because county jails are often unable to provide even basic mental health treatment, incompetent detainees and insanity acquittees frequently end up between a rock and a hard place: either they are housed in the general jail population—often with convicted offenders—or they are placed in solitary confinement, which causes their mental health to further deteriorate.  This deterioration conflicts with the State's interest in prompt evaluation and treatment so that incompetent detainees may be brought to trial, or so that insanity acquittees are not punished for crimes they were acquitted of and are appropriately committed, transferred, or released.

57.     Besides struggling to provide even basic mental health care, county jails in Texas do not have the specific services necessary to restore individuals to competency to stand trial, such as the most current medications, identification of specific social needs to restore and maintain competency, and training specific to the restoration of competency.  In contrast, state mental health facilities are specifically designed to provide inpatient treatment to restore incompetent detainees to competence, thereby enabling them to stand trial.

58.     County jails in Texas also do not have the specific services necessary to provide evaluation and/or treatment services to insanity acquittees.  State mental health facilities, however, are specifically designed to provide inpatient treatment and to conduct evaluations to make complex determinations about a person's mental health condition(s), including whether a person is likely to cause serious harm to another, whether a person is subject to commitment under the

Texas Health and Safety Code, and determinations regarding the appropriateness, safety, and effectiveness of prospective treatment and supervision options.

59.     Nevertheless, Defendant knowingly, intentionally, and deliberately refuses to accept individuals found incompetent to stand trial and individuals found not guilty by reason of insanity into state mental health facilities in violation of the requirements of Chapters 46B and 46C of the Texas Code of Criminal Procedure, the orders of the criminal courts, and the U.S. Constitution.

**D.   Defendant has failed to timely admit incompetent detainees and insanity acquittees who have been ordered to a Department mental health facility.**

60.     According to a 2014 Joint Report by the National Sheriff's Association and the Treatment Advocacy Center, "Texas is among the states with the lowest number of public psychiatric beds and among the stingiest states in per capita mental health spending."

61.     Because the Department facilities are full, the Department places detainees (both incompetent detainees and insanity acquittees) on a waiting list until a bed becomes available at the designated facility.

62.     In June of 2014, the number of detainees (both incompetent detainees and insanity acquittees) waiting to be transferred to a state mental health facility was about 170; by February of 2016, the number had risen to more than 380.  By February 2016, detainees were waiting an average of 41 days in local jails.  As of April 1, 2016, the longest wait time for a non-maximum security bed was 275 days—almost nine months.  According to the Department, as of April 1, 2016, the average wait time for a maximum security bed was 122 days.  Currently, about 283 individuals are waiting in county jails for a maximum security bed, and of those individuals, about 246 have been waiting longer than 21 days.  The individual who has been waiting in jail for a maximum security bed the longest has been waiting about 321 days.  As for the wait list for a non-

maximum security bed, there are currently about 96 individuals waiting in jail for such a bed, and of those 96, about 4 have been waiting longer than 21 days.  The individual who has been waiting in jail the longest for a non-maximum security bed has been waiting 34 days.

63.    According to a May 13, 2016 investigative report by ABC-13, state statistics going back to 2006 show that the number of detainees waiting in jails for competency restoration treatment "has never been this long," and that the number of individuals on the wait list has grown by "20% in the last six months."

64.    The delay in admitting those found incompetent to stand trial infringes on their right to be free from incarceration absent a criminal conviction as well as the ability to receive competency-restoration treatment, which necessarily extends the time within which an individual can be tried once restored to competency.

65.    The delay in admitting those found not guilty by reason of insanity infringes on their right to be free from incarceration after being absolved of criminal responsibility, as well as their ability to receive evaluation and treatment so that the criminal courts can reach final dispositions in the civil commitments.

66.    Because incompetent criminal defendants have not been convicted of any crime and insanity acquittees have been absolved of criminal responsibility, both classes of persons have a liberty interest in freedom from incarceration, and a liberty interest in receiving treatment. Because the court has ordered that incompetent detainees must be provided with restorative treatment and that insanity acquittees must be provided with evaluation and/or treatment services, lack of funds, staff, or facilities cannot justify the Defendant's failure to provide the court-ordered treatment in a timely manner.

67.     As a direct and proximate result of the foregoing, the Individual Plaintiffs and the Classes will continue to be deprived of their liberty rights without due process of law, in violation of their constitutional rights.

68.     Plaintiff Joseph Ward is a defendant in a criminal case in the 351st Judicial District Court of Harris County, Texas.  On or about February 17, 2016, Mr. Ward was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  Despite the criminal court's order, DSHS has not allowed Harris County to transfer Mr. Ward to a state mental health facility, and, as a result, he continues to be incarcerated in the Harris County Jail.  Mr. Ward does not receive competency-restoration treatment in jail.

69.     Mr. Ward has been diagnosed with schizoaffective disorder, HIV, epilepsy, asthma, and hypertension.  Harris County Jail staff note that Mr. Ward has a history of neurocognitive impairment.  In February 2016, during a mental health assessment, staff noted Mr. Ward's confusion and inability to remember information such as street names, location, and names of doctors.  Staff noted that "competency restoration may be unlikely or slow based on current clinical presentation of the assessment."

70.     Mr. Ward has a long psychiatric history and previous incarcerations where he has been found incompetent to stand trial.  During this recent incarceration, Mr. Ward requested, and currently voluntarily takes, his psychotropic medications; however, he continues to report command auditory hallucinations as recently as May of 2016.

71.     Plaintiff Michael Anderson is a defendant in a criminal case in the 299th Judicial District Court, Travis County, Texas.  On or about April 18, 2016, Mr. Anderson was found incompetent to stand trial and ordered to a mental health facility for further examination and

treatment toward the specific objective of attaining competency to stand trial.  The order also required the Sheriff to transport Mr. Anderson to the state mental health facility.  Despite the criminal court's order, DSHS has not allowed Travis County to transfer Mr. Anderson to a state mental health facility and, as a result, he continues to be incarcerated in the Travis County Jail. Mr. Anderson receives no competency restoration treatment in Jail.

72.    Mr. Anderson has been diagnosed with schizophrenic disorder, an intellectual disability, schizoaffective disorder, and diabetes.  He has a long history of mental illness and has been treated by the Austin Travis County Mental Health Authority since 1993.

73.    While incarcerated, Mr. Anderson has exhibited symptoms of and behaviors related to his mental illness.  Records by the Jail counselor indicate that Mr. Anderson has exhibited incoherent thought processes and delusional content and thought processes.  As recently as June 2016, records show that Mr. Anderson urinates on himself and in his cell.  Following this incident, Mr. Anderson was placed in a single cell, where Jail staff are required to conduct visual checks every 30 minutes.

74.    Plaintiff Isaac Lemelle is a defendant in a criminal case in the 147th Judicial District Court in Travis County, Texas.  On or about March 30, 2016, Mr. Lemelle was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Lemelle to the state mental health facility.   Despite the criminal court's order, DSHS has not allowed Travis County to transfer Mr. Lemelle to a state mental health facility, and, as a result, he continues to be incarcerated in the Travis County Jail. Mr. Lemelle does not receive competency restoration treatment in Jail.

75.     Mr. Lemelle is diagnosed with unspecified schizophrenia and other psychotic disorders and antisocial personality disorder. The Travis County Jail has classified his mental health needs as severe. He has a long history of mental illness, and was first treated by the Austin Travis County Mental Health Authority in 2008, at age thirteen.

76.     During his current incarceration, Mr. Lemelle has exhibited numerous symptoms and behaviors as a result of his mental illness, including throwing urine and smearing feces, behaviors which have required his placement in the Jail's psychiatric lockdown units in a single cell.  Individuals in psychiatric lockdown are permitted outside of their cell in the dayroom for one hour a day.  They are not guaranteed any time outdoors.  Jail personnel are required to conduct visual checks every 30 minutes.  Mr. Lemelle has also required protective restraints.

77.     On February 23, 2016, while Mr. Lemelle was in jail waiting to be found incompetent to stand trial, officers were notified that Mr. Lemelle stated he wanted to kill himself and may have swallowed a razor.  While attempting to place Mr. Lemelle in a restraint chair to examine his mouth for a razor, and to transport him to an isolation cell, Mr. Lemelle spit at a corrections officer.  This incident led to the additional charge of harassment of a public servant being pressed against Mr. Lemelle.  Following this incident, Mr. Lemelle was transported to a Full Suicide Precautions ("FSP") unit, where he was placed in a rubber cell and provided only a smock as clothing.  In FSP units, Jail staff are required to conduct 15 minute visual checks.  Medical and psychiatric evaluations and meetings are conducted through a food chute, i.e., a small opening on the door of each individual cell that is used to pass food to the individuals.  Mr. Lemelle has also been accused of approximately fifteen (15) rule violations (on four separate occasions) that required review by the Travis County Sheriff's Office disciplinary board.

78.     Plaintiff Marc Lawson is a defendant in a criminal case in the 390th Judicial District Court in Travis County, Texas.  On or about May 11, 2016, Mr. Lawson was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment towards the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Lawson to a state mental health facility.  Despite the criminal court's order, the Department has not allowed Travis County to transfer Mr. Lawson to its state mental health facility and, as a result, he continues to be incarcerated in the Travis County Jail. Mr. Lawson does not receive competency restoration treatment in Jail.

79.     Mr. Lawson is twenty-two years old, has never previously been incarcerated, and has been in the Texas Child Protective Services system since age five.  Mr. Lawson is diagnosed with an intellectual disability, pervasive developmental disorders, Attention Deficit Hyperactivity Disorder/ADHD, Bipolar Disorder, Conduct Disorder, Antisocial Personality Disorder, Epilepsy/Seizure Disorder and Hepatitis C. Mr. Lawson has a history of treatment at psychiatric hospitals and utilization of medication from a young age.

80.     During Mr. Lawson's incarceration, Jail personnel report that he has obvious cognitive deficits and poor social skills.  He is categorized as vulnerable, and Jail personnel have documented concerns over his being housed in a cell with other inmates due to his vulnerability. Upon his admission, Mr. Lawson was initially placed in full suicide precaution and/or psychiatric lockdown housing for about one week. While in psychiatric lockdown and full suicide precaution housing, Mr. Lawson was permitted outside of his cell for only one hour a day, and it was not guaranteed that he would receive any time outdoors.  He was then transferred to and housed in a single cell for over two months. Mr. Lawson is prescribed two medications for his medical

conditions and one antipsychotic. The Travis County Jail has classified his mental health and medical needs as severe.

81.     Mr. Lawson's psychiatric evaluation from May 2016 states that he is incompetent to stand trial and "competency cannot be restored in the foreseeable future with traditional competency restoration treatment due to the chronic nature of his condition."  The psychiatrist documented that although he is prescribed psychiatric medication, the medication "will not improve cognitive symptoms responsible for observed deficits relating to trial competency."

82.     Plaintiff Jennifer Lampkin is a defendant in a criminal case in the 403rd Judicial District Court in Travis County, Texas.  On or about April 6, 2016, Ms. Lampkin was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment towards the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Ms. Lampkin to a state mental health facility. Despite the criminal court's order, the Department has not allowed Travis County to transfer Ms. Lampkin to its state mental health facility, and as a result, she continues to be incarcerated in the Travis County Jail.  Ms. Lampkin does not receive competency restoration treatment in Jail.

83.     Ms. Lampkin is diagnosed with an Intellectual Disability and Bipolar Disorder. She also has a history of psychosis, resulting in numerous emergency psychiatric hospitalizations.  She has a long history of mental illness and has a history of being treated by Austin Travis County Integral Care.

84.     While incarcerated, Ms. Lampkin has exhibited symptoms of and behaviors related to her mental health condition.  Records by the jail counselor indicate that Ms. Lampkin has obvious cognitive deficits and is low functioning.  Ms. Lampkin has exclusively been housed in psychiatric housing, and as recently as July 2016, the jail counselor reports that she is "struggling

due to isolation."  Moreover, the jail conditions have affected Ms. Lampkin's physical condition.  Over the duration of her incarceration, Ms. Lampkin has lost over 30 lbs.

85.     Plaintiff Alexander Soto was a defendant in a criminal case in the 351st Judicial District Court in Harris County, Texas.  On or about May 10, 2016, Mr. Soto was found not guilty by reason of insanity and was ordered to be committed to a maximum security mental health facility for an evaluation.  Despite the criminal court's order and the 14-day time limit in TEX. CODE CRIM. PROC. ANN art. 46C.160, the Department has not allowed Harris County to transfer Mr. Soto to a state mental health facility, and, as a result, he continues to be incarcerated in the Harris County Jail.  Mr. Soto has not received the court-ordered evaluation and treatment in Jail.

86.     Mr. Soto has had significant psychiatric issues during his present incarceration at Harris County Jail.  A month after being arrested, in May of 2015, he was charged with another felony after biting a guard.  Mr. Soto was found incompetent to stand trial on his original charge on July 2, 2015.  He was transferred to a Department state mental health facility for competency restoration treatment.  After he was restored to competency, he returned to Harris County Jail, and the Jail sought and obtained a court order forcing Mr. Soto to take psychiatric medication.  The state dismissed Mr. Soto's charge for biting a guard when he was found not guilty by reason of insanity.  Mr. Soto is currently housed in a solitary cell in the acute section of the Mental Health Unit at Harris County Jail.

87.     Plaintiff Morgan Areshchenko was a defendant in a criminal case in the 427th Judicial District Court in Travis County, Texas.  On or about April 4, 2016, Ms. Areshchenko was found not guilty by reason of insanity and was ordered to be committed to a maximum security mental health facility for evaluation of her present mental condition and for treatment.  Despite the criminal court's order and the 14-day time limit in TEX. CODE CRIM. PROC. ANN art. 46C.160, the

Department has not allowed Travis County to transfer Ms. Areshchenko to a state mental health facility, and, as a result, she continues to be incarcerated in the Travis County Jail. Ms. Areshchenko has not received the court-ordered evaluation and treatment in Jail.

88.    On information and belief, Ms. Areshchenko is diagnosed with bipolar disorder and schizoaffective disorder.

89.    Ms. Areshchenko has had significant psychiatric issues during her present incarceration at the Travis County Jail. Ms. Areshchenko was initially found incompetent to stand trial on this charge on September 8, 2015. She was transferred to a Department state mental health facility for competency restoration treatment. She was subsequently returned to court, where she was found not guilty by reason of insanity.

**FIRST CAUSE OF ACTION**
**Fourteenth Amendment to the U.S. Constitution**

**A.    Defendant Has Violated, and Continues to Violate Incompetent Detainees Rights Under the Fourteenth Amendment to the U.S. Constitution**

90.    The allegations contained in paragraphs 1 through 89 above are incorporated herein.

91.    The Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

92.    Criminal defendants who have not been convicted and have been adjudicated incompetent to stand trial have liberty interests in freedom from incarceration and in receiving competency restoration treatment.

93.    Due process requires that the nature and duration of confinement must bear a reasonable relation to the purpose for which an individual is confined.

94.     Once an individual is found unable to aid and assist in their own defense, all criminal proceedings must stop, thus eliminating punishment as a lawful purpose for their incarceration.  The only stated lawful purpose for their continued confinement is commitment to the Defendant's facility where they are to be provided restorative treatment so as to return him or her to competency.

95.     County jails do not provide the restorative treatment required by state law.

96.     No legitimate state interest justifies the continued incarceration of incompetent criminal defendants in county jails for months on end.  The nature and duration of their incarceration bear no reasonable relation to the restorative purpose for which the court has committed these individuals.

97.     The Class Plaintiffs and the other members of the Class of incompetent detainees are entitled to an order of the Court declaring that, by requiring persons found incompetent to stand trial to remain in county jails for protracted periods, and by failing to provide restorative treatment in a reasonably timely manner, Defendant has violated the Fourteenth Amendment due process rights of the Plaintiffs and the other Class members.

98.     Unless enjoined by the Court, Defendant will continue to violate the constitutional rights of the Plaintiffs and the other Class members found incompetent to stand trial.  The Plaintiffs and the other Class members are therefore entitled to an order of the Court enjoining Defendant from further violations of the Plaintiffs' rights to due process in relation to their continued incarceration in jail while awaiting a bed at a DSHS mental health facility where they can receive the state-mandated restorative treatment.

**B.      Defendant Has Violated, and Continues to Violate Insanity Acquittees' Rights Under the Fourteenth Amendment to the U.S. Constitution**

99.      The allegations contained in paragraphs 1 through 98 above are incorporated herein.

100.      The Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

101.      Persons who have been found not guilty by reason of insanity, and thereby acquitted of criminal charges, have liberty interests in freedom from incarceration and in receiving court-ordered evaluation and/or treatment services.

102.      Due process requires that the nature and duration of confinement must bear a reasonable relation to the purpose for which an individual is confined.

103.      Once an individual is found not guilty by reason of insanity, they have been acquitted of the offense charged and cannot remain incarcerated.  The only stated lawful purpose for their continued confinement is commitment to a Department facility where they are to be provided evaluation and treatment services for the person's present mental condition, which will enable the court to reach final disposition.

104.      County jails do not have the resources or expertise to provide the evaluation and/or treatment services mandated by state law.

105.      No legitimate state interest justifies the incarceration of insanity acquittees in county jails for months on end.  The nature and duration of their incarceration bear no reasonable relation to the evaluation and/or treatment purpose for which the court has committed insanity acquittees.

106.      The Class Plaintiffs and the other members of the Class of insanity acquittes are entitled to an order of the Court declaring that, by requiring insanity acquittees to remain

incarcerated in county jails for protracted periods, and by failing to provide evaluation and/or treatment in a reasonably timely manner, Defendant has violated the Fourteenth Amendment due process rights of the Plaintiffs and the other Class members.

107. Unless enjoined by the Court, Defendant will continue to violate the constitutional rights of the Plaintiffs and the other members of the Class of insanity acquittees. The Plaintiffs and the other members of the Class of insanity acquittees are therefore entitled to an order of the Court enjoining Defendant from further violations of the Plaintiffs' rights to due process in relation to their continued confinement while awaiting evaluation and/or treatment at a DSHS mental health facility.

**ATTORNEY'S FEES**

108. Plaintiffs are entitled to recover their attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

**PRAYER FOR RELIEF**

THEREFORE: Plaintiffs respectfully request this Court to:

A. Certify the Classes, as defined above;

B. Enter an Order declaring that, by requiring defendants found incompetent to stand trial  to remain incarcerated in county jails for protracted periods, and by failing to provide restorative treatment services for incompetent detainees in a reasonably timely manner, Defendant is depriving Plaintiffs and Class Members of their due process rights under the Fourteenth Amendment to the United States Constitution;

C. Enter an Order declaring that, by requiring defendants found not guilty by reason of insanity to remain incarcerated in county jails for more than 14 days, absent a criminal conviction or criminal charge, and by failing to provide evaluation and/or

29

treatment services for insanity acquittees, Defendant is depriving Plaintiffs and Class Members of their due process rights under the Fourteenth Amendment to the United States Constitution and in violation of state law;

D.      Issue preliminary and permanent injunctive relief restraining Defendant from violating the Fourteenth Amendment to the United States Constitution in relation to the confinement of individuals awaiting competency restoration treatment and the confinement of persons found not guilty by reason of insanity and awaiting evaluation and/or treatment services;

E.      Award Plaintiffs their reasonable attorney's fees and costs; and

F.      Grant all such other relief as the Court may deem just and proper.


Respectfully submitted,


BETH MITCHELL
State Bar No. 00784613

PETER HOFER
State Bar No. 09777275

CHRISTINA HERRERO
State Bar No. 24080185

DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)
bmitchell@drtx.org
phofer@drtx.org
cherrero@drtx.org

COTY MEIBEYER
State Bar No. 24085469

DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691 (Phone)
(713) 974-7695 (Fax)
cmeibeyer@drtx.org

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2016, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF filing system, thus providing notice of electronic filing to the following:

Thomas A. Albright
Michael R. Abrams
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

BETH MITCHELL