IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH WARD et al., | § | |
| | § | |
| VS. | § | NO. A-16-CV-917-LY |
| | § | |
| DR. JOHN HELLERSTEDT, in his official | § | |
| capacity as Commissioner of the Texas | § | |
| Department of State Health Services. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Hellerstedt's Second Amended Motion to Dismiss (Dkt. No. 30); Plaintiffs' Response (Dkt. No. 31); and Hellerstedt's Reply (Dkt. No. 33). The District Court referred the above motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules. The Court held a hearing on March 28, 2017.

## I. BACKGROUND

This case is a proposed class action brought on behalf of seven currently incarcerated individuals, pursuant to 42 U.S.C. § 1983.[1] The two purported classes are comprised of individuals found not guilty by reason of insanity and individuals found incompetent to stand trial, who assert their Fourteenth Amendment Due Process rights are violated when they are housed for prolonged

---

[1] Joseph Ward, Michael Anderson, Isaac Lemelle, Mare Lawson and Jennifer Lampkin are defendants in criminal cases who have been found incompetent to stand trial, and have been ordered committed at a mental health facility to receive competency-restoration services. Cecil Adickes and Michael Gibson were defendants in criminal cases who were found not guilty by reason of insanity and have been ordered to commitment at a maximum security mental health facility for evaluation of their present mental condition and for treatment.

periods in Texas jails without adequate mental health treatment, while waiting for a bed to open up in a Texas Department of State Health Services facility. Defendant Dr. John Hellerstedt is currently the duly appointed Commissioner of the Texas Department of State Health Services and is sued in his official capacity.

In Texas, when an individual charged with a crime is found incompetent to stand trial, all criminal proceedings must stop and the individual must be transferred to a Department facility to be provided further examination and treatment toward the specific objective of attaining competency to stand trial. TEX. CODE CRIM. PROC. art. 46B.004, 46B.071-073. Persons found incompetent to stand trial and charged with a "violent offense" must be transferred to the maximum security unit designated by the Department. TEX. CODE CRIM. PROC. art. 46B.073(c).

When an individual is found not guilty by reason of insanity, the individual stands acquitted of the offense charged and may not be considered a person charged with an offense. TEX. CODE CRIM. PROC. art. 46C.155(a). If the court determines that the acquittee's offense caused, placed another in, or threatened serious bodily injury, the individual must, within 14 days, be transferred to the maximum security unit designated by the Department for evaluation of the person's present mental condition and for treatment. TEX. CODE CRIM. PROC. art. 46C.157, 46C.251-252(a), and 46C.160. Once transferred, the Department is required to evaluate the acquittee for 30 days, TEX. CODE CRIM. PROC. art. 46C.251(a), (d), after which the acquittee must be released if, after a hearing, the State fails to prove by clear and convincing evidence that the individual has a mental illness and is dangerous. *Id.* at 46C.252-258.

Plaintiffs argue that Hellerstedt's failure to timely accept transfer of incompetent detainees and insanity acquittees to Department facilities and provide timely restoration and evaluative

treatment forces Plaintiffs and members of the classes they represent to remain incarcerated for weeks and months in county jails without any of the treatment or evaluation services that Hellerstedt and his Department are statutorily required, and have been ordered, to provide. Plaintiffs argue that because incompetent criminal defendants have not been convicted of any crime and insanity acquittees have been absolved of criminal responsibility, both classes of persons have a liberty interest in freedom from incarceration, and a liberty interest in the receipt of restorative treatment. Plaintiffs seek a declaration of their rights and an order enjoining Hellerstedt from violating their rights. Plaintiffs assert that they are not seeking immediate release.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.*

## III. ANALYSIS

### A. Plaintiffs' Due Process Claim

The parties spend a fair portion of their briefs arguing over the framing of Plaintiffs' constitutional claim. Hellerstedt insists that Plaintiffs are asserting that they have a stand alone

constitutional right to restorative treatment, something that has not been recognized by the Supreme Court or Fifth Circuit. Plaintiffs insist that they are not asserting such a claim. The incompetent detainees' pleadings include the following:

> Criminal defendants who not been convicted and have been adjudicated incompetent to stand trial have liberty interests . . . in receiving competency-restoration treatment.
>
> * * *
>
> The Class Plaintiffs and the other members of the Class of incompetent detainees are entitled to an order of the Court declaring that . . . by failing to provide restorative treatment in a reasonably timely manner, Defendant has violated the Fourteenth Amendment due process rights of the Plaintiffs and other Class members.

Second Amended Complaint ¶¶ 90, 64, 95.4. The insanity acquittees plead:

> Persons who have been found not guilty by reason of insanity, and thereby acquitted of criminal charges, have liberty interests in . . . receiving court ordered evaluation and/or treatment.
>
> * * *
>
> The Class Plaintiffs and the other members of the Class of insanity acquittees are entitled to an order of the Court declaring that . . . by failing to provide evaluation and/or treatment in a reasonably timely manner, Defendant has violated the Fourteenth Amendment due process rights of the Plaintiffs and other Class members.

*Id.* at ¶¶ 99, 104.

At the hearing, Plaintiffs confirmed they are not asserting they have a stand-alone liberty interest in the receipt of restorative treatment while in jail; rather, counsel for Plaintiffs stated that they are proceeding under *Jackson v. Indiana*, 406 U.S. 715 (1972), which held that the nature and duration of a person's confinement must bear a reasonable relationship to the purpose of their confinement. Given Texas law's stated purpose for their detention,[2] this means the nature and duration of their confinement must bear a reasonable relationship to their receiving restorative and

---

[2] *See* TEX. CODE CRIM. PROC. arts. 46B.073(b) & 46C.251(a).

evaluative treatment. Plaintiffs' complaint is that by allowing them to languish in a jail setting for months on end with no treatment or evaluation, the Department is violating their established Fourteenth Amendment Due Process right recognized in *Jackson*. They are *not* arguing that detention in such a jail setting without treatment or evaluation for any length of time, no matter how brief, would violate their Due Process rights, or that the jails must provide them those services while they await transfer—the sort of claims a "stand alone" Due Process claim would entail.

In *Jackson*, the Supreme Court addressed the question of how long a person could be detained as a result of his incompetence to stand trial. The Court adopted a general rule of reasonableness with regard to the duration of pretrial incarceration for incompetent defendants, requiring at a minimum, "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." 406 U.S. at 733. The Court further held that:

> a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.

*Id.* at 738. In *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982), the mother of a mental patient who suffered injuries while involuntarily committed to a state mental institution challenged her child's confinement. The Supreme Court held that an involuntarily committed individual enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement, and such training as may be required by these interests. "Such conditions of confinement would comport fully with the purpose of respondent's commitment." *Id.*; *See also, Foucha v. Louisiana*, 504 U.S. 71, 79 (1992) ("Due process requires that the nature of

5

commitment bear some reasonable relation to the purpose for which the individual is committed.") (citing *Jones v. United States*, 463 U.S. 354, 368 (1983).

In support of the motion to dismiss, Hellerstedt relies on *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 197 (1989), a case in which a child sued the state for placing him back in the custody of his physically abusive father. He contends that *DeShaney* stands for the proposition that there is no affirmative right to any governmental benefit and that the Due Process Clause does not give detainees a right to a particular degree, speed, or effectiveness of treatment. Hellerstedt reads *DeShaney* too broadly. As noted, the suit in that case alleged that the state's bad act was its failure to remove the child from his father's custody. In *DeShaney*, the Court found that the state's failure to protect an individual from private violence generally does not violate the Due Process Clause. The Court explained that "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* at 200. Hellerstedt tries to stretch *DeShaney* further, and argues that it rejected the concept that "once a state confines an individual for care and treatment to a stated end, it is required to provide sufficient care and treatment to achieve that end." Dkt. No. 30 at 7-8. That is not quite correct. *DeShaney* is limited to the question of what a state's obligations are with regard to the protection from harm of a confined or restrained person. It says nothing about how long the state may hold a person in custody solely due to their incompetency to stand trial or their acquittal due to insanity, without addressing their mental state. That is what the Court addressed in *Jackson*, *Foucha*, and the other decisions in that line of cases. Each of the Plaintiff groups has stated a viable claim for relief under *Jackson*, which remains good law, and *DeShaney* does not undermine such a claim.

## B. Dangerousness and the Insanity Acquitees

With regard to the insanity acquitees, Hellerstedt makes an additional argument. He contends that this group has failed to state a claim, because it has made the flawed assumption that the only lawful purpose for their continued confinement is evaluation and treatment at a Department facility. Hellerstedt argues the insanity acquitees may be constitutionally held purely on the basis of their continued dangerousness and the State's corresponding interest in protecting society, which he contends is allowed by *Jones v. United States*, 463 U.S. 354 (1983).

In *Jones*, an insanity aquittee challenged the constitutionality of the duration of his commitment, which lasted longer than the maximum sentence he could have received had be been convicted of the charged crime. The Supreme Court stated:

> The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness *and* protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity *or* is no longer dangerous.

*Jones,* 463 U.S. at 368 (internal citations omitted) (emphasis added). Hellerstedt misreads *Jones* and *Foucha* (upon which he also relies). Those case do not stand for the proposition that an insanity acquittee may be held in custody solely because he represents a danger to society. These cases explicitly state that the purpose of such commitment is dual—treatment *and* protection of society. In *Foucha*, the Supreme Court held that, in order to comply with the Due Process Clause, the state may only hold an insanity acquittee in a psychiatric facility if—after an adversarial hearing—he is found to be *both* dangerous and mentally ill; dangerousness alone was insufficient to support confinement. *Foucha*, 504 U.S. at 80. As has been noted, Texas law only permits confinement of insanity acquittees for "evaluation of the person's present mental condition and for treatment . . . ." TEX. CODE CRIM. PROC. art. 46C.251(a). A determination that an insanity acquitee is dangerous, without more, would therefore be insufficient to make constitutional an insanity acquitees's

7

indefinite incarceration in a county jail. Moreover, continued detention based on dangerousness and mental illness is only constitutional when there has been a sufficiently prompt full adversarial hearing where the State has proven by clear and convincing evidence that the individual is demonstrably dangerous to the community. *Foucha,* 504 U.S. at 80; *United States v. Salerno*, 481 U.S. 739, 746–47 (1987) (upholding the Bail Reform Act as constitutional because the bailee was afforded a prompt detention hearing and the maximum length of pretrial detention was strictly limited by the Speedy Trial Act). In this case, Plaintiffs plead that they did not receive such a hearing after their acquittal. *Jones* thus does not support dismissal of the acquitees' claim.

C. **Fourteen Day Deadline**

In an off-hand statement at the end of his motion, Hellerstedt argues that, to the extent the Plaintiffs are suing to enforce the 14-day requirement found in TEX. CODE CRIM. PROC. art. 46C.160, the suit is barred by *Pennhurst State School v. Halderman*, 465 U.S. 89 (1984) (holding the Eleventh Amendment bars a federal court from enjoining a state officer from violating state law). While this is a correct statement of law, it is inapplicable to this case. The Plaintiffs are not seeking to have this Court enforce the maximum 14-day detention period Texas law sets after an insanity acquittal. As discussed, Plaintiffs base their claim on the notion that detention without treatment or evaluation services must be brief to conform to constitutional requirements. They point to the 14-day transfer mandate of the Texas Code of Criminal Procedure merely as one marker of what period of time is "reasonable" in the *Jackson* determination, since that was the considered judgment of the Texas Legislature on the point. The Court agrees. Plaintiffs' suit does not implicate, nor is it barred by, the Eleventh Amendment.

IV. **RECOMMENDATION**

Because the Plaintiffs have stated a viable Fourteenth Amendment claim, the undersigned **RECOMMENDS** that the Court **DENY** Hellerstedt's Second Amended Motion to Dismiss (Dkt. No.

8

30). **IT IS FURTHER ORDERED** that this cause of action be **REMOVED** from the docket of the undersigned and **RETURNED** to the docket of the Honorable Lee Yeakel.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 28th day of April, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE