# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 17-50899

_____

D.C. Docket No. 1:16-CV-917

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2018

Lyle W. Cayce
Clerk

JOSEPH WARD, by his next friend Frances Bourliot; MICHAEL
ANDERSON, by his next friend Phil Campbell; ISAAC LEMELLE, by his
next friend Mark Westenhover; CECIL ADICKES, by his next friend Elsie
Craven; MICHAEL GIBSON, by his next friend Mark Westenhover; MARC
LAWSON, by his next friend Krista Chacona; JENNIFER LAMPKIN, by her
next friend Elsie Craven,

       Plaintiffs - Appellees

v.

DR. JOHN HELLERSTEDT, in his official capacity as Commissioner of the
Texas Department of State Health Services,

       Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas

Before DENNIS, CLEMENT, and ENGELHARDT, Circuit Judges.

J U D G M E N T

    This cause was considered on the record on appeal and was argued by
counsel.

    It is ordered and adjudged that the judgment of the District Court is
vacated, and the cause is remanded to the District Court for further
proceedings in accordance with the opinion of this Court.

    IT IS FURTHER ORDERED that each party bear its own costs on
appeal.

Certified as a true copy and issued
as the mandate on Nov 07, 2018

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2018

Lyle W. Cayce
Clerk

No. 17-50899

JOSEPH WARD, by his next friend Frances Bourliot; MICHAEL
ANDERSON, by his next friend Phil Campbell; ISAAC LEMELLE, by his
next friend Mark Westenhover; CECIL ADICKES, by his next friend Elsie
Craven; MICHAEL GIBSON, by his next friend Mark Westenhover; MARC
LAWSON, by his next friend Krista Chacona; JENNIFER LAMPKIN, by her
next friend Elsie Craven,

       Plaintiffs - Appellees

v.

DR. JOHN HELLERSTEDT, in his official capacity as Commissioner of the
Texas Department of State Health Services,

       Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-917

Before DENNIS, CLEMENT, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

    The defendant-appellant, Dr. John Hellerstedt, in his official capacity as
Commissioner of the Texas Department of State Health Services,

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 17-50899

("Defendant")[1] challenges on appeal the propriety of the class certification order issued by the district court. In its order, the district court certified two classes of plaintiffs—one including individuals charged with Texas crimes but adjudged to be incompetent to stand trial under Texas law; and the other including individuals acquitted of Texas crimes because they were determined to be insane under Texas law. Because the district court failed to conduct a sufficiently rigorous analysis of whether Federal Rule of Civil Procedure 23(a)'s requirements are met, its class certification order is deficient. Accordingly, we vacate the class certification order and remand to the district court for further proceedings consistent with this opinion.

## BACKGROUND

Under Texas law, criminal defendants adjudged incompetent to stand trial[2] and individuals acquitted of crimes by reason of insanity[3] may, under certain circumstances specified by statute, be committed to facilities for

---

[1] On September 29, 2017, while Defendant's request under Federal Rule of Civil Procedure 23(f) for permission to appeal the district court's class certification order was pending, the named plaintiffs in this matter filed their third amended complaint, which, among other things, substituted Charles Smith, in his official capacity as Executive Commissioner of the Texas Health and Human Services Commission ("HHSC"), as the defendant. This was due to a reorganization of the State's health and human services system that granted control of state hospitals to HHSC on September 1, 2017. *See* TEX. GOV'T CODE §§ 531.001(2), 531.0011a(2), 531.0201(a)(2)(C); TEX. HEALTH & SAFETY CODE §§ 1001.004, 1001.072.

[2] A criminal defendant is considered incompetent to stand trial under Texas law if he or she does not have "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(1)&(2) (West 2004).

[3] An individual charged with a crime is considered not guilty of that crime by reason of insanity if: "(1) the prosecution has established beyond a reasonable doubt that the alleged conduct constituting the offense was committed; and (2) the defense has established by a preponderance of the evidence that the defendant was insane at the time of the alleged conduct." TEX. CODE CRIM. PROC. ANN. art. 46C.153(a) (West 2004). A criminal defendant who is found not guilty by reason of insanity "stands acquitted of the offense charged and may not be considered a person charged with an offense." TEX. CODE CRIM. PROC. ANN. art. 46C.155(a) (West 2004).

No. 17-50899

inpatient mental health treatment, restoration services, evaluation and/or observation.[4] The State of Texas does not have enough beds in its hospitals, which generally operate at full capacity, to accommodate at once all persons who have been committed for inpatient services.[5] To equitably allocate available hospital beds, the State generally uses a "first-come, first-served" approach. Individuals who are awaiting admission to a state hospital are generally detained in county jails pending their transfer,[6] sometimes for months.[7]

---

[4] *See e.g.*, TEX. CODE CRIM. PROC. ANN. arts. 46B.071, 46B.073 (West 2004); TEX. CODE CRIM. PROC. ANN. arts. 46C.201, 46C.251, 46C.256, 46C.261 (West 2005).

[5] According to the uncontradicted declaration of Timothy E. Bray, the Director of State Hospitals for the Texas Department of State Health Services at the time this suit was filed, Texas has nine state hospitals that offer inpatient services to criminal defendants found incompetent to stand trial and individuals acquitted of criminal charges on insanity grounds. Such hospitals also serve individuals who are civilly committed for services and persons who admit themselves voluntarily. Those hospitals are funded to operate 2,385 inpatient beds. Two of the hospitals are equipped as maximum security units ("MSU") and operate a total of 314 inpatient beds. The State contracts with two private psychiatric hospitals for competency restoration services, which provide an additional 114 beds.

[6] Texas law does not specifically address under all circumstances where and for how long to hold incompetent criminal defendants and individuals acquitted of criminal charges on insanity grounds pending transfer to an inpatient mental health facility. However, Texas law does require a court that commits a criminal defendant for inpatient competency restoration to place that defendant "in the custody of the sheriff or sheriff's deputy for transportation to the facility or program." TEX. CODE CRIM. PROC. ANN. art. 46B.075 (West 2004). Texas courts are also specifically allowed to order individuals acquitted of crimes by reason of insanity detained in jail or another "suitable place" for up to 14 days pending further proceedings. TEX. CODE CRIM. PROC. ANN. art. 46C.160 (West 2005). Additionally, with respect to a "non-dangerous" individual acquitted due to insanity, if there is evidence to support a finding of mental illness or mental retardation, then a Texas court may order such person detained in jail or another "suitable place" pending "prompt initiation and prosecution" of required civil commitment proceedings. TEX. CODE CRIM. PROC. ANN. art. 46C.201 (West 2005).

[7] In 2017, the average wait time for incompetent criminal defendants and insanity acquittees to be transferred from a county jail to a non-MSU hospital was 16 days, while the average wait time for transfer into an MSU hospital was 147 days.

3

No. 17-50899

Joseph Ward, Michael Anderson, and Isaac Lemelle, the original plaintiffs in this 42 U.S.C. § 1983 suit,[8] amended their complaint twice, adding Marc Lawson, Jennifer Lampkin, Cecil Adickes, and Michael Gibson as plaintiffs.[9]   (Each of the foregoing individuals shall be collectively referred to herein as "Plaintiffs.")    In Plaintiffs' second amended complaint, Ward, Anderson, Lemelle, Lawson and Lampkin allege that, though they had been ordered committed for inpatient competency restoration services by Texas courts, they had been detained in county jails awaiting admission to state hospitals for periods ranging from 15 to 27 weeks.  Adickes and Gibson allege that, though they had been acquitted of criminal charges by reason of insanity and ordered committed to maximum security unit ("MSU") facilities for evaluation and treatment, they had been detained in county jails awaiting admission to such facilities for two weeks and ten weeks, respectively. Plaintiffs claim that Defendant has violated their Fourteenth Amendment due process rights by confining them in county jails for unreasonable periods of time without criminal convictions and failing to provide them with the appropriate mental health treatment and/or services during their confinement. They have further requested that the court certify two classes of similarly situated plaintiffs; issue an order declaring that Defendant has violated their Fourteenth Amendment due process rights; and issue preliminary and permanent injunctive relief prohibiting Defendant from violating such rights.

On November 28, 2016, Plaintiffs moved for class certification. Defendant initially opposed Plaintiffs' motion under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  On February 27, 2017, the district court

---

[8] Disability Rights of Texas was also an original party to the suit but was later dropped as a plaintiff in the first amended complaint.

[9] Alexander Soto and Morgan Areschchenko were added as plaintiffs in the first amended complaint but were then removed from the suit in the second amended complaint.

4

No. 17-50899

entered a scheduling order setting a deadline of May 1, 2017 for the parties to file all amended or supplemental pleadings and to join new parties. On August 17, 2017, Defendant filed an "Advisory to the Court" indicating that Plaintiffs' claims were moot since each of them had been admitted to state hospitals and that, because no class had yet been certified, the class claims were also moot. Plaintiffs disagreed, asserting that the "inherently transitory" nature of their claims saved them from mootness. Plaintiffs further offered to provide the district court with briefing on this argument or, alternatively, amend their complaint to add new plaintiffs who were still being detained in county jails. *Id.* Without responding to Plaintiffs' request for guidance on how to proceed, on September 1, 2017, over nine months after Plaintiffs filed their motion for class certification, the district court entered an order purporting to certify the following two classes of plaintiffs:

> (1) All persons who are now, or will be in the future, charged with a crime in the State of Texas, and (a) who are ordered to a Texas Department of State Health Services facility where they are to receive competency[]restoration services; and (b) for whom the Texas Department of State Health Services receives the court order; but (c) who remain detained in a Texas county jail [("Incompetent Detainee(s)")];[10] and

> (2) All persons who are now, or will be in the future, charged with a crime in the State of Texas and who are found not guilty by reason of insanity, and (a) who are ordered to receive evaluation-and-treatment services at a Texas Department of State Health Services facility; (b) for whom the Texas Department of State Health Services receives the court order; but (c) who remain detained in a Texas county jail for more than 14 days [("Insanity Acquittee(s)")].

---

[10] In addition to challenging the district court's class certification order on Rule 23 grounds, Defendant argues on appeal that the district court lacked jurisdiction to certify the Incompetent Detainee class because such class includes individuals who lack standing to assert claims in this matter. We need not reach the merits of such argument since we vacate the class certification order on other grounds.

5

No. 17-50899

The district court did not, however, explicitly appoint the named plaintiffs as class representatives as they had requested. Instead, the court ordered Plaintiffs to file yet another amended complaint including "named plaintiffs to be appointed as class representatives for the two classes."

On September 29, 2017, while Defendant's Rule 23(f) request for permission to appeal the district court's class certification order was pending, Plaintiffs filed their third amended complaint, in which they added the following named plaintiffs: Kenneth Jones, a criminal defendant adjudged to be incompetent to withstand trial; and Mary Sapp, who had been acquitted of criminal charges due to insanity.[11] On October 17, 2017, Plaintiffs filed a motion requesting that the district court appoint not only Jones and Sapp as class representatives, but also Lawson, Lampkin, Adickes, and Gibson, which Defendant opposed. On the same date, Defendant requested that the district court stay proceedings pending his appeal of the class certification order. Plaintiffs agreed to the stay request with the "understanding . . . that the Court should rule on Plaintiffs' Motion to Appoint Class Representatives before ruling on [the] motion for stay." On November 2, 2017, without ruling on Plaintiffs' motion to appoint class representatives, the district court entered an order staying all proceedings.

While Defendant appeals the district court's class certification order on multiple grounds, his primary arguments are that (1) the district court lacked jurisdiction to enter its class certification order because Plaintiffs' claims, and therefore, this entire action, became moot prior to the district court entering such order; and (2) even if this case is not moot, the district court's class certification order is deficient under Rule 23. For the reasons set forth below,

---

[11] In the third amended complaint, the original named plaintiffs also acknowledged that they had all been admitted to state hospitals.

No. 17-50899

we reject Defendant's mootness argument and vacate the district court's certification order on Rule 23 grounds.

## STANDARD OF REVIEW

Mootness and standing are issues of law that we review *de novo*. *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015). Likewise, "whether the district court applied the correct legal standards" in certifying a class is reviewed *de novo*. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 836 (5th Cir. 2012) (internal quotation marks and citation omitted). If the district court has applied the correct legal standard, we then review its analysis and order certifying a class for an abuse of discretion. *Id.* "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Yates v. Collier*, 868 F.3d 354, 359 (5th Cir. 2017) (internal quotation marks and citation omitted). Thus, if the district court's "account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse. *Id.* at 363 (internal quotation marks and citation omitted). This deference is a result of "the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Id.* at 360 (internal quotation marks and citation omitted).

## DISCUSSION

*Mootness*

### a. *General Mootness Rule*

Given that mootness is a jurisdictional inquiry,[12] we preliminarily turn our attention to Defendant's mootness argument. As a general rule, "a

---

[12] *See U.S. v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (acknowledging that "[a] case that becomes moot at any point during the proceedings is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts" (internal quotation marks and citation omitted)).

No. 17-50899

purported class action becomes moot when the personal claims of all named plaintiffs" have been satisfied prior to certification of a class, since, under such circumstances, there is no longer an Article III "case or controversy" for the court to resolve. *Murray v. Fid. Nat'l Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (internal citations omitted); *see also Sosna v. Iowa*, 419 U.S. 393, 402 (1975) (noting that "[t]here must . . . be a named plaintiff who has [an Article III] case or controversy at the time the complaint is filed" and "at the time the class is certified by the [d]istrict [c]ourt," as well as on review).[13]  It is undisputed that each of the Plaintiffs were transferred from county jails to state hospitals at least 6 weeks prior to the district court entering its class certification order.  Considering Plaintiffs' allegations and the relief requested, each Plaintiff's claim seemingly was satisfied upon his or her transfer.  Thus, unless Plaintiffs' claims fall within an exception to the general rule, this matter became moot on July 20, 2017 when the last Plaintiff remaining in a county jail was transferred to a state hospital.

### b. *Inherently Transitory Exception to Mootness*

Potential class actions involving claims that are "inherently transitory" fall within an exception to the general mootness rule, since such claims would otherwise likely evade review.  *See Genesis Healthcare v. Symczyk*, 569 U.S. 66, 76 (2013) (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)) (internal quotation marks and citation omitted).  Indeed, in these cases it is likely that "the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Id.* (internal quotation marks and citations omitted).  Therefore, in

---

[13] Where, however, the named plaintiff's claims become moot *after* a class has been properly certified in a matter, the expiration of the named plaintiff's claims does not have the effect of mooting the entire action since "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the named plaintiff]." *Sosna*, 419 U.S. at 399.

No. 17-50899

cases involving such claims, a class certification order is deemed to relate back to the time of the filing of the original complaint.  *See McLaughlin*, 500 U.S. at 52 (citing *Swisher v. Brady*, 438 U.S. 204, 213-214, n.11 (1978)).

While neither the Supreme Court nor this court has provided detailed guidance as to what makes a claim "inherently transitory," Supreme Court jurisprudence suggests that the following factors are pertinent to such a determination:  the challenged conduct giving rise to the claim is of a fleeting or temporary nature; uncertainty exists at the outset as to the duration of each plaintiff's exposure to the allegedly harmful conduct; it is unlikely that any given individual plaintiff could see his claim to fruition prior to the claim becoming moot; and there exists a constant group of people suffering the harm alleged by the plaintiffs.  *See, e.g.*, *Genesis Healthcare*, 569 U.S. at 76; *Gerstein v. Pugh*, 420 U.S. 103, 110, n.11 (1975).

Considering the foregoing, as well as the application of the doctrine by other courts in the prison context,[14] we believe that Plaintiffs' claims in this case qualify as "inherently transitory."  First, the putative plaintiffs' allegedly unlawful detention is of a fleeting or temporary nature, lasting anywhere from days to months.  Additionally, there is uncertainty at the inception of each

---

[14] *See, e.g.*, *Gerstein*, 420 U.S. at 110, n.11 (finding that the claims of pretrial detainees who argued that they were entitled to a probable cause hearing "belong[] . . . to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class"); *Amador v. Andrews*, 655 F.3d 89, 100-01 (2d Cir. 2011) (recognizing that "[w]hether claims are inherently transitory is an inquiry that must be made with reference to the claims of the class as a whole as opposed to any one individual claim for relief" and finding the claims of the plaintiffs, female inmates in New York prisons, to be inherently transitory given that "the odds of a[ plaintiff] being able to complete the [state's] grievance procedure [with respect to a sexual assault and/or harassment claim] and litigate a class action while still incarcerated [were] rather small"); *Olson v. v. Brown*, 594 F.3d 577, 583 (7th Cir. 2010) (emphasizing that the named plaintiff who was an inmate at a temporary detention center "did not know when his claim would become moot" since "[t]he duration of his claim was at the discretion of the [state] [d]epartment of [c]orrection").

9

No. 17-50899

potential plaintiff's claim regarding how long he or she will remain detained in a county jail prior to being transferred to a state hospital. Thus, although there are potential class members whose claims would not expire within the time it would take to obtain a class certification order, there is no way for Plaintiffs to ensure that any named plaintiff added to their complaint will be that individual. Additionally, even if an individual plaintiff were to maintain a live claim at the time of class certification, it is highly unlikely that such plaintiff's claims would remain live throughout the entirety of this lawsuit. Finally, regardless of the status of any individual named plaintiff's claim, there exists a constant group of people being subjected to Defendant's "first-come, first-served" policy complained of by Plaintiffs. Indeed, by way of analogy, such policy operates similarly to a revolving door. These characteristics of Plaintiffs' claims make them likely to evade review if they do not fall within an exception to the general mootness rule. *See Genesis*, 569 U.S. at 76.

Because of the inherently transitory nature of the claims in this matter, the expiration of all of Plaintiffs' claims prior to the district court entering its class certification order did not have the effect of mooting this action as a whole. Moreover, should the district court find it appropriate on remand to certify one or more classes of plaintiffs, its certification order would relate back to the filing of Plaintiffs' complaint. *See McLaughlin*, 500 U.S. at 52 (citing *Swisher*, 438 U.S. at 213-214, n.11). In so finding, we acknowledge the narrowness of the inherently transitory exception[15] but also recognize the "flexible character of the [Article] III mootness doctrine." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980).

---

[15] *See Rocky v. King*, 900 F.2d 864, 870 (5th Cir. 1990) (recognizing the narrow scope of the inherently transitory exception).

No. 17-50899

### *Rule 23*

Having satisfied ourselves of both our and the district court's jurisdiction over this matter, we now turn to the propriety of the district court's class certification order from a procedural standpoint. To obtain class certification, parties must satisfy the following Rule 23(a) requirements: (1) numerosity— "the class is so numerous that joinder of all members is impracticable"; (2) commonality—"there are questions of law or fact common to the class"; (3) typicality—"the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy of representation—"the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a); s*ee also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). In addition to each of the Rule 23(a) requirements, one Rule 23(b) requirement must be met for a class to be certified. FED. R. CIV. P. 23(b); *Wal-Mart*, 564 U.S. at 345. Here, Plaintiffs sought certification under Rule 23(b)(2), which is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

A party seeking class certification has the burden of establishing that all of Rule 23's requirements are met. *See Ibe*, 836 F.3d at 528 (internal citation omitted); *see also Wal-Mart*, 564 U.S. at 350 (noting that "Rule 23 does not set forth a mere pleading standard" and that "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule"). Thus, such a party must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation" and to satisfy at least one of Rule 23(b)'s

11

No. 17-50899

provisions "through evidentiary proof." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks and citation omitted).

Additionally, before certifying a class, a district court "must conduct a rigorous analysis of the Rule 23 prerequisites," which requires it to "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Yates*, 868 F.3d at 362 (quoting *Perry*, 675 F.3d at 837 and Wal-*Mart*, 564 U.S. at 350-51) (internal quotation marks and citation omitted). In light of this imperative, this court has held that "when certifying a class a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (2004). Notably, the obligation of a district court to conduct a rigorous analysis of Rule 23's requirements, as evidenced by written reasons for certification, is not dispensed with by the parties' stipulation to certification or failure to contest one or more of Rule 23's requirements, since "the court [is] bound to conduct its *own* thorough . . . inquiry." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (2002) (emphasis added). Such independent analysis is necessary to "protect unknown or unnamed potential class members [who], . . . by definition . . . do not and cannot participate in any stipulations concocted by the named parties." *Id.* (internal quotation marks and citation omitted). However, merits questions may only be considered to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (internal citations omitted).

No. 17-50899

Not disputing satisfaction of the numerosity requirement,[16] Defendant argues that the district court erred by failing to conduct a rigorous analysis of whether the commonality, typicality and adequacy of representation requirements, as well as Rule 23(b)(2)'s requirements for class-wide injunctive relief, are met here.  We agree.

### a. *Rule 23(a)*

#### 1. *Commonality*

To satisfy Rule 23(a)'s commonality requirement, "the putative class members' claims must depend upon a common contention," which "must be of such a nature that it is capable of class-wide resolution."  *Yates*, 868 F.3d at 361 (quoting *Wal-Mart*, 564 U.S. at 350) (internal quotation marks omitted). In other words, determining whether such "common contention" is true or false must allow for "resol[ution of] an issue that is central to the validity of each

---

[16] Though Defendant does not challenge satisfaction of Rule 23(a)'s numerosity requirement on appeal, we are compelled to point out the inadequacy of the district court's numerosity analysis, which was contained within a footnote of its class certification order. Specifically, the district court stated that "Hellerstedt does not challenge the requirement[] of numerosity" and that, "[h]aving reviewed the pleadings and all supporting evidence presented by the parties," it concluded that "Plaintiffs[] have met the burden of establishing numerosity."  While we make no comment as to whether numerosity in fact exists in this case, we note that the district court's superficial discussion demonstrates that it did not undertake the necessary "rigorous analysis" of such requirement to independently confirm its fulfilment. *See Yates*, 868 F.3d at 362 (internal quotation marks and citation omitted); *see also Vizena*, 360 F.3d at 503 (recognizing that district courts must state in detail how each of the Rule 23 requirements are met); *Stirman*, 280 F.3d at 563, n.7 (acknowledging the obligation of district courts to independently analyze each of the Rule 23 requirements). While a lengthy discussion regarding numerosity was likely not necessary given the Defendant's apparent concession on this point, the district court was obliged at a minimum to identify the approximate number of potential class members in this matter and other factors, if any, that bear on a determination of numerosity, as well as to explain the effect of those factors on its conclusion. *See Ibe*, 836 F.3d at 528 (recognizing that to establish numerosity, "[a] plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members" and that such factors as "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim" may be relevant to a numerosity analysis) (internal quotation marks and citation omitted)).  It erred in failing to do so.

13

No. 17-50899

one of the claims in one stroke." *Id.* (internal quotation marks and citation
omitted).   Accordingly, what is significant with respect to a commonality
determination is "not the raising of common questions—even in droves—but,
rather the capacity of a class-wide proceeding to generate common answers apt
to drive the resolution of the litigation." *Id.* (internal quotation marks and
citation omitted).   Indeed, a single common question of law or fact is sufficient
if it meets the foregoing criteria. *Ibe*, 836 F.3d at 528 (citing *Wal-Mart*, 564
U.S. at 350).   Further, to establish commonality, the plaintiff(s) must show
that "the class members have suffered the same injury." *Id.* (quoting *Wal-
Mart*, 564 U.S. at 349) (internal quotation marks and citation omitted).   While
the term "injury" is generally tied to the concept of damages, this court has
recognized that "an instance of injurious conduct, which would usually relate
more directly to the defendant's liability . . . , may constitute 'the same injury'"
for purposes of commonality. *In re Deepwater Horizon*, 739 F.3d 790, 810-11
(5th Cir. 2014).   Thus, commonality may exist even where the plaintiffs' alleged
damages are diverse. *Id.*

The district court's discussion of whether the requirement of
commonality is satisfied in this case includes excerpts from various federal
court cases and an acknowledgement that it had "reviewed the pleadings and
all supporting evidence in this case[] and look[ed] beyond the pleadings to
understand the claims, defenses, relevant facts, and applicable substantive
law." With no further stated analysis, the court concluded that Plaintiffs have
satisfied the commonality requirement by asserting the following common
questions of fact in this case:

> whether incompetent detainees and insanity acquittees who are
> committed to the custody of Hellerstedt's Department for
> restoration of their mental capacity so they may be tried or
> committed for evaluation to determine if they can continue to be
> confined, spend extended periods of time in county jails without

No. 17-50899

receiving restoration or evaluation services; and, if so, whether
Hellerstedt uses a policy or procedure to ensure that any resulting
delay in the implementation of such services and the place and
manner in the implementation of those services are the product of
the judgment rendered by a qualified professional.

The Court further found that "[t]he answers to these questions of fact may
implicate a common question of law," namely:

whether Hellerstedt violates the substantive due[]process rights of
incompetent detainees and insanity acquittees to be free from
conditions or restrictions of confinement that amount to
punishment absent criminal conviction by keeping such
individuals in county jail for extended periods of time while they
wait to receive restoration and evaluation services that are the
product of professional judgment.

Notably, however, the district court did not explain at all, much less with
specificity, how the determination of such questions would "resolve an issue
that is central to the validity of each one of the [putative class member's] claims
in one stroke." *Yates*, 868 F.3d at 361 (quoting *Wal-Mart*, 564 U.S. at 350)
(internal quotation marks omitted); *see also Perry*, 675 F.3d at 841 (finding
error in the district court's failure to explain why the common questions
identified were sufficient); *Vizena*, 360 F.3d at 503. Moreover, it is difficult to
appreciate from a plain reading of the common questions identified by the
district court how such questions are even capable of being resolved on a class-
wide basis. The district court's use of the phrase "extended periods of time"
as an integral part of its stated common questions is particularly problematic,
as such phrase is ambiguous. Not only is it unclear what period of time the
district court considers to be "extended," but also whether a time period is
"extended" could vary in different circumstances.[17]

_____

[17] We also note, incidentally, that the common questions identified by the district court
contain no specific reference to the "first-come, first-served" *policy* to which Plaintiffs contend
all purported class members are subject. This is puzzling given that, as we understand

No. 17-50899

The district court's failure to substantively address actual or potential differences in purported class members' individual circumstances and claims is also troublesome, since considering dissimilarities among claimants is essential to determining whether even a single common question exists.[18] *See Wal-Mart*, 564 U.S. at 358.  While we do not take a position at this juncture on whether critical disparities among putative plaintiffs exist here, we note that it is incumbent on the district court to consider and discuss the facts of this case, as well as the elements of Plaintiffs' claims, prior to rejecting Defendant's argument that dissimilarities among individual claimants obviate commonality.  *See Perry*, 675 F.3d at 843-44 (stating that where a district court rejects an argument that the merits of each purported class member's claims involve individualized inquiries that defeat commonality, it "must do so with reference to the elements and defenses and requisite proof for each of the proposed class claims").

Considering the foregoing, although we recognize that adequate common questions of law or fact may well exist in this case, we find that the district court failed to conduct the necessary rigorous analysis to properly determine whether the requirement of commonality is satisfied and further that the common questions identified by the district court, as currently worded, are insufficient to establish commonality.

## 2. Typicality and Adequacy of Representation

The Rule 23(a) requirements of typicality and adequacy of representation are "closely related" in that "demanding typicality on the part

---

Plaintiffs' allegations, it is such commonly applied policy and its effects that Plaintiffs challenge.

[18] In its class certification order, the district court's treatment of Defendant's argument in this regard was limited to quoting portions of cases from various federal courts that indicate that the presence of some variations among class members does not necessarily render class certification inappropriate.

No. 17-50899

of the representative helps ensure his adequacy as a representative." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485 n.27 (5th Cir. 1982). To demonstrate typicality, the parties seeking certification need not show "a complete identity of claims." *Stirman*, 280 F.3d at 562 (internal quotation marks and citation omitted)*; see also* FED. R. CIV. P. 23(a)(3). Rather, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* Moreover, the typicality inquiry is not concerned so much with the "strengths of the named and unnamed plaintiffs' cases" as with the "similarity of legal and remedial theories behind their claims." *Ibe*, 836 F.3d at 528-29 (internal quotation marks and citation omitted). Thus, if the claims of the named plaintiffs and putative class members "arise from a similar course of conduct and share the same legal theory," typicality will not be defeated by factual differences. *Stirman,* 280 F.3d at 562 (internal quotation marks and citations omitted).

Adequacy, in the Rule 23(a) context, concerns "class representatives, their counsel, and the relationship between the two." *Stirman*, 280 F.3d at 563 (quoting *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)) (internal quotation marks omitted). More specifically, adequacy encompasses the following three inquiries:    "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)) (internal quotation marks and citation omitted). Since "absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded

17

No. 17-50899

through adequate representation at all times." *Berger*, 257 F.3d at 480 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). Thus, to satisfy the adequacy of representation requirement, "the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Ibe*, 836 F.3d at 529 (quoting *Berger*, 257 F.3d at 482-83) (internal quotation marks omitted).

As with numerosity, the district court conducted *no* analysis regarding typicality or adequacy of representation, noting that Defendant had not challenged such requirements. Nevertheless, the court indicated that it "[had] reviewed the pleadings and all supporting evidence presented by the parties" and concluded that "Plaintiffs[] have met the burden of establishing" typicality and adequacy of representation. That the court found these requirements satisfied is concerning given that it did not explicitly certify or recognize any particular class representatives in its class certification order. Rather, the court ordered Plaintiffs to "file an amended complaint on or before October 2, 2017, which shall include named plaintiffs to be appointed as class representatives for the two classes."[19]

Plaintiffs maintain that "[b]ecause commonality is satisfied in this case . . . the district court's order effectively found that *any* class member's claims would be typical of all other class members." Similarly, they contend that "[b]ecause all class members are alleging that Defendant's same common

---

[19] The district court presumably took such action because the named plaintiffs had each been transferred to state hospitals at the time the district court ruled on Plaintiffs' motion for class certification. We acknowledge that the brief duration of the purported class claims may throw some complexity into the district court's Rule 23(a) analysis. This, however, does not excuse the court from conducting such analysis with respect to specific class representatives identified by the court. While a purported class claim's inherently transitory nature may save it from mootness, we are aware of no authority suggesting that this characteristic absolves such claim or the action that encompasses it from full compliance with Rule 23(a).

No. 17-50899

policy results in unconstitutional detention, the district court necessarily found
that any of them can adequately represent the interests of the class." Such
arguments are without merit. While we recognize that there often is overlap
among the requirements of commonality, typicality and adequacy of
representation,[20] it does not follow that the latter two are necessarily satisfied
if the former is satisfied—which, at this point, has not been properly
determined. In other words, a finding of commonality does not excuse a
district court from appropriately analyzing whether typicality and adequacy of
representation exist. Moreover, such analysis must be conducted not with
respect to *any* potential claimant, but with respect to "*the* representative
parties." *See* FED. R. CIV. P. 23(a) (emphasis added). Indeed, a district court
can only appropriately assess such factors as "the willingness and ability of the
representatives to . . . control the litigation and to protect the interests of
absentees"[21] with reference to one or more specific claimants, as opposed to any
claimant that could fall within the putative class.

Plaintiffs' suggestion that the district court's ability to amend its existing
certification order to approve new class representatives saves the order from
its deficiencies is likewise without merit. Rule 23 makes clear that a class
action may proceed "only if" each of the Rule 23(a) requirements and at least
one Rule 23(b) requirement is satisfied. *See* FED. R. CIV. P. 23; *see also Baker
v. Washington Mut. Fin. Grp., L.L.C.*, 193 F. App'x 294, 296 (5th Cir. 2006)
(recognizing that "[a] class can be certified *only if* it meets each of the
requirements outlined in Rule 23(a)" (emphasis added)). Further, nothing in
Rule 23(c), which allows for the amendment of an order granting or denying
class certification, relieves plaintiffs seeking class certification from complying

---

[20] *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

[21] *See Slade*, 856 F.3d at 412 (quoting *Feder*, 429 F.3d at 130) (internal quotation
marks and citation omitted).

19

No. 17-50899

with, or a court certifying a class from finding satisfaction of, the requirements of Rule 23(a) prior to a class initially being certified. *See* FED. R. CIV. P. 23(c).

Accordingly, we find that the district court's unsupported conclusion that typicality and adequacy are satisfied, coupled with its failure to identify specific class representatives and meaningfully analyze their fitness to serve in such capacity, defies the mandate to conduct a rigorous Rule 23(a) analysis including detailed written reasons that reference the facts and claims at hand. *See Yates*, 868 F.3d at 362; *Vizena*, 360 F.3d at 503; *Stirman*, 280 F.3d at 563, n.7. Thus, the district court erred on this basis also in certifying the Incompetent Detainee and Insanity Acquittee classes.

### b. *Rule 23(b)(2)*

In addition to satisfying the four Rule 23(a) prerequisites, to have a class properly certified, the party seeking certification must show that one of the three Rule 23(b) requirements is fulfilled. *See* FED. R. CIV. P. 23(b). Satisfaction of any of the Rule 23(b) requirements is contingent on satisfaction of each of the Rule 23(a) requirements in that a criterion for maintaining a class action under any of the Rule 23(b) requirements is compliance with Rule 23(a). *See id.* (providing that "[a] class action may be maintained if Rule 23(a) is satisfied" and if one of the three Rule 23(b) requirements is met). The district court determined that the requirements of Rule 23(b)(2)[22] are satisfied here. In light of our finding that the district court failed to conduct a rigorous analysis of the Rule 23(a) requirements and, as a result, erred in certifying both purported classes of plaintiffs, it would be premature at this juncture for us to address the merits of whether Rule 23(b)(2)'s strictures are met.

---

[22] As stated above, to obtain class certification under Rule 23(b)(2), the party seeking certification must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED R. CIV. P. 23(b)(2).

No. 17-50899

Given the current posture of this case, however, we take this opportunity to briefly discuss what is required to comply with Rule 23(b)(2), the key to which is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotation marks and citation omitted). Rule 23(b)(2) certification is warranted if the following three requirements are satisfied: "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific." *Yates*, 868 F.3d at 366-67 (quoting *Maldanado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007)) (internal quotation marks omitted). We note that satisfaction of these requirements is premised on "common behavior by the defendant toward the class," as opposed to the presence of common issues. *Id.* at 366 (quoting *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012)) (internal quotation marks omitted). Thus, this court has found purported class members to have been "harmed in essentially the same way" where they have each been subject to the same allegedly wrongful *policy*, despite variations in the degree of damages suffered by each. *See Yates*, 868 F.3d at 367-68 (finding that state prisoners who were "subject to the *same* policy on climate control" were "harmed in essentially the *same* way," *i.e.*, "by exposure to a substantial risk of serious harm because of exposure to excessive heat").

With respect to the Rule 23(b)(2) requirement that the injunctive relief sought be specific, we have recognized that plaintiffs must "give content to the injunctive relief they seek so that final injunctive relief may be crafted to describe in *reasonable detail* the acts required." *Yates*, 868 F.3d at 367 (quoting *Perry*, 675 F.3d at 848) (internal quotation marks and citation omitted) (emphasis added). While plaintiffs seeking class certification are not required

21

No. 17-50899

to spell out "every jot and tittle of injunctive relief" at the class certification stage, *id.* at 368, they must be able to explain "how a court could define or enforce meaningful injunctive relief." *Maldonado*, 493 F.3d at 525. We note, therefore, that to comply with Rule 23(b)(2), Plaintiffs will, at minimum, have to describe in some kind of detail from what actions or inactions Defendant should be restrained. A general request that Defendant be restrained from violating Plaintiffs' Fourteenth Amendment protections is insufficient.[23]

## CONCLUSION

The district court failed to conduct a rigorous analysis of any of the Rule 23(a) factors and, therefore, erred in certifying the Incompetent Detainee and Insanity Acquittee classes. Accordingly, we VACATE the district court's class certification order and REMAND this matter to the district court for further proceedings consistent with this opinion.

---

[23] Here, in their "Prayer for Relief," Plaintiffs request that the District Court "[i]ssue preliminary and permanent injunctive relief restraining Defendant from violating the Fourteenth Amendment to the United States Constitution in relation to the confinement of individuals awaiting competency restoration treatment and the confinement of persons found not guilty by reason of insanity and awaiting evaluation and/or treatment services." In turn, the district court held that "[i]f Plaintiffs can establish that Hellerstedt violates the due-process rights of the proposed class members, the court may render an injunction that will state with specificity the acts to be restrained or required without the need for specific relief tailored to each class member."

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

November 07, 2018

Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

        No. 17-50899   Joseph Ward, et al v. John Hellerstedt
                       USDC No. 1:16-CV-917

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Debbie T. Graham, Deputy Clerk

cc:
        Mr. Michael Abrams
        Mr. Thomas A. Albright
        Mr. Rance Craft
        Mr. John Michael Gaddis
        Mr. Peter Thomas Hofer
        Ms. Beth L. Mitchell
        Ms. Lisa Snead