IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH WARD, by his next friend FLOYD JENNINGS; | § § § | |
| MARC LAWSON, by his next friend KRISTA CHACONA; | § § § | |
| JENNIFER LAMPKIN, by her next friend ELSIE CRAVEN; | § § § | CIVIL ACTION NO. 1:16-cv-00917-LY |
| CECIL ADICKES, by his next friend ELSIE CRAVEN; | § § § | |
| KENNETH JONES, by his next friend PATRICIA SEDITA; | § § § | |
| MARY SAPP, by her next friend, LOURDES RODRIGUEZ; and | § § § | |
| JULIAN TORRES, by his next friend MELISSA SHEARER | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| COURTNEY PHILLIPS, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission, | § § § § § | **CLASS ACTION** |
| Defendant. | § | |

**PLAINTIFFS' FIFTH AMENDED COMPLAINT
FOR INJUNCTIVE AND DECLARATORY RELIEF**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiffs Joseph Ward, Marc

Lawson, Jennifer Lampkin, Cecil Adickes, Kenneth Jones, Mary Sapp, and Julian Torres, who

appear individually and on behalf of all others similarly situated, hereby file their Fifth Amended

Complaint against Courtney Phillips, Executive Commissioner of the Texas Health and Human Services Commission, and allege as follows:

## INTRODUCTION

1.        When an individual charged with a crime is found to be incompetent to stand trial, Texas law requires that the Texas Health and Human Services Commission ("HHSC")[1] provide the incompetent detainee with treatment aimed at restoring the individual to competency.  Texas law further requires that this specialized competency restoration treatment must be provided by HHSC, and the treatment can only be provided in an HHSC mental health facility[2] or, under certain circumstances and with proper supervision, in a community-based outpatient program overseen by the HHSC.[3]

2.        When an individual charged with a crime is found not guilty by reason of insanity and the court determines that the offense of which the person was acquitted involved dangerous conduct, Texas law requires that the court commit the insanity acquittee to a facility designated by HHSC for evaluation of the person's present mental condition and for treatment.  These services can be provided only by HHSC.  Texas law states that an insanity acquittee cannot remain in jail awaiting transfer to a facility designated by HHSC for a period longer than fourteen days.

3.        Because HHSC lacks sufficient forensic capacity, HHSC refuses to accept custody of those ordered to its care and instead places persons found incompetent to stand trial and persons found not guilty by reason of insanity on waiting lists until a bed at an HHSC mental health facility

---

[1] As of September 1, 2017, oversight of the state hospitals and behavioral health programs, formerly the purview of the Department of State Health Services, was moved under the oversight of the Health and Human Services Commission.

[2] When Plaintiffs refer to HHSC mental health facilities, this term encompasses the entire system of all HHSC operated, funded, and contracted psychiatric beds.

[3] In addition to community-based outpatient programs, in 2013, the Texas Legislature appropriated money for two pilot jail-based competency restoration programs.  *See* Acts 2013, 83rd Leg., ch. 797 (S.B. 1475), § 2, eff. Sept. 1, 2013.  As of the date of this filing, a few jail-based competency-restoration program have been established; however, these programs are available only to offenders who are not committed to a maximum-security facility.

becomes available. It is common for these individuals, after the issuance of the order committing them to HHSC facilities, to wait in jail for months until HHSC accepts custody.

4.     Often, incompetent detainees—despite being presumed innocent—end up being incarcerated in jail prior to adjudication and pending treatment longer than if they had been found guilty of the alleged crime. In addition, insanity acquittees—despite being acquitted—also end up being incarcerated in jail for months after an adjudication that absolves them of criminal responsibility.

5.     This situation is not new. To manage forensic access to its mental health facilities, HHSC created its waiting lists for individuals found incompetent to stand trial or found not guilty by reason of insanity and ordered to an HHSC mental health facility in 2006. Since 2006, the number of criminal defendants found incompetent or not guilty by reason of insanity and ordered to an HHSC mental health facility for evaluation and/or treatment has only increased.

6.     As a result of the delays caused by HHSC, incompetent detainees and insanity acquittees languish in county jails absent a criminal conviction until a bed becomes available at an HHSC mental health facility. These delays harm Plaintiffs and other similarly situated individuals because Texas jails are not designed or administered to provide either competency restoration treatment for incompetent detainees or evaluation and/or treatment services for the psychiatric needs of insanity acquittees. As a result, Plaintiffs are left with no meaningful competency restoration or evaluation and treatment while they wait in jail for a bed at an HHSC mental health facility. As such, incompetent detainees and insanity acquittees suffer needless deterioration of their mental health as they wait in jails, frequently in prolonged isolation, for weeks or months before they receive the services HHSC is responsible for providing.

7.     The delays caused by HHSC violate the due process rights of incompetent detainees and insanity acquittees as guaranteed by the Fourteenth Amendment.  Defendant has a duty to accept and provide state-mandated restoration and evaluation services to detainees within a reasonable period of time, which must be measured in days, not weeks or months.  For insanity acquittees, Texas law specifically mandates that such persons not remain in jail in excess of fourteen days.  Defendant's failure to timely accept transfer of incompetent detainees and insanity acquittees to its facilities and to provide timely restoration and evaluative treatment, however, forces Plaintiffs and members of the Classes they represent to remain incarcerated for weeks and months in county jails absent criminal convictions and without any of the court-ordered competency restoration treatment or evaluation and/or treatment services that Defendant and HHSC are statutorily required to provide.  Accordingly, Plaintiffs seek a declaration of their rights and an order enjoining Defendant from violating their rights.

## JURISDICTION AND VENUE

8.     This civil action is authorized by 42 U.S.C. § 1983 to redress the deprivation under color of law of rights guaranteed by the United States Constitution.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

10.     Plaintiff Joseph Ward is a defendant in a criminal case in the 351st Judicial District Court in Harris County, Texas.  On or about February 17, 2016, Mr. Ward was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Mr. Ward to an HHSC

mental health facility; instead, he was placed on an HHSC waiting list.  As a result, he was incarcerated in the Harris County Jail for 59 weeks before being admitted to North Texas State Hospital-Vernon on April 4, 2017.  While in jail, Mr. Ward did not receive competency restoration treatment.  Plaintiff Joseph Ward's mental state limited his ability to protect his legal interests.  As such, a next friend was necessary to represent his interests.  Floyd Jennings, Chief of the Misdemeanor Mental Health Division of the Harris County Public Defender's Office has volunteered and agreed to serve as Plaintiff Ward's next friend.

11.     Plaintiff Marc Lawson is a defendant in a criminal case in the 390th Judicial District Court in Travis County, Texas.  On or about May 11, 2016, Mr. Lawson was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment towards the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Lawson to an HHSC mental health facility.  Despite the criminal court's order, HHSC did not allow Travis County to timely transfer Mr. Lawson to its mental health facility; instead, he was placed on an HHSC waiting list.  As a result, he was incarcerated in the Travis County Jail for sixty weeks before being admitted to North Texas State Hospital-Vernon on July 20, 2017.  Mr. Lawson did not receive competency restoration treatment in jail.  Plaintiff Lawson's mental state limited his ability to protect his legal interests.  As such, a next friend was necessary to represent his interests.  Plaintiff Lawson's defense attorney, Krista Chacona, has volunteered and agreed to serve as Plaintiff Lawson's next friend.

12.     Plaintiff Jennifer Lampkin is a defendant in a criminal case in the 403rd Judicial District Court in Travis County, Texas.  On or about March 31, 2016, Ms. Lampkin was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment towards the specific objective of attaining competency to stand trial.

The order also required the Sheriff to transport Ms. Lampkin to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Travis County to timely transfer Ms. Lampkin to one of its mental health facilities; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated in the Travis County Jail for 65 weeks before being admitted to North Texas State Hospital-Vernon on July 6, 2017. Ms. Lampkin did not receive competency restoration treatment in jail. Plaintiff Lampkin's mental state limited her ability to protect her legal interests. As such, a next friend was necessary to represent her interests. Plaintiff Lampkin's defense attorney, Elsie Craven, has volunteered and agreed to serve as Plaintiff Lampkin's next friend.

13.     Plaintiff Cecil Adickes was a defendant in a criminal case in the 147th Judicial District Court in Travis County, Texas. On or about November 7, 2016, Mr. Adickes was found not guilty by reason of insanity and was ordered to be committed to a maximum security mental health facility for evaluation of his present mental condition and for treatment. Despite the criminal court's order and the fourteen-day time limit required by Texas Code of Criminal Procedure Article 46C.160, HHSC did not allow Travis County to timely transfer Mr. Adickes to one of its mental health facilities; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Travis County Jail for 13 weeks before being admitted to North Texas State Hospital-Vernon on February 9, 2017. Mr. Adickes did not and could not receive the court-ordered evaluation and treatment in jail. To assist Mr. Adickes in the representation of his interests, Plaintiff Adickes's criminal defense attorney, Elsie Craven, has volunteered and agreed to serve as Plaintiff Adickes's next friend.

14.     Plaintiff Kenneth Jones is a defendant in a criminal case in the 185th Judicial District Court in Harris County, Texas. On or about August 10, 2017, Mr. Jones was found

incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. Despite the criminal court's order, HHSC did not allow Harris County to transfer Mr. Jones to one of its mental health facilities; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated for 49 weeks before being admitted to Rusk State Hospital on July 19, 2018. Mr. Jones did not and could not receive competency restoration treatment in jail. Plaintiff Jones's current mental state limits his ability to protect his legal interests. As such, a next friend is necessary to represent his interests. Plaintiff Jones's criminal defense attorney, Patricia Sedita, has volunteered and agreed to serve as Plaintiff Jones's next friend.

15. Plaintiff Mary Sapp was a defendant in a criminal case in the 185th Judicial District Court in Harris County, Texas. On or about June 22, 2016, Ms. Sapp was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. Despite the criminal court's order, HHSC did not allow Harris County to transfer Ms. Sapp to one of its mental health facilities; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated for eight weeks before being admitted to North Texas State Hospital-Vernon on August 23, 2016. Ms. Sapp did not and could not receive competency restoration treatment in jail.

16. After being restored to competency and returned to Harris County for trial, Ms. Sapp was found not guilty by reason of insanity and was ordered to be committed to a maximum security mental health facility for evaluation of her present mental condition and for treatment on or about May 23, 2017. Despite the criminal court's order and the 14-day time limit required by Texas Code of Criminal Procedure Article 46C.160, HHSC did not allow Harris County to timely transfer Ms. Sapp to one if its mental health facilities; instead, she was again placed on an HHSC

waiting list. As a result, she was incarcerated in the Harris County Jail for 27 weeks before being admitted to North Texas State Hospital-Vernon on December 7, 2017. Ms. Sapp did not and could not receive the court-ordered evaluation and treatment in jail. To assist Ms. Sapp in the representation of her interests, Plaintiff Sapp's criminal defense attorney, Lourdes Rodriguez, has volunteered and agreed to serve as Plaintiff Sapp's next friend.

17.     Plaintiff Julian Torres is a defendant in a criminal case in the 5th County Court at Law in Travis County, Texas. On or about April16, 2019, Mr. Torres was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. Despite the criminal court's order, HHSC has not allowed Travis County to transfer Mr. Torres to one if its mental health facilities; instead, he was placed on an HHSC waiting list. As a result, he continues to be incarcerated in the Travis County Jail. Mr. Torres does not receive competency restoration treatment in jail and has been waiting to be transferred to an HHSC mental health facility for competency treatment. Plaintiff Torres's current mental state limits his ability to protect his legal interests. As such, a next friend is necessary to represent his interests. Plaintiff Torres's criminal defense attorney is the Travis County Mental Health Public Defender's Office. Melissa Shearer, head of the Travis County Mental Health Public Defender's Office, has volunteered and agreed to serve as his next friend.

18.     Defendant Courtney Phillips is currently the duly appointed Executive Commissioner of the Texas Health and Human Services Commission and has been delegated the administration of that agency. As Executive Commissioner, Defendant Phillips is ultimately responsible for ensuring that HHSC is in full compliance with federal and state law, as well as agency rules, regulations, and policies. Defendant Phillips is responsible for "administering

human services programs regarding mental health, including: administering and coordinating mental health services at the local and state level; operating the state's mental health facilities," and "designat[ing] the state hospitals to which persons with mental illness from each district shall be admitted." TEX. HEALTH & SAFETY CODE § 1001.072 and § 552.001. Defendant Phillips is sued in her official capacity and is served with this Fifth Amended Complaint through her attorneys of record, Thomas A. Albright and Michael R. Abrams.

## CLASS ACTION ALLLEGATIONS

19. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated as members of the following plaintiff classes:

a. Class for Incompetent Detainees with Named Plaintiffs Joseph Ward, Marc Lawson, Jennifer Lampkin, Kenneth Jones, Mary Sapp, and Julian Torres, through their next friends, being appointed as class representatives:

> All persons who are now, or will be in the future, (a) charged with a Texas crime, (b) court-ordered to an HHSC mental health facility for competency restoration services; but, (c) because of HHSC's insufficient forensic capacity, (d) remain incarcerated in a county jail more than 21 days from the day HHSC receives the court order to the day HHSC notifies the jail the person can be admitted to an HHSC mental health facility.

b. Class for Insanity Acquittees with Named Plaintiffs Cecil Adickes and Mary Sapp, through their next friends, being appointed as class representatives:

> All persons who are now, or will be in the future, (a) charged with a Texas crime and found not guilty by reason of insanity, (b) ordered to receive evaluation and/or treatment services at an HHSC mental health facility, but, (c) due to HHSC's insufficient forensic capacity, (d) remain incarcerated in a county jail more than 14 days from the day HHSC receives the court order to the day it notifies the jail the person can be admitted to an HHSC mental health facility.

20.     Plaintiffs seek class-wide declaratory and injunctive relief pursuant to Rule 23(b)(2).

21.     While the precise number of Class Members in each class is not known to Plaintiffs with certainty because the number necessarily fluctuates, based on Defendant's recent discovery responses, Plaintiffs estimate that as of March 15, 2019, there are approximately 771 individuals who, although ordered to an HHSC mental health facility to receive competency restoration services or evaluation and treatment services, remain incarcerated in jail.  Of these, 615 individuals have been waiting in jail longer than 21 days—in many of these cases, the wait is months long.  As for potential future Class Members, that number is indeterminable.  Class Members are detained in over seventy-five different county jails located throughout the state of Texas.

22.     As for the class of individuals who have been found incompetent to stand trial, the Plaintiffs' claims are typical of the claims of all members of the Class. Because of Defendant's insufficient forensic capacity, the individual Plaintiffs and the Class have all been adjudicated, or will be adjudicated, to be incompetent to stand trial and are, or will, remain incarcerated in jail more than twenty-one days waiting for a bed at an HHSC mental health facility to begin receiving the statutorily required competency restoration treatment.  Plaintiffs and all members of the Class have similarly suffered harm or will suffer harm in the future arising from Defendant's actions and inaction.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  These common legal and factual questions include:

> Whether HHSC has failed to accept the ordered transfer of Plaintiffs and other Class Members to its facilities for competency restoration treatment in a timely manner;

Whether Defendant's failure to admit individuals determined incompetent to stand trial and ordered to HHSC's mental health facilities for competency restoration purposes in a reasonably timely manner, (e.g., within twenty-one days of receiving the court order committing them to an HHSC mental health facility) causing them to remain incarcerated in county jails, violates the Fourteenth Amendment to the United States Constitution;

Whether Plaintiffs and other Class Members are entitled to the declaratory and injunctive relief they seek; and

Whether Plaintiffs and other Class Members are entitled to an award of reasonable attorney's fees and costs.

24.     As for the class of individuals who have been found not guilty by reason of insanity, the Plaintiffs' claims are typical of the claims of all members of the Class. Because of Defendant's insufficient forensic capacity, the individual Plaintiffs and the Class have all been, or will be, found not guilty by reason of insanity and are, or will be, incarcerated in jail for more than fourteen days while waiting for a bed at an HHSC mental health facility to receive the statutorily required evaluation and/or treatment services. Plaintiffs and all members of the Class have similarly suffered harm or will suffer harm in the future arising from Defendant's actions and inaction.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. These common legal and factual questions include:

Whether HHSC has failed to accept transfer of individual Plaintiffs and other class members who have been found not guilty by reason of insanity for evaluation and/or treatment services in a timely manner;

Whether HHSC's failure to admit individuals who have been found not guilty by reason of insanity and ordered by the criminal court to its mental health facility for evaluation and/or treatment services within fourteen days, causing them to remain incarcerated in county jails, violates the Fourteenth Amendment to the United States Constitution;

Whether Plaintiffs and other Class Members are entitled to the declaratory and injunctive relief they seek; and

Whether Plaintiffs and other Class Members are entitled to an award of reasonable attorney's fees and costs.

26.     As to both proposed classes, Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  There are no conflicts of interest between the Plaintiffs and the other members of the Classes.  The Class members will vigorously prosecute this action on behalf of the Classes.  The Plaintiffs are represented by competent counsel with considerable skill and experience in civil rights and mental health litigation, who will vigorously prosecute this case on behalf of the Classes.

27.     For both incompetent detainees and insanity acquittees, HHSC has acted or failed or refused to act on grounds generally applicable to the entirety of both Classes.

28.     The claims asserted herein are inherently transitory.  There is a continuing and substantial public interest in these matters, justifying declaratory and injunctive relief in favor of Plaintiffs and the Classes.

29.     This suit may be maintained as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure because Plaintiffs and other members of the Classes seek declaratory and injunctive relief and all of the necessary factors of numerosity, commonality, typicality, and adequacy are present.

30.     A class action is the best available method for adjudication of these legal issues because individual litigation of these claims would be impracticable and would be unduly burdensome to the courts.  Further, this suit may be maintained as a class action because common questions of law and fact predominate over questions affecting only individual class members, and individual litigation would increase the likelihood of inconsistent or contradictory judgments.  A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## FACTUAL ALLEGATIONS

31.     Defendant and HHSC, through their actions and inaction, cause incompetent detainees and insanity acquittees to be incarcerated for weeks or months before HHSC provides them their court-ordered competency restoration treatment or evaluation and/or treatment services.

**A.      Defendant's duty to timely admit incompetent detainees to an HHSC mental health facility for competency restoration services.**

32.     Under state and federal law, individuals who lack the ability to understand the nature of the criminal court proceedings against them may not be tried.

33.     Article 46B of the Texas Code of Criminal Procedure sets forth the procedures that Texas courts must follow when a criminal defendant's mental competency is challenged during criminal proceedings.

34.     A person is incompetent to stand trial if he or she does not have "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding," or "a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. art. 46B.003(a)(1)&(2).

35.     "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial." *Id.*, art. 46B.004(a). "If the court determines that there is evidence to support a finding of incompetence, the court . . . shall stay all other proceedings in the case." *Id.*, art. 46B.004(d). "If the defendant is found incompetent to stand trial, the court shall proceed under Subchapter D." *Id.*

36.     Pursuant to Subchapter D, article 46B.071, the court, on a determination that a criminal defendant is incompetent to stand trial, shall either commit the defendant to a mental health facility designated by HHSC under 46B.073, or release the defendant on bail subject to conditions under 46B.072. *Id.*, art. 46B.071.

37.     For a defendant not released on bail, the court shall commit a defendant to a mental health facility or residential care facility for a period not to exceed 60 days (misdemeanor) or 120 days (felony) "*for purposes of further examination and competency restoration services with the specific objective of the defendant attaining competency to stand trial*."  *Id.*, art. 46B.073(b) (emphasis added).

38.     If a defendant is charged with a "violent offense," as listed in article 17.032(a), other than an assault, or the indictment alleges an affirmative finding that a deadly weapon was used during the commission of a felony, "the court shall enter an order committing the defendant to the maximum security unit [MSU] of any facility designated by [HHSC] . . .."  *Id.*, art. 46B.073(c).  If the defendant is not charged with one of the enumerated offenses, "the court shall enter an order committing the defendant to a mental health facility or residential care facility . . .."  *Id.*, art. 46B.073(d).

39.     An order committing the defendant for restoration of competency "must place the defendant in the custody of the sheriff for transportation to the facility in which the defendant is to receive treatment for purposes of competency restoration."  *Id.*, art. 46B.075.

40.     Not later than the date of the order of commitment, the court must send a copy of the order to the facility to which the defendant is committed.  *Id.*, art. 46B.076(a).

41.     The facility to which the defendant is committed must: develop an individual program of treatment; assess and evaluate whether the defendant will obtain competency in the foreseeable future; and report to the court and local mental health or intellectual disability authority on defendant's progress toward achieving competency.  *Id.*, art. 46B.077(a).

42.     Not later than the 15th day before the date on which the restoration period is to expire, the head of the facility must so notify the court that the restoration period is about to expire.

*Id.*, art. 46B.079(a).  Further, the head of the facility must also "promptly" notify the court when the defendant has obtained competency to stand trial or upon a determination that the defendant will not attain competency in the foreseeable future.  *Id.*, art. 46B.079(b).

43.     On the return of the defendant to the court, the court must make a determination as to the defendant's competency to stand trial.  The court must make this determination not later than the 20th day after the court received the notice from the head of the facility required by article 46B.079.  *Id.*, art. 46B.084(a).   If the defendant is found competent to stand trial, criminal proceedings may be resumed; if the defendant is found incompetent to stand trial, the court may determine whether the defendant should be subject to civil commitment.

**B.     Defendant's duty to timely admit individuals found not guilty by reason of insanity to an HHSC mental health facility for evaluation and/or treatment.**

44.     Article 46C of the Texas Code of Criminal Procedure sets forth the procedures that Texas courts must follow when the defense of insanity is raised on behalf of a criminal defendant.

45.     A person is not guilty by reason of insanity if a judge or jury has determined: "(1) the prosecution has established beyond a reasonable doubt that the alleged conduct constituting the offense was committed; and (2) the defense has established by a preponderance of the evidence that the defendant was insane at the time of the alleged conduct." Tex. Code Crim. Proc. art. 46C.153(a).

46.     "[A] defendant who is found not guilty by reason of insanity stands acquitted of the offense charged and may not be considered a person charged with an offense." *Id.*, art. 46C.155(a).

47.     Since the individual is acquitted of the offense and no longer considered a person charged with an offense, "…the court may [only] order the defendant detained in jail or any other suitable place for a period not to exceed 14 days." *Id.*, art. 46C.160(a).

48.     Following a finding that an individual is not guilty by reason of insanity, the court must immediately determine whether the offense of which the person was acquitted involved dangerous conduct as defined in art. 46C.157.

49.     If the court determines that the offense involved dangerous conduct, "[t]he court shall order the acquitted person to be committed for evaluation of the person's present mental condition and for treatment to the maximum security unit of any facility designated by the [HHSC]." *Id.*, art. 46C.251(a).

50.     When there is a finding of dangerous conduct and an insanity acquittee is committed to an HHSC facility for evaluation and/or treatment services, the facility designated by HHSC receives a copy of the transcript of all medical testimony and certain identifying information regarding the insanity acquittee. *Id.*, art. 46C.251(b)(1)&(2).

51.     Upon transfer of the insanity acquittee to a facility designated by HHSC within 14 days, and following the evaluation and/or treatment of the insanity acquittee, HHSC must file a report that describes and explains the procedure, techniques, and tests used in the examination of the person. *Id.*, art. 46C.252(b). "The report must address:

> (1) whether the acquitted person has a mental illness or [intellectual disability] and, if so, whether the mental illness or [intellectual disability] is severe;
> (2) whether as a result of any severe mental illness or [intellectual disability] the acquitted person is likely to cause serious harm to another;
> (3) whether as a result of any impairment the acquitted person is subject to commitment under Subtitle C or D, Title 7, Health and Safety Code;
> (4) prospective treatment and supervision options, if any, appropriate for the acquitted person; and
> (5) whether any required treatment and supervision can be safely and effectively provided as outpatient or community-based treatment and supervision."

*Id.*, art. 46C.252(c).

52.     On the return of the insanity acquittee to court, the court shall conduct a hearing on disposition and shall order the acquitted person (i) committed for inpatient treatment or residential

care, (ii) to receive outpatient or community-based treatment and supervision, (iii) transferred to an appropriate court for civil commitment proceedings under the Texas Health and Safety Code, or (iv) discharged and immediately released. *Id.*, arts. 46C.253(b)-(e).

**C.    County jails are unable to provide competency restoration services to individuals found incompetent to stand trial and are unable to provide evaluation and/or treatment services to individuals found not guilty by reason of insanity.**

53.    County jails in Texas are inappropriate settings for the care and treatment of individuals with mental illness or intellectual disabilities (formerly called "mental retardation"). Jails are not designed to be therapeutic—they are inherently punitive—nor do they provide any treatment aimed at restoring a person to competency or evaluation and/or treatment services for individuals found not guilty by reason of insanity.

54.    Correctional facilities, particularly facilities designed for short-term detention, do not have the staffing, funding, or capabilities to provide treatment aimed at restoring a person to competency or evaluation and/or treatment services for individuals found not guilty by reason of insanity.

55.    Detainees who are found incompetent to stand trial and detainees who are found not guilty by reason of insanity are often the most severely mentally ill in Texas jail settings.

56.    Most Texas jails do not have the ability to provide even basic psychiatric stabilization and management.  As a result, many detainees with serious mental illness are harmed by the punitive jail setting as manifested by either increased symptoms of their underlying psychiatric disorders or lack of improvement regarding their current symptoms.  By refusing to timely take custody of detainees (both incompetent detainees and insanity acquittees), Defendant and HHSC cause such persons to be incarcerated in county jails under conditions nearly certain to exacerbate their mental health conditions.

57.     Because county jails are often unable to provide even basic mental health treatment, incompetent detainees and insanity acquittees frequently end up between a rock and a hard place: either they are housed in the general jail population—often with convicted offenders—or they are placed in solitary confinement, which causes their mental health to further deteriorate.  This deterioration conflicts with the State's interest in prompt evaluation and treatment so that incompetent detainees may be brought to trial, or so that insanity acquittees are not punished for crimes they were acquitted of and are appropriately committed, transferred, or released.

58.     Besides struggling to provide even basic mental health care, county jails in Texas do not have the specific services necessary to restore individuals to competency to stand trial, such as the most current medications, identification of specific social needs to restore and maintain competency, and training specific to the restoration of competency.  In contrast, state mental health facilities are specifically designed to provide inpatient treatment to restore incompetent detainees to competence, thereby enabling them to stand trial.

59.     County jails in Texas also do not have the specific services necessary to provide evaluation and/or treatment services to insanity acquittees.  State mental health facilities, however, are specifically designed to provide inpatient treatment and to conduct evaluations to make complex determinations about a person's mental health condition(s), including whether a person is likely to cause serious harm to another, whether a person is subject to commitment under the Texas Health and Safety Code, and whether prospective treatment and supervision options are appropriate, safe, and effective.

60.     Nevertheless, Defendant knowingly, intentionally, and deliberately refuses to accept individuals found incompetent to stand trial and individuals found not guilty by reason of insanity into state mental health facilities in violation of the requirements of Chapters 46B and

46C of the Texas Code of Criminal Procedure, the orders of the criminal courts, and the U.S. Constitution.

**D.     Defendant has failed to timely admit incompetent detainees and insanity acquittees who have been ordered to an HHSC mental health facility.**

61.     According to a 2014 Joint Report by the National Sheriffs' Association and the Treatment Advocacy Center, "Texas is among the states with the lowest number of public psychiatric beds and among the stingiest states in per capita mental health spending."

62.     In February 2006, due to HHSC's insufficient forensic capacity, it implemented waiting lists to track detainees (both incompetent detainees and insanity acquittees) who remain in jail while waiting for a bed in an HHSC mental health facility.  HHSC created two waiting lists to manage its lack of forensic capacity: the Maximum Security Unit ("MSU") Admission List and the Forensic Clearinghouse List.

63.     HHSC requires all detainees (both incompetent detainees and insanity acquittees) committed to an HHSC mental health facility be placed on one of the waiting lists.  HHSC uses these waiting lists to manage admissions to their HHSC mental health facilities.  Admissions to an HHSC mental health facility are made primarily on a first-come, first-served basis, contingent upon the capacity of an appropriate HHSC mental health facility.

64.     In June of 2014, the number of detainees (both incompetent detainees and insanity acquittees) waiting to be transferred to an HHSC mental health facility was about 170; by February of 2016, the number had risen to more than 380.  As of April 1, 2016, the longest wait time for a non-maximum security bed was 122 days—approximately four months.  According to HHSC, as of April 1, 2016, the average wait time for a maximum-security bed was 275 days, or more than nine months.

65.     According to a May 13, 2016 investigative report by ABC-13, state statistics going back to 2006 show that the number of detainees waiting in jails for competency restoration treatment "has never been this long," and that the number of individuals on the wait list has grown by "20% in the last six months."

66.     As of the filing of Plaintiffs' Third Amended Complaint in September 2017, 283 individuals were waiting in county jails for a maximum-security bed; currently, that number has increased to approximately 463 individuals.  The number of individuals waiting in a county jail longer than twenty-one days for a maximum-security bed has increased from 246 individuals in September 2017 to approximately 417 individuals as of January 2019.  The individual who has been waiting in jail for a maximum security bed the longest has currently been waiting almost 400 days—over two months longer than the longest wait in September 2017.  As for the waitlist for a non-maximum security bed, the waitlist has nearly tripled from 96 individuals in September 2017 to 269 currently waiting in jail for such a bed.  While only four individuals had been waiting longer than twenty-one days in September 2017, that list has climbed to approximately 174 individuals waiting longer than twenty-one days for a non-maximum security bed as of January 2019.  The individual who has been waiting in jail the longest for a non-maximum security bed has been waiting 113 days, which is three times longer than the person waiting the longest at the time of the filing of Plaintiffs' Third Amended Complaint.

67.     The delay in admitting those found incompetent to stand trial infringes on their right to be free from incarceration absent a criminal conviction as well as the ability to receive competency-restoration treatment, which necessarily extends the time within which an individual can be tried once restored to competency.

68.     The delay in admitting those found not guilty by reason of insanity infringes on their right to be free from incarceration after being absolved of criminal responsibility, as well as their ability to receive evaluation and treatment so that the criminal courts can reach final dispositions in their civil commitments.

69.     Because incompetent criminal defendants have not been convicted of any crime and insanity acquittees have been absolved of criminal responsibility, both classes of persons have a liberty interest in freedom from incarceration.  Because the detention of incompetent detainees is solely for the purpose of restorative treatment and the detention of insanity acquittees is solely for evaluation and/or treatment services, lack of funds, staff, or facilities are not legitimate governmental purposes that justify the Defendant's failures.

70.     As a direct and proximate result of the foregoing, the Individual Plaintiffs and the Classes will continue to be deprived of their liberty rights without due process of law, in violation of their constitutional rights.

71.     Plaintiff Joseph Ward is a defendant in a criminal case in the 351st Judicial District Court in Harris County, Texas.  On or about February 17, 2016, Mr. Ward was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial.  Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Mr. Ward to one of its mental health facilities; instead, he was placed on an HHSC waiting list.  As a result, he was incarcerated in the Harris County Jail for 59 weeks before being admitted to North Texas State Hospital-Vernon on April 4, 2017.  While in jail, Mr. Ward did not receive competency restoration treatment.

72.     Mr. Ward has been diagnosed with schizoaffective disorder, epilepsy, asthma, and hypertension.  Harris County Jail staff noted that Mr. Ward has a history of neurocognitive impairment.  In February 2016, during a mental health assessment, staff noted Mr. Ward's confusion and inability to remember information such as street names, location, and names of doctors.  Staff noted that "competency restoration may be unlikely or slow based on current clinical presentation of the assessment."

73.     Mr. Ward has a long psychiatric history and previous incarcerations where he has been found incompetent to stand trial.  During his most recent incarceration, Mr. Ward requested, and voluntarily took, his psychotropic medications; however, he continued to report command auditory hallucinations throughout his incarceration.

74.     Plaintiff Marc Lawson is a defendant in a criminal case in the 390th Judicial District Court in Travis County, Texas.  On or about May 11, 2016, Mr. Lawson was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment towards the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Lawson to an HHSC mental health facility.  Despite the criminal court's order, HHSC did not allow Travis County to timely transfer Mr. Lawson to one if its mental health facilities; instead, he was placed on an HHSC waiting list.  As a result, he was incarcerated in the Travis County Jail for sixty weeks before being admitted to North Texas State Hospital-Vernon on July 20, 2017.  Mr. Lawson did not receive competency restoration treatment in jail.

75.     Mr. Lawson is twenty-two years old, has never previously been incarcerated, and has been in the Texas Child Protective Services system since age five.  Mr. Lawson is diagnosed with an intellectual disability, pervasive developmental disorders, attention deficit hyperactivity

disorder, bipolar disorder, conduct disorder, antisocial personality disorder, epilepsy/seizure disorder and Hepatitis C. Mr. Lawson has a history of treatment at psychiatric hospitals and receiving psychotropic medication from a young age.

76.     During Mr. Lawson's incarceration, jail personnel reported that he had obvious cognitive deficits and poor social skills.  He was categorized as vulnerable, and jail personnel documented concerns over his being housed in a cell with other inmates due to his vulnerability. Upon his admission, Mr. Lawson was initially placed in full suicide precaution and/or psychiatric lockdown housing for about one week. While in psychiatric lockdown and full suicide precaution housing, Mr. Lawson was permitted outside of his cell for only one hour a day, and it was not guaranteed that he would receive any time outdoors.  He was then transferred to and housed in a single cell for over two months. Mr. Lawson was prescribed two medications for his medical conditions and one antipsychotic. The Travis County Jail classified his mental health and medical needs as severe.

77.     Mr. Lawson's psychiatric evaluation from May 2016 stated that he is incompetent to stand trial and "competency cannot be restored in the foreseeable future with traditional competency restoration treatment due to the chronic nature of his condition."  The psychiatrist documented that although he is prescribed psychiatric medication, the medication "will not improve cognitive symptoms responsible for observed deficits relating to trial competency."

78.     Plaintiff Jennifer Lampkin is a defendant in a criminal case in the 403rd Judicial District Court in Travis County, Texas.  On or about March 31, 2016, Ms. Lampkin was found incompetent to stand trial and ordered to be committed to a mental health facility for further examination and treatment towards the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Ms. Lampkin to an HHSC mental health facility.

Despite the criminal court's order, HHSC did not allow Travis County to timely transfer Ms. Lampkin to one of its mental health facilities; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated in the Travis County Jail for 65 weeks before being admitted to North Texas State Hospital-Vernon on July 6, 2017. Ms. Lampkin did not receive competency restoration treatment in jail.

79. Ms. Lampkin is diagnosed with an intellectual disability and bipolar disorder. She also has a history of psychosis, resulting in numerous emergency psychiatric hospitalizations. She has a long history of mental illness and has a history of being treated by Austin Travis County Integral Care.

80. While incarcerated, Ms. Lampkin exhibited symptoms of and behaviors related to her mental health condition. Records by the jail counselor indicated that Ms. Lampkin has obvious cognitive deficits and is low functioning. Ms. Lampkin was housed exclusively in psychiatric housing and, in July 2016, the jail counselor reported that she is "struggling due to isolation." Moreover, the jail conditions affected Ms. Lampkin's physical condition. Over the duration of her incarceration, Ms. Lampkin lost over thirty pounds.

81. Plaintiff Cecil Adickes was a defendant in a criminal case in the 147th Judicial District Court in Travis County, Texas. On or about November 7, 2016, Mr. Adickes was found not guilty by reason of insanity and was ordered to be committed to a maximum security mental health facility for evaluation of his present mental condition and for treatment. Despite the criminal court's order and the fourteen-day time limit required by Texas Code of Criminal Procedure Article 46C.160, HHSC did not allow Travis County to timely transfer Mr. Adickes to one if its mental health facilities; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Travis County Jail for 13 weeks before being admitted to North Texas State

Hospital-Vernon on February 9, 2017. Mr. Adickes did not and could not receive the court-ordered evaluation and treatment in jail.

82.     Plaintiff Kenneth Jones is a defendant in a criminal case in the 185th Judicial District Court in Harris County, Texas. On or about August 10, 2017, Mr. Jones was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Mr. Jones to one of its mental health facilities; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Harris County Jail for 49 weeks before being admitted to Rusk State Hospital on July 19, 2018. Mr. Jones did not and could not receive the competency restoration treatment in jail.

83.     Mr. Jones has a long psychiatric history and has been diagnosed with bipolar disorder and post-traumatic stress disorder. During this recent incarceration, Mr. Jones requested and voluntarily took his psychotropic medications; however, in May of 2017, he reported that his medication was not working and that he had become suicidal. Mr. Jones' medications were adjusted, but he continued to report visual hallucinations and delusions at the time of the filing of Plaintiffs' Third Amended Complaint. Mr. Jones also had several altercations with other inmates resulting in at least three disciplinary charges.

84.     Plaintiff Mary Sapp was a defendant in a criminal case in the 185th Judicial District Court in Harris County, Texas.   On or about June 22, 2016, Ms. Sapp was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. Despite the criminal court's order, HHSC did not allow Harris County to transfer Ms. Sapp to one if its mental health

facilities; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated for eight weeks before being admitted to North Texas State Hospital-Vernon on August 23, 2016. Ms. Sapp did not and could not receive the competency restoration treatment in jail. Ms. Sapp spent seven months at North Texas State Hospital-Vernon before being restored to competency and returned to Harris County Jail to stand trial.

85. On or about May 23, 2017, Ms. Sapp was found not guilty by reason of insanity and was ordered to be committed to a maximum security mental health facility for evaluation of her present mental condition and for treatment. Despite the criminal court's order and the fourteen-day time limit required by Texas Code of Criminal Procedure Article 46C.160, HHSC did not allow Harris County to timely transfer Ms. Sapp to one of its mental health facilities; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated in the Harris County Jail for 27 weeks before being admitted to North Texas State Hospital-Vernon on December 7, 2017. Ms. Sapp did not and could not receive the court-ordered evaluation and treatment in jail.

86. Ms. Sapp is 68 years old and has been diagnosed with schizoaffective disorder, COPD, diabetes, stage three chronic kidney disease, asthma, hypertension, osteoarthritis, and spinal degeneration. Prior to being incarcerated, Ms. Sapp was receiving outpatient psychiatric services. Ms. Sapp had a number of falls while incarcerated at Harris County Jail and was even sent to the infirmary in April of 2017 due to her inability to care for her own activities of daily living.

87. Plaintiff Julian Torres is a defendant in a criminal case in the 5th County Court at Law of Travis County, Texas. Within five days of his arrest, Mr. Torres was found incompetent to stand trial and, on or about April 16, 2019, was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining

competency to stand trial. Despite the criminal court's order, HHSC has not allowed Travis County to transfer Mr. Torres to one of its mental health facilities; instead, he was placed on an HHSC waiting list. As a result, he continues to be incarcerated in the Travis County Jail. Mr. Torres does not receive competency restoration treatment in jail.

88.    Mr. Torres is diagnosed with schizophrenia. His mental health condition was so deteriorated that he spent the first week of his incarceration on the acute psychiatric unit at the Travis County Correctional Complex. He has only recently transferred to a single-cell mental health pod where he spends twenty-two hours a day isolated in his cell. This is at least the third time Mr. Torres has been found incompetent to stand trial, having spent several months at Austin State Hospital in 2017 and Montgomery County Mental Health Treatment Facility in 2018 on competency restoration commitments.

## FIRST CAUSE OF ACTION
### Fourteenth Amendment to the U.S. Constitution

**A.    Defendant Has Violated, and Continues to Violate Incompetent Detainees' Rights Under the Fourteenth Amendment to the U.S. Constitution.**

89.    The allegations contained in paragraphs 1 through 88 above are incorporated herein.

90.    The Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

91.    Criminal defendants who have not been convicted and have been adjudicated incompetent to stand trial have liberty interests in freedom from incarceration and the right not to be punished.

92.     To ensure Plaintiffs are not punished, due process requires that the nature and duration of confinement bear a reasonable relation to the purpose for which an individual is confined.

93.     Once an individual is found unable to aid and assist in their own defense, all criminal proceedings must stop.  The only stated lawful purpose for their continued confinement after an incompetency determination is commitment for restorative treatment so as to return him or her to competency.

94.     County jails do not provide Plaintiffs with the restorative treatment required by state law.  Instead, only facilities funded by Defendant provide restorative treatment. No legitimate state interest justifies the continued incarceration of incompetent criminal defendants in county jails for months on end, especially when there are state-mandated, less harsh alternatives.

95.     Defendant's insufficient forensic capacity therefore punishes the Plaintiffs by forcing them to languish in county jails for months without state-mandated restorative treatment before being admitted to one its facilities for the state-mandated restorative treatment.

96.     The nature and duration of Class Plaintiffs' and the other members of the Class of incompetent detainees' incarceration bears no reasonable relation to the restorative purpose for which the court has committed these individuals, violating their Fourteenth Amendment due process rights.

97.     The Class Plaintiffs and the other members of the Class of incompetent detainees are entitled to an order of the Court declaring that, by requiring persons found incompetent to stand trial to remain in county jails for protracted periods and by failing to provide restorative treatment in a reasonably timely manner, Defendant has violated the Fourteenth Amendment due process rights of the Plaintiffs and the other Class members.

98.     Unless enjoined by the Court, Defendant will continue to violate the constitutional rights of the Plaintiffs and the other Class members found incompetent to stand trial.  The Plaintiffs and the other Class members are therefore entitled to an order of the Court enjoining Defendant from further violations of the Plaintiffs' rights to due process in relation to their continued incarceration in jail while awaiting a bed at an HHSC mental health facility where they can receive the state-mandated restorative treatment.

**B.      Defendant Has Violated, and Continues to Violate Insanity Acquittees' Rights Under the Fourteenth Amendment to the U.S. Constitution.**

99.     The allegations contained in paragraphs 1 through 98 above are incorporated herein.

100.    The Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

101.    Persons who have been found not guilty by reason of insanity, and thereby acquitted of criminal charges, have liberty interests in freedom from incarceration and the right not to be punished.

102.    To ensure persons who have been found not guilty by reason of insanity are not punished, due process requires that the nature and duration of confinement must bear a reasonable relation to the purpose for which an individual is confined.

103.    Once an individual is found not guilty by reason of insanity, they have been acquitted of the offense charged and cannot remain incarcerated.  The only stated lawful purpose for their continued confinement is commitment to an HHSC mental health facility where they are to be provided evaluation and treatment services for their present mental condition, which will enable the court to reach final disposition.

104.     County jails do not have the resources or expertise to provide the evaluation and/or treatment services mandated by state law.  Instead, only facilities funded by Defendant provide the evaluation and/or treatment services mandated by state law.

105.     No legitimate state interest justifies the incarceration of insanity acquittees in county jails for months on end, especially when there are state-mandated, less harsh alternatives.

106.      Defendant's insufficient forensic capacity therefore punishes the Plaintiffs by forcing them to languish in county jails for months without evaluation and/or treatment services before being admitted to one of its facilities for the state-mandated evaluation and/or treatment services.

107.      The nature and duration of Class Plaintiffs' and the other members of the Class of insanity acquittees' incarceration bears no reasonable relation to the evaluation and/or treatment purpose for which the court has committed insanity acquittees, violating their Fourteenth Amendment due process rights.

108.     The Class Plaintiffs and the other members of the Class of insanity acquittees are entitled to an order of the Court declaring that, by requiring insanity acquittees to remain incarcerated in county jails for protracted periods and by failing to provide evaluation and/or treatment in a reasonably timely manner, Defendant has violated the Fourteenth Amendment due process rights of the Plaintiffs and the other Class members.

109.     Unless enjoined by the Court, Defendant will continue to violate the constitutional rights of the Plaintiffs and the other members of the Class of insanity acquittees.  The Plaintiffs and the other members of the Class of insanity acquittees are therefore entitled to an order of the Court enjoining Defendant from further violations of the Plaintiffs' rights to due process in relation

to their continued confinement while awaiting evaluation and/or treatment at an HHSC mental health facility.

## ATTORNEY'S FEES

110.    Plaintiffs are entitled to recover their attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

THEREFORE: Plaintiffs respectfully request this Court to:

A.    Certified the requested classes and appoint named Plaintiffs as class representatives;

B.    Enter an Order declaring that, by requiring Class Plaintiffs and the other members of the Class who have been found incompetent to stand trial to remain incarcerated in county jails for protracted periods before timely making a bed available to them for purposes of state-mandated restorative treatment services  (e.g., within twenty-one days of receiving the court order committing them to an HHSC mental health facility), Defendant is depriving them of their due process rights under the Fourteenth Amendment to the United States Constitution;

C.    Enter an Order declaring that, by requiring Class Plaintiffs and the other members of the Class who have been found not guilty by reason of insanity to remain incarcerated in county jails for more than fourteen days before making a bed available to them at an HHSC mental health facility for evaluation and/or treatment services, Defendant is depriving them of their due process rights under the Fourteenth Amendment to the United States Constitution and in violation of state law;

D. Issue preliminary and permanent injunctive relief restraining Defendant from failing to make a bed available to individuals found incompetent to stand trial for purposes of the state-mandated restoration services within a reasonable time period (e.g., within twenty-one days of receiving the court order committing them to an HHSC mental health facility) or enter other injunctive relief sufficient to prevent Defendant from violating the Fourteenth Amendment to the United States Constitution in relation to the confinement of individuals awaiting competency restoration treatment;

E. Issue preliminary and permanent injunctive relief restraining Defendant from failing to make a bed available to individuals found not guilty by reason of insanity for purposes of the state-mandated evaluation and treatment services within fourteen days of receiving the court order committing them to an HHSC mental health facility or enter other injunctive relief sufficient to prevent Defendant from violating the Fourteenth Amendment to the United States Constitution in relation to the confinement of persons found not guilty by reason of insanity and awaiting evaluation and/or treatment services;

E. Award Plaintiffs their reasonable attorneys' fees and costs; and

F. Grant all such other relief as the Court may deem just and proper.

Respectfully submitted,

_____

BETH MITCHELL
State Bar No. 00784613

PETER HOFER
State Bar No. 09777275

LISA SNEAD
State Bar No. 24062204

DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)
bmitchell@drtx.org
phofer@drtx.org
lsnead@drtx.org

COTY MEIBEYER
State Bar No. 24085469
DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691 (Phone)
(713) 974-7695 (Fax)
cmeibeyer@drtx.org

JOHN MICHAEL GADDIS
State Bar No. 24069747
WINSTON & STRAWN LLP
2121 N. Pearl St., Suite 900
Dallas, Texas 75201
(214) 453-6500 (Phone)
(214) 453-6400 (Fax)
mgaddis@winston.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2019, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF filing system, thus providing notice of electronic filing to the following:

Thomas A. Albright
Michael R. Abrams
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

_____
BETH MITCHELL