IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PLAINTIFF JOSEPH WARD, by his next friend FLOYD JENNINGS, et al. | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 1:16-cv-00917-LY |
| COURTNEY PHILLIPS, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission, | § § § § § | |
| Defendant. | § § | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

In their Motion for Class Certification, Plaintiffs established that the requirements of Rule 23(a) and 23(b)(2) have been met. Defendant's attempts to argue otherwise are unavailing.

## I. COMMONALITY

For the reasons set forth below, Plaintiffs have met their burden to establish commonality.

**A. Defendant misstates the commonality standard; Plaintiffs meet the proper standard.**

Defendant begins by misstating the standard for evaluating commonality by suggesting that "the relevant question is whether the harm to class members is the same regardless of the circumstance of their detention." Defendant's Response to Motion for Class Certification, ECF No. 110 (hereinafter "Resp."), at 10. Plaintiffs have identified Defendant's self-imposed insufficient capacity at its mental health facilities as the common source of their continued, injurious deprivation of liberty. Plaintiffs' Motion for Class Certification, ECF No. 104 (hereinafter "Mot."), at 25. The actual harm suffered by class members does not need to be

identical or experienced to the same degree, so long as the conduct at issue can be addressed and remedied by the Court in ways that are common across the class. Instead, the standard articulated by the Fifth Circuit in *Yates v. Collier* is that commonality is satisfied as long as there is a single common question existing among the individual class members, even where individuals do not have the exact same risk of injury. 868 F.3d 354, 363-34 (5th Cir. 2017) (class certification granted for a class of prison inmates exposed to excessive heat, even though due to their age, health, and individual biological responses to heat-mitigation measures taken by the State, all suffered different risk of harms). In other words, "although the State's failures may be unique to each individual class member, the failures can also be quantified and remedied by the court in ways that are common across the class." *Steward v. Janek*, 315 F.R.D. 472, 482 (W.D. Tex. May 20, 2016) (class action over inadequate Medicaid services provided to nursing home residents with intellectual disabilities,); *see also M.D. v Perry*, 294 F.R.D. 7, 44–45 (S.D. Tex. 2013) (expressly rejecting State's argument that an individualized inquiry into the harm suffered by foster children is necessary and thus defeats commonality).

In this case, even if there are different degrees of harm, Defendant's failures can be quantified and remedied by this Court in ways that are common across the class. In *Disability Law Ctr. v. Utah*, the court, considering a similar case, explicitly rejected the argument that class certification was inappropriate where individualized assessments of each incompetent detainee were necessary. No. 2:15-cv-00645, 2016 WL 5396681 at *5 (D. Utah Sept. 27, 2016). The Utah court noted that "'every member of the class need not be in a situation identical to that of the named plaintiff to meet Rule 23(a)'s commonality' requirement [a]nd 'factual differences between class members' claims do not defeat certification where common questions…exist.'" *Id.* (quoting *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010)).

**B. Defendant's misplaced reliance on *Powell* should not inform this Court's interpretation of *Jackson*.**

Contrary to Defendant's assertion, the Supreme Court's decision in *Jackson v. Indiana* does not prevent certification of a class action based on the underlying substantive due process violation recognized in that case. *See* Resp. at 12 citing 406 U.S. 715 (1972). Several courts have certified similar classes of incompetency detainees and NGRI acquittees based on *Jackson*'s holding that "[d]ue process requires that nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738; *see, e.g.*, *Disability Law Ctr.*, 2016 WL 5396681, at *9; *Trueblood et. al. v. Washington State Dep't of Soc. & Health Servs.,* W.D. Wash. No. 2:14-cv-01178, Docket No. 84, at 4 (Stipulated Order Certifying Class) (October 31, 2014), *see* Mot., ECF No. 104, Exhibit T. In neither of these cases did the courts read *Jackson* as requiring an individualized inquiry into the circumstances of each detainee's delayed admission to a mental health facility.

The fact that the *Jackson* Court declined to "prescribe arbitrary time limits . . . [i]n light of differing state facilities and procedures and a lack of evidence in the record," 406 U.S. at 738, does not mean that no state legislature or court can ever set a definitive deadline after which state inaction constitutes a violation of substantive due process. To the contrary, after *Jackson*, forty-four states set a specific time limit on the reasonable period to determine substantial likelihood of regaining competency, Texas included.[1] Further, multiple courts considering systemic relief based on *Jackson* substantive due process violations have defined their injunctive remedies with reference to similar specific time limits. *See e.g. Advocacy Ctr. for the Elderly & Disabled v. La*

---

[1] Rosina, Nicholas. *"How 'Reasonable' Has Become Unreasonable: A Proposal for Rewriting the Lasting Legacy of Jackson v. Indiana,"* 89 WASH. U. L. REV. 673, 681 (2012). Texas sets a limit of one hundred twenty days for felonies and sixty days for misdemeanors. TEX. CODE OF CRIM. PRO. art. 46B.073(b). A single sixty-day extension is available. *Id.* at art. 46B.079(d).

*Dept. of Health & Hosp,* 731 F.Supp.2d 603 (E.D.La. 2010) (set a 21–day deadline for admission of a defendant following a commitment order.); *Cooper v. Kliebert*, 2016 WL 3892445 (M.D. La. 2016) (previous litigation set a thirty–day deadline for admission); *Oregon Adv. Ctr. v. Mink,* 322 F.3d 1101 (9th Cir. 2003) (set a seven-day deadline for admission); *Trueblood v. Wash. State Dept. of Soc. & Health Servs.,* 101 F.Supp.3d 1010 (W.D. Wash. 2015) (set a seven-day deadline for restorative services for criminal defendants.) This Court should do likewise.

Defendant's reliance on a single outlier case from Maryland – apparently the **only** case to conclude that Jackson precludes courts from setting specific time limits – is misplaced. *See* Resp. at 12-13 discussing *Powell v. Maryland Dep't of Health*, 168 A.3d 857 (Md. 2017). *Powell* was decided under Maryland state law before class certification was considered[2] and thus involved only four plaintiffs who were detained between 12 and 36 days before being admitted to a mental health facility and the Maryland Department of Health only had three additional individuals on its waiting lists. 168 A.3d at 865–67. Here, the current facts show a significantly direr situation. Three of the named incompetency detainee Plaintiffs remained in jail for over 400 days and the two Plaintiffs found NGRI remained in jail for 177 days and 93 days. Defendant has 771 individuals on its waiting lists and the average wait time individuals remaining on the MSU waiting list is 263 days. Mot., ECF No. 104, at 12-13. In inviting this Court to follow *Powell*, Defendant

---

[2] Because the parties were before the court on a motion to dismiss, there was no discussion of any of the factors relevant to class certification. Moreover, the factual record was much more limited in *Powell* than in other similar cases. *See* 168 A.3d at 876 ("[i]n contrast to this case, those courts have generally had the benefit of a detailed record after a trial or evidentiary hearing. One cannot simply compare the delays permitted or proscribed in those cases and attempt to decide whether a delay of 12 or 36 days in this case violated due process."). The *Powell* court ultimately remanded the case to the trial court to determine if defendants had violated plaintiffs' substantive due process rights, and the case settled before the trial court could consider plaintiffs' pending motion for class certification. The evidence on hand showed there were only three people waiting at the time of the motion to dismiss hearing. *Id.* at 867.

effectively asks **over seven hundred** individuals with mental illness to bring individual cases to determine whether Defendant has violated their substantive due process rights, rather than having this Court addressing their common claims through the much more efficient mechanism of a class action. No court has ever cited *Powell* for the proposition put forth by Defendant and this Court should decline to be the first.[3]

**C.    Plaintiffs' 21- and 14-day time limits are neither arbitrary nor inappropriate under *Jackson*.**

Although Defendant now attacks Plaintiffs' time frames as "arbitrary" and impermissible under its misguided reading of *Jackson* and *Powell*, it has spent much of the past two years complaining that Plaintiffs' proposed class definitions and proposed remedies were too vague because Plaintiffs had **not** defined specific time limits beyond which their continued detention was unconstitutional.[4]   Defendant cannot have it both ways.   Consistent with the Fifth Circuit's guidance,[5] Plaintiffs have defined their proposed classes and their common injuries with respect to two points in time—21 days for incompetency detainees and 14 days for NGRI acquittees—

---

[3] No court has cited *Powell* for the proposition put forth by Defendant—that courts cannot or should not identify set time limits after which continued confinement violates substantive due process rights.   In addition to relying on a Maryland state court case, Defendant also devotes significant space to language from the dissent.   Def's Resp. (ECF No. 110) at 13.   It hardly needs to be said that a single dissent from a single Maryland state court opinion has no precedential value.

[4] *See* ECF No. 35 at 18-19 (Assertion by Defendant that Plaintiffs' prior class definition "suffer[ed] from a critical ambiguity or indefiniteness" and that Plaintiffs' common question could not be answered "without first defining how long a prolonged period [of confinement without competency restoration treatment or NGRI evaluation] is."); ECF No. 43 at 3 (Argument by Defendant that Plaintiffs' modified class definition is still critically ambiguous and that Plaintiffs cannot demonstrate that common questions of fact can be answered "[w]ithout first defining how long an unreasonable amount of time is."); *Defendant/Appellant's Brief* at 40 (arguing on appeal of this Court's first order granting class certification that there is no common question of fact or law because Plaintiffs' use of "extended period of time" is too vague.).

[5] *Ward,* 753 Fed. Appx. at 246 (finding the class definition ambiguous because it did not define "what period of time the district court considered to be 'extended.'"); *see also id.* at 249 ("Plaintiffs will, at a minimum, have to describe in some kind of detail from what actions and inactions Defendant should be restrained.")

after which their continued detention without transfer to one of Defendant's mental health facilities for court-mandated competency restoration treatment or NGRI evaluation and treatment violates their substantive due process rights. Plaintiffs reasonably chose the 21-day timeline for incompetency detainees with reference to the evidence available at this stage of litigation about the time frames Defendant is capable of meeting. *See* Mot. ECF No. 104 at 11. For NGRI acquittees, Plaintiffs reasonably relied on the 14-day timeline expressly set by the legislature in Texas Code of Criminal Procedure art. 46C.160(a). Mot. ECF No. 104 at 3 n. 6.[6]

Contrary to Defendant's assertion (Resp. at 14), state law standards can be relevant in determining the contours of a liberty interest. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'…or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) citing *Vitek v. Jones*, 445 U.S. 480, 493-494 (1980); *Wolff v. McDonnell,* 418 U.S. 539, 556–558 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits). Where state law creates broader liberty interests than does the Due Process clause itself, state law determines the actual liberty interests afforded persons in that state, and not the constitutional substantive due process clause. *Mills v. Rogers*, 457 U.S. 291, 303 (1982).[7]

---

[6] *See also* Report and Recommendation of the United States Magistrate Judge (ECF No. 49) at 8, approved and accepted by Order on Report and Recommendation (ECF No. 50) ("[Plaintiffs] point to the 14-day transfer mandate of the Texas Code of Criminal Procedure merely as one marker of what period of time is 'reasonable' in the *Jackson* determination, since that was the considered judgment of the Texas Legislature on the point. The Court agrees."). Two other courts deciding the outer limits for delay in the transfers of incompetency detainees from pretrial detention to psychiatric hospitals also gave significant weight to the fact that their respective state legislatures had established statutory deadlines for evaluations and provision of services. *See Or. Advocacy Ctr. v. Mink*, 322 F.3d at 1122 n.13); *Trueblood*, 822 F.3d at 1040–41 & n.2, 1046.

[7] Although Plaintiffs have not asserted a state-created liberty interest, the Texas statute does meet the criteria of a state-created liberty interest insofar as it provides a mandatory objective rule ("the court may order the defendant detained in jail … for a period not to exceed 14 days") and a

Finally, argument over the particular time limits proposed by Plaintiffs is premature at the class certification stage, because ultimately the Court will make the final determination as to how long an incompetency detainee can be confined for competency restoration or an NGRI acquittee for evaluation and treatment without receiving those services before the continued confinement violates his or her substantive due process rights.

## D. Defendant's own first-come, first-served practice and state law defeat its "individualized" consideration argument.

Following *Powell*, Defendant argues that class certification is improper because each detainee's claim of a due process violation must be individually evaluated based on the particular circumstances of his or her condition and confinement. Resp. at 17. But that is not how Defendant's system actually operates. To the contrary, Defendant has admitted that "[p]ersons placed on the Clearinghouse [and MSU] waitlist are removed from the list and admitted to an HHSC inpatient mental health facility generally ***on a first-come, first-served basis***." The Parties' Statement of Uncontested Facts and Issues of Law, ECF No. 99, Uncontested Facts Nos. 6, 9 (emphasis added). Because Defendant places and removes individuals on the waiting lists on a "first-come, first-serve basis," there are no "individualized" determinations; instead, Defendant "act[s] or refuse[s] to act on grounds that apply generally to the class[es]." *See* FED. R. CIV. P. 23(b)(2). After each class member has received an ***individualized*** competency determination from a court, Defendant ***universally*** places incompetency detainees on its waiting lists ***on a first-come, first-served basis***; ***universally*** fails to accept them in its mental health facilities in a timely manner; and thus ***universally*** causes them to remain warehoused in county jails awaiting beds at its mental

_____

violation of that rule would impose an atypical and significant hardship on an acquittee remaining in jail without a conviction or charge. *See, Sandin v. Connor*, 515 U.S. 472, 484 (1995).

health facilities.[8]  This common and universally-applied policy does not consider the individual circumstances of each detainee's condition or confinement, and thus is at odds with Defendant's contention that the commonality and typicality requirements are not satisfied because each detainee's claim requires individualized analysis.

Further, the statutory requirement that defendants with mental illness receive individualized assessments of their competency to stand trial (discussed at Resp. 15-16) does not preclude a finding of commonality.  Each of the individual Plaintiffs and all putative class members have **already** received an individualized determination of incompetency (or an individualized finding of not guilty by reason of insanity) before Defendant ever places them on its waiting lists.[9] Further, Defendant suggests that the fact that "some [putative class members] have arrived at an HHSC facility *already* restored to competency"[10] somehow establishes a need for further individualized analysis.   What this actually substantiates is that these individualized determinations only occur once at an HHSC facility and HHSC is thus necessary to conduct the "further examination and competency restoration services" required by Texas Code of Criminal Procedure art. 46B.073(b).

Finally, the availability of limited mental health services in some (but not all) Texas county jails does not defeat commonality.  Defendant contends that the general mental health care services provided in certain county jails satisfy *Jackson* because they are sufficient to comply with the

---

[8] Similarly, after their individual findings that they are NGRI, Defendant treats the members of the proposed NGRI class the same way—Defendant universally places them on and removes them from the MSU waiting list on a first-come, first-served manner.
[9] Mot., ECF No. 104, at 9; April 15, 2019 Deposition of Michael Maples (hereinafter "Maples Dep."), attached as Exhibit A, at 23:12–15; at 112:13–16; April 18, 2019 Deposition of Timothy Bray, attached as Exhibit B, at 28:3–15. Mr. Maples is the Deputy Executive Commissioner for the Health and Specialty Care System at HHSC.  Mr. Bray is the Associate Commissioner of State Hospitals at HHSC.
[10] Resp., ECF No. 110 at 16.

purpose of detention—"for competency restoration services with the specific objective of the defendant attaining competency to stand trial." Resp. at 16-17; *see* TEX. CODE CRIM. PROC. art 46B.073(b). This is wrong as a matter of law. "A determination of constitutionally adequate medical treatment is not measured by that which must be provided to the general prison population, but by that which must be provided to those committed for mental incompetency….The treatment generally provided in jails is not designed to 'promote the defendant's speedy return to mental competence.'" *Stiavetti v. Ahlin*, No. RG15-779731, 2019 WL 2176240 at *15 (Cal. Super. April 19, 2019) (citations omitted); *see also Advocacy Ctr. for Elderly & Disabled*, 731 F.Supp.2d at 621 (finding that jail mental health services were insufficient to satisfy *Jackson* requirement); *Terry ex. rel. Terry v. Hill*, 232 F.Supp.2d 934, 939, 945 (E.D. Ark. 2002) (though jail had psychiatrists and nurses and provided "special treatment" to inmates with mental illness, continued confinement awaiting transfer to state mental health facility violated detainees' due process rights); *Trueblood*, 101 F.Supp.3d at 1013 (reversed and remanded solely as to length of the injunction) ("[j]ails are not hospitals, they are not designed as therapeutic environments, and they are not equipped to manage mental illness or keep those with mental illness from being victimized by the general population of inmates.").

Indeed, if the run-of-the-mill Texas jail's general mental health care were sufficient to satisfy the *Jackson* requirement, there would have been no need for the Texas Legislature to define what constitutes sufficient "jail-based competency restoration services" in Code of Criminal Procedure article 46B.091. Specifically, the statue authorizing such programs requires that they:

- provide jail-based competency restoration services through the use of a multi-disciplinary treatment team that are directed toward the specific objective of restoring the defendant's competency to stand trial,
- provide the competency restoration services through licensed or qualified mental-health professionals,
- provide weekly competency restoration hours commensurate to the hours

provided as part of the competency restoration program at an inpatient mental health facility, and

- operate in a designated space that is separate from the space used for the general population of the jail.

TEX. CODE. CRIM. PROC. art. 46B.091(d)(1), (3) - (5). The statute differentiates between these heightened competency restoration services and the general mental health care provided to other inmates at the jail. *Id*. at (l). Article 46B.091 sets the standard in Texas for jail-based competency restoration services, and services that do not meet these standards are simply not competency restoration services.

Effective competency restoration treatment, in contrast to the general mental health care provided in Texas jails, requires adequate psychiatric, psychological, social work, and nursing services provided at a level not commonly found in county jails; a therapeutic setting; individualized treatment plans; the ability to make the inmate with mental illness feel safe enough to engage with treatment; and educational intervention. Mot., ECF No. 104, Exh. S, *Dec. of Joel Dvoskin, Ph.D.* ¶¶ 12, 16; TEX. CODE CRIM. PROC. art. 46B.077(a)(1) (requiring facilities and jail-based competency restoration programs to develop individualized treatment plans). As detailed in Plaintiffs' Motion and supporting affidavits, Texas jails, excluding the five specialty jail-based competency restoration programs,[11] are not required to and do not provide specialty competency restoration services or NGRI evaluation and treatment.[12] Likewise, temporary stability achieved as a by-product of psychotropic medication provided by jails is insufficient to satisfy the constitutional requirement that the nature and duration of Plaintiffs' confinement be "for"

---

[11] These five programs are located in Dallas County Jail, Tarrant County Jail, Lubbock County Jail, Midland County Jail, and Nueces County Jail. Neither Harris County Jail nor Travis County Jail have programs.

[12] Declaration of Daniel Smith of Travis County Jail, Mot., ECF No. 104, Exhibit I, at ¶¶ 2- 5; Declaration of Laxman Sunder, M.D. of Harris County Jail (hereinafter "Harris County Jail Dec.") Mot. ,ECF No. 104, Exhibit J, at ¶¶ 2 – 5.

competency restoration services and NGRI evaluation and treatment.[13]

**E.  The "deliberate indifference/shocks the conscience" standard is not applicable here.**

The Court should reject Defendant's argument that a "deliberate indifference/shocks the conscience" standard applies to Plaintiffs' claims and somehow precludes class certification. *See* Resp. at 18.  First, the standard under which the Court should evaluate Plaintiffs' substantive due process claims does not need to be resolved at the class certification stage.  *See Perry*, 294 F.R.D. at 36 ("[I]t is not necessary to decide the appropriate standard to employ on the merits in order to determine the appropriateness of class certification. In considering class certification the relevant question is whether the Plaintiffs' claim, *under either standard*, will turn on common questions of fact or law.") (emphasis added).

Even if the Court did need to decide this question now (which it does not), the correct standard for evaluating Plaintiffs' substantive due process claims is not "deliberate indifference" but rather the standard set forth in *Bell v. Wolfish,* 441 U.S. 520, 539 (1979) – whether Plaintiffs' confinement amounts to punishment as it is not related to any legitimate governmental purpose. Claims brought by pretrial detainees may be brought as a challenge to a "condition of confinement" or to an "episodic act or omission."  *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996)(en banc).[14]  When a plaintiff is challenging a condition of confinement, as Plaintiffs do in

---

[13] Defendant's arguments about the services provided in Harris County Jail are particularly disingenuous.  Defendant highlights the Mental Health Step-Down Unit as evidence of competency restoration treatment, yet nowhere in the document produced does it indicate that that unit provides competency restoration services, and the affidavit from Harris County Jail *expressly denies* that the jail provides competency restoration services.  *See* Harris County Jail Dec.. Additionally, inmates are ineligible for the Mental Health Step-Down Unit if they are currently exhibiting signs of acute mental illness, making it nearly, if not entirely, impossible for a person who has been found incompetent to stand trial to be admitted to that program.  Resp., Ex. C at 6.
[14] As to *Hare's* weight, the Fifth Circuit's ruling in *Hare*, "clearly and concisely articulates and unifies our court's case law on the standard to apply in cases brought by pretrial detainees." *Nerren v. Livingston Police Dept.,* 86 F.3d 469, 473 n.25 (5th Cir. 1996).

this case, the Fifth Circuit applies the test established by the Supreme Court in *Bell* and asks whether the condition is **"reasonably related to a legitimate governmental objective."** *See Id.* at 646 (emphasis added); *Bell v. Wolfish,* 441 U.S. at 539. Courts do not use, as the Defendant argues, the deliberate indifference standard that only applies to episodic act or omission cases. *Hare,* 74 F.3d at 636, 647–48.

Since this case challenges general practices or policies of pretrial confinement and not "a jail official's episodic act or omission," *id.* at 643, the applicable standard is whether the nature and duration of the confinement is reasonably related to a legitimate governmental purpose. *See Terry ex rel. Terry*, 232 F. Supp. 2d at 941–44 (delay in transferring pretrial detainees to a mental health facility amounted to punishment as it was not related to any legitimate governmental purpose).[15] Here, that standard applies because all class members are subject to the same challenged policies and practices.

## II. TYPICALITY

Because Defendant's argument regarding commonality fails, so too does its typicality argument. The Named Plaintiffs' claims can be evaluated against the common class claims discussed above, showing that they possess the same interests as the putative class members and have suffered the same injury. Therefore, Plaintiffs have satisfied their burden as to typicality.

## III. NUMEROSITY

### A. Given its historical and inherent fluctuation, the proposed NGRI class is sufficiently numerous.

---

[15] Numerous courts, including within this Circuit, have also applied the "professional judgment" standard set forth by the Supreme Court in *Youngberg v. Romero* to cases with similar facts. 457 U.S. 307 (1982). Under that standard, substantive due process requires that restrictions or conditions imposed on pretrial detainees be the result of judgment exercised by a qualified professional. *Id.* at 321–22; *see, e.g., M.D. v. Abbott*, 152 F. Supp. 3d 684, 697–700 (S.D. Tex. 2015); *Disability Law Center*, 180 F. Supp. 3d at 1008; *Advocacy Ctr. for Elderly & Disabled*, 731 F. Supp. 2d at 609–10.

Defendant does not challenge numerosity of the incompetency detainee class and attacks only the numerosity of the NGRI class. Plaintiffs have, however, provided sufficient evidence for the numerosity of the proposed NGRI class. According to Defendant's own records, in 2018 there were 81 NGRI acquittees committed to an MSU facility (Resp. at 21–22), 68 of whom waited longer than 14 days in jail.[16] The year prior, there were 75 NGRI acquittees who spent longer than 14 days waiting in jail.[17] That there were only two NGRI acquittees remaining on the waiting list at the time Defendant filed its Response[18] (Resp. at 21–22 & Ex. A ¶ 8) is an indication of the usual fluctuation of "…the [NGRI] waiting list—it comes and goes"[19] – or that Defendant has once again taken steps to reduce the waiting lists while in litigation, as it previously did between 2012 and 2014. *See* Mot., ECF No. 104, at 11–12.

---

[16] Mot., ECF No. 104, at 14; Ex. N (MSU Census Spreadsheets 10.2.17 through 1.3.18 produced as D003185, D003186, D003189, and D003174).

[17] Mot., ECF No. 104, at 14; Ex. N (MSU Census Spreadsheets 1.3.18 through 1.2.19 produced as D003173 - D003175, D003177-D003184, D003187, and D003188). Defendant criticizes Plaintiffs for "lumping together" the incompetent detainee and NGRI acquittee classes, Resp. at 22; however, as Defendant's records show, the MSU waiting list is not separated based on type of commitment. Both incompetency detainees and NGRI acquittees are on the same waiting list.

[18] Defendant appears to be making a mootness argument in noting that there were only two NGRI acquittees on the waiting list at the time of its filing, and suggesting those two will be admitted within 14 days. That Defendant has currently reduced the waiting list of NGRI acquittees by choice or by chance does not moot out the NGRI class. Defendant has not committed to transferring all NGRI acquittees to an MSU facility within 14 days, and thus it is likely that the number of waitlisted NGRI acquittees will grow. Maples Dep., Ex. A at 113:9-15. A defendant asserting that its voluntary cessation has mooted an issue "bears the formidable burden of showing that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." *Fontenot v. McCraw,* 777 F.3d 741, 747 (5th Cir. 2015) (citing *Friends of the Earth, Inc. v. Laidlaw Environ. Servs,* Inc., 528 U.S. 167, 190 (2008)). Mootness arguments based on defendants' voluntary conduct necessarily presume that the defendants have stopped the challenged practice. *See, e.g., Yarls v. Bunton,* 905 F.3d 905, 910 (5th Cir. 2018) (citing *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982)) ("[A] defendant cannot moot a case simply *by ending its unlawful conduct* once sued.") (emphasis added). Defendant has made no such showing here.

[19] Maples Dep., Ex. A. at 113:12-14.

In light of similar civil rights class actions raising due process claims on behalf of IST detainees and NGRI acquittees, a class that constantly fluctuates between two and seventy-five is sufficient to establish numerosity[20] – especially when, as here, the class also includes an unknown number of future members who will be adjudicated NGRI and detained in jail awaiting admission to a state facility. *See, e.g.*, *Disability Law Ctr.*, 2016 WL 5396681, at *3 (certifying fluctuating class of 39–50 detainees plus future class members found incompetent to stand trial); *Hunter v. Beshar*, C.A. No. 2:16-cv-798-MHT, 2018 WL 564856, at *3 (M.D. Ala. Jan. 25, 2018) (class of 34 persons found incompetent to stand trial together with an unknown number of future members was sufficiently numerous).

The inclusion of future, unidentifiable class members weighs in favor of class certification, particularly in cases seeking injunctive relief, as Plaintiffs do here. *Jack v. Am. Linen Supply Co.,* 498 F.2d 122, 124 (5th Cir. 1974). For example, the Fifth Circuit found a district court abused its discretion in a Title IX suit when it decertified a class of only eight female LSU students based on lack of numerosity because the court had not considered unknown future class members. *Pederson v. La. State Univ.*, 213 F.3d 858, 868-69 (5th Cir. 2000). The inherent fluctuations in the NGRI class as well as the likelihood of future members makes the NGRI class sufficient numerous to satisfy Rule 23(a)(1).

---

[20] "The general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) *abrogated on other grounds by Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478 (1978); *see also Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 361 (2011) (discussing the history of Rule 23(b)(2) as a vehicle for class-based civil rights claims). "[I]n evaluating the proffered evidence at the evidentiary hearing for class certification, the district court should be guided by the generous policies underlying the class action device and civil rights legislation." *Id.* Most notably, the *Jones* court held that "[s]maller classes are less objectionable where . . . the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." *Id.*

**B. Given class members' disabilities, confinement, poverty, and geographic dispersion, joinder is impracticable.**

The numerosity requirement is also satisfied because the characteristics of the proposed NGRI class members – mental illness, confinement in jail, poverty, and geographic dispersion – make it highly unlikely they could maintain individual actions to vindicate their civil rights. *See* Mot., ECF No. 104, at 22–23. Thus, joinder is not a practicable alternative to class certification.

Defendant argues that Plaintiffs cannot satisfy the numerosity requirement because the names and locations of the detained NGRI acquittee putative class members are "readily ascertainable" from its records, making joinder feasible (Resp. 20–22). In support, Defendant relies heavily on a single unpublished decision that denied certification of a putative class of NGRI acquittees. Resp. at 20-21, discussing *Cooper v. Kleibert*, C.A. No. 14-cv-507-SDD-SCR, 2014 WL 7338846 (M.D. La. Dec. 22, 2014). The *Cooper* court concluded that joinder was not impracticable because identifying information about each putative class member was captured and tracked by the state, rendering the putative class members "readily ascertainable" and "easily identifiable." *Id.* at *2.

Taken to its logical extreme, the *Cooper* approach would bar certification in any case in which class members can be identified from a defendant's records – especially in cases involving classes of detained or incarcerated persons, whose identities and precise locations are known to the agency holding them in custody. But this cannot be the law, because courts within the Fifth Circuit routinely certify classes of detained or imprisoned persons whose identities would be known to the respective defendants. *See e.g. Yates,* 868 F.3d at 371 (affirming certification of class of readily ascertainable Texas prison inmates living on same unit); *Dockery v. Fischer*, 253 F. Supp. 3d 832 (S.D. Miss. 2015) (certifying class of prison inmates with mental illness); *Steward*, 315 F.R.D. at 480 (certifying class of individuals with intellectual or developmental disabilities

being held in Medicaid-funded nursing homes); *J.D. v. Nagin*, 255 F.R.D. 406 (E.D. La. 2009) (certifying class of juveniles held in a thirty-bed state facility pending trial). Of all the courts that have addressed class certification of incompetency detainees or NGRI acquittees, only *Cooper* has denied certification based on a finding that joinder was a practicable alternative to class treatment. By contrast, in *Hunter*, a class action involving persons found incompetent to stand trial and committed to state facilities, the court found numerosity was satisfied and joinder was impracticable even though the state's waiting list contained the identity and location of current and future class members, as is the case here. *See* 2018 WL 564856, at *3.

In arguing that joinder is practicable, Defendant asks the Court to believe that NGRI class members with serious mental illness,[21] confined in far-flung jails across the second largest state,[22] and in many cases impoverished[23] – will be able to file individual civil rights actions that can then be joined. This is simply unrealistic. As other courts (including one in this District) have found, joinder is impracticable when the putative class members have mental disabilities, are institutionalized, are geographically dispersed, and are in many cases impoverished, rendering them effectively unable to individually vindicate their rights. *See Steward*, 315 F.R.D. at 480; *Disability Law Ctr.*, 2016 WL 5396681, at *7–*8 (certifying class of detainees found incompetent

---

[21] Defendant initially challenged the capacity of the named NGRI Plaintiffs to bring this action because they were not yet represented by next friends. *See* Def. Am. Mot. to Dismiss, ECF No. 14 at 12–14. Under Fed. R. Civ. P. 17(c)(2), next friends are only needed to represent persons who are "incompetent." Defendant does not explain how incompetent detainees who need next friends are supposed to recognize the violation of their rights, identify next friends to assist them *pro bono*, and then bring suit.

[22] The three cases cited by Defendant, *Garcia, Trevizo,* and *Jaynes*, (Resp. at 20) all concerned employees at single-site businesses, meaning their plaintiffs were located in "compact geographical areas," unlike Plaintiffs here who can be in any jail located across the state of Texas.

[23] *See Barnes v. Board of Trustees, Michigan Veterans Trust Fund*, 369 F. Supp. 1327, 1333 (D. Mich. 1973) (certifying class of twenty members in addition to unknown members and noting that potential class members "are destitute people who would find it very difficult to become parties to a lawsuit located away from their homes.").

to stand trial after finding that their indigence and geographic dispersal made joinder impracticable); *Neiberger v. Hawkins*, 208 F.R.D. 301, 313-15 (D. Colo. 2002) (certifying class of NGRI acquittees whose institutionalization and impoverishment made individual actions unlikely and joinder impracticable).  Here, likewise, joinder of the proposed NGRI class is impracticable because the putative members have serious mental illnesses, are isolated in county jails dispersed across the state, and are often impoverished.  For these reasons, and for those explained in the Motion for Class Certification, Plaintiffs have carried their burden to demonstrate that joinder is impracticable and the proposed NGRI acquittee class satisfies the numerosity requirement.

## IV.    ADEQUACY

Defendant begins its adequacy argument by denying that it is making a mootness argument, but then raising mootness as evidence that Plaintiffs will not "vigorously" prosecute their case. Resp. at 23-24.  The Court should decline to fall for this bait-and-switch.  The Fifth Circuit has decisively addressed  the mootness issue when it found "Plaintiffs's claims qualify as 'inherently transitory,'" and, as such, "the expiration of all of Plaintiffs' claims prior to the district court entering its class certification order did not have the effect of mooting the action."  *Ward v. Hellerstedt*, 753 Fed.Appx. 236, 242-43 (5th Cir. 2018).  It is well-established that the mooting of a named plaintiff's individual claim does not preclude that plaintiff from adequately representing the class.  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

**A.  In determining adequacy, this court should look to the Named Plaintiffs' next friends.**

Defendant's argument that the Named Plaintiffs' next friends cannot substitute for them as adequate class representatives because the next friends' qualifications and experience "has [sic] no bearing on the adequacy analysis" (Resp. 24) is nonsensical.   Taken to its logical conclusion,

Defendant's argument would mean that *no class action could ever be certified* on behalf of people incapable of representing themselves, such as children or people without capacity – the most vulnerable members of our society. Defendant's argument disregards well-established case law endorsing the use of next friends to litigate class claims on behalf of persons not competent to assert their own interests. In *Horton v. Goose Creek Independent School District*, a case relied on by Defendant, the Fifth Circuit specifically concluded that a parent acting as a "next friend" was an adequate representative for a class consisting of minor students challenging a search of school lockers. 690 F.2d 470, 484 (5th Cir. 1982). In *Perry*, a class action brought on behalf of children in the custody of the Texas foster care system, the court found that the plaintiffs' next friends—attorneys ad litem appointed by courts in the children's individual cases—were adequate class representatives after "consider[ing] the individual's familiarity with the litigation, the reasons that move her to pursue the litigation, and her ability to pursue the case on the [impaired class member's] behalf." 294 F.R.D. at 29, 46 (quoting *Sam M. v. Carcieri*, 608 F.3d 77, 92 (1st Cir.2010)).

Plaintiffs have presented affidavit evidence that the next friends – counsel who represented the Named Plaintiffs in their individual criminal cases and will continue to represent other putative class members – are competent, experienced, thoroughly familiar with the issues at stake in this action, and zealous to vindicate their clients' interests.[24] The next friends all have an ongoing interest in seeing the long waiting lists shortened for their future clients. Defendant offers nothing to controvert that evidence.

**B. Because Named Plaintiffs' claims are capable of repetition and they seek relief to which no class member would be opposed, they are adequate representatives.**

---

[24] *See* Declarations of Melissa Shearer, Floyd Jennings, Lourdes Rodriguez, Patricia Sedita, Elsie Craven, and Krista Chacona, ECF No. 104, Exhibits C through H.

The Named Plaintiffs' interests are the same as those of the putative class members because even if their individual claims have been mooted, they are reasonably likely to have live claims again in the future. In other words, their claims are "capable of repetition."[25] Because the Named Plaintiffs have mental illnesses, there is a reasonable expectation they may again be charged with crimes, found to be either incompetent to stand trial or not guilty by reason of insanity, and thus end up on Defendant's waiting list once again. *See Lakey v. Taylor,* 278 S.W.3d 6 (Tex. App.— Austin 2008) (finding reasonable probability that plaintiffs with mental illnesses found incompetent to stand trial and placed on same Defendant's waiting list could again find themselves charged with crimes, found incompetent to stand trial, and placed on waiting list).[26] In fact, at least one Plaintiff, Mary Sapp, has already suffered a "repetition" of her injury. She was first detained in jail eight weeks after being found incompetent to stand trial and detained again for an additional 27 weeks after being found NGRI.[27]

At least one federal court has specifically applied the "capable of repetition" doctrine to support a finding of adequacy under Rule 23(a)(4). In *Coll v. Hyland*, the court concluded that the named plaintiff's past history of mental illness and probability of repeat future institutionalizations made him an adequate representative for a class of persons subject to civil commitment proceedings. 411 F. Supp. 905, 907–08 (D.N.J. 1976). Here, as in *Coll*, the likelihood that

---

[25] The "capable of repetition" exception to mootness has frequently been applied in the context of persons with mental illness. *See, e.g., Honig v. Doe*, 484 U.S. 305, 319–20 (1988) (holding that former student who could not control his behavior due to mental illness could bring claims against school district's discipline policy because it was reasonable to expect that the challenged policy would harm him again if he enrolled at another public school).

[26] In *Powell*, a case heavily relied on for Defendant's argument against commonality, the Maryland court correctly recognized that the four plaintiffs' claims were not moot even though they were no longer waiting for admission to state hospitals, because their claims were "capable of repetition." 168 A.3d at 869.

[27] *See* Declaration of Lourdes Rodriguez (ECF No. 104 Ex. E).

Plaintiffs' mental illness will lead to a recurrence of the circumstances that put them on Defendant's waiting list makes their interests identical to those of present and future incompetency detainees and NGRI acquittees; thus they are adequate representatives for the proposed classes.[28]

Moreover, Plaintiffs seek injunctive relief that will benefit the Named Plaintiffs and all present and future class members in the same way. No current or future class member has an interest in seeing Defendant continue to maintain long waiting lists for admission to state mental health facilities. *Cf. Sosna v. Iowa*, 419 U.S. 393, 403 n.13 (1975) (finding adequacy satisfied where conflict of interest was unlikely because it was "difficult to imagine" why any class member would have an interest in upholding the challenged statute). Plaintiffs are thus adequate representatives.

### C. Class counsel do not have any actual or potential conflict of interest.

Defendant asserts that Plaintiffs' counsel, Disability Rights Texas, cannot satisfy the adequacy requirement because it has a "potential" conflict of interest[29] insofar as Plaintiffs' remedy would purportedly require Defendant to expand the number of beds available for forensically committed incompetency detainees and NGRI acquittees at the expense of civilly committed persons with mental illness. Yet, Plaintiffs have not asked the Court to impose any

---

[28] The "capable of repetition" exception to mootness applies even more strongly to the Named Plaintiffs' next friends, whose ability to litigate on behalf of the class is the proper focus of the adequacy inquiry. As criminal defense attorneys who represent persons with mental illness, *see* fn. 24 infra, the next friends are highly likely to have other current or future clients who will be found incompetent to stand trial or not guilty by reason of insanity and thus find themselves waiting in jail pursuant to Defendant's policy.

[29] Defendant does not cite, and Plaintiffs' counsel could not find, a single authority supporting Defendant's assertion that Plaintiffs' counsel cannot be "zealous" in advocating for their clients' rights because its mission as a non-profit also includes protecting the rights of other vulnerable populations. Such a holding would hamstring non-profit law firms like Disability Rights Texas from ever bringing suit, which its enabling legislation requires it to do, to vindicate the rights of any particular subgroup of the overall population it is charged to protect.

such measure. Rather, Plaintiffs ask the Court to set simple time limits for how long class members can constitutionally remain on the waiting lists and will leave it up to Defendant to decide how to accommodate all class members within those time frames consistent with their other obligations. Disability Rights Texas is not a party to this action, but rather is acting as counsel for the Named Plaintiffs and the proposed classes, and as such it is subject to all the applicable ethical rules with regard to avoiding conflicts of interest. Defendant does not claim, and there is no reason to believe, that Disability Rights Texas will not abide by the ethical rules with regard to the clients it represents and seeks to represent in this action.

Defendant relies on *Krim v. pcOrder.com, Inc.* to support its assertion that the adequacy of class counsel is compromised even by a "potential" conflict of interest. Resp. at 24 citing 210 F.R.D. 581, 589 (W.D. Tex. 2002). But the conflict in *Krim* went far beyond mere appearance of potential conflict. Plaintiffs' counsel in *Krim* were litigating multiple class actions on behalf of different classes whose interests might not coincide, and counsel engaged in patently unethical behavior by failing to tell their clients about the other class actions or inform them of settlement offers or negotiations in those actions, leading to the perception that they were favoring some classes' claims at the expense of other less lucrative ones. *Id.* No such issue exists here. As Plaintiffs have already stated, "there is no conflict of interest between the Named Plaintiffs and their counsel or between the unnamed, future class members and counsel," and Plaintiffs' counsel "have no other professional commitments that are antagonistic to, or which would detract from, their efforts to seek a favorable decision for the classes in this case." Mot., ECF No. 104, at 34-35.[30] Defendant offers no evidence to controvert this and cites no authority for the proposition

---

[30] More specifically, all three of the undersigned counsel have stated in declarations that they are not currently litigating any other class actions. Declaration of Beth Mitchell, ECF No. 104, Exhibit

that class counsel can be found inadequate based on a hypothetical conflict of interest involving unspecified persons who are not their clients in any other pending litigation. The Court should reject Defendant's argument and should find that Plaintiffs' counsel are adequate to represent the proposed classes.

## V. RULE 23(b)(2)

Plaintiffs have satisfied the requirements for class certification under Federal Rule Civil Procedure 23(b)(2), and Defendant's arguments to the contrary are unavailing. Plaintiffs have sufficiently defined a specific constitutional injury capable of resolution by simple, effective injunctive relief.

Defendant's assertion that Plaintiffs have never defined the specific constitutional injury faced by each class is demonstrably false. Plaintiffs have repeatedly and consistently explained that Defendant's actions have injured their liberty interests because the nature and duration of their confinements in county jails are not reasonably related to the permissible purpose of that confinement, which is to obtain competency restoration services or NGRI evaluation and treatment services that are not available in most jails. Fifth Am. Complaint, ECF No. 97 at ¶¶ 91, 96, 101, 107; Mot., ECF No. 104 at ¶¶ 96, 107.[31]

Because a single injunction barring Defendant from refusing to admit Plaintiffs more than

---

U, at ¶ 2; Declaration of Peter Hofer, ECF No. 104, Exhibit V, at ¶ 15; Declaration of John Michael Gaddis, ECF No. 104, Exhibit W, at ¶ 6.

[31] *See* U.S. Const. art. 14 (prohibiting the State from "depriv[ing] any person of…liberty…without due process of law"); *Jackson v. Indiana*, 406 U.S. at 738 ("Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018) *citing Seling v. Young*, 531 U.S. 250, 265 (2001) (Due process requires that "the conditions and duration of confinement ... bear some reasonable relation to the purpose for which persons are committed."); *Bell v. Wolfish*, 441 U.S. at 535 (holding that "…under the Due Process Clause, a detainee may not be punished prior to adjudication of guilt in accordance with due process of law" and defining "punishment" as "a restriction or condition that is not reasonably related to a legitimate goal.").

21 or 14 days after receipt of their commitment orders would redress Plaintiffs' injuries in one stroke, the Court should reject Defendant's argument that HHSC's system of mental health facilities is simply too large and too complex to respond to a single injunction. First, Defendant's current position on this point is contradicted by its repeated complaints over the past two years of briefing before this Court and the Fifth Circuit that Plaintiffs' proposed remedy was too vague because it did ***not*** specify a particular time limit.[32] Second, Defendant has previously shown its ability to comply with a similar court-imposed 21-day time limit.[33] Third, courts within the Fifth Circuit have routinely rejected similar arguments, finding that neither Texas's foster care system nor HHSC's nursing home screening system for individuals with intellectual disabilities, were too large or too complicated for Rule 23(b)(2) certification. *See Perry*, 294 F.R.D. at 47 (foster care system serving over twelve thousand children in long-term foster care was amenable to (b)(2) injunctive relief); *Steward*, 315 F.R.D. at 92 (rejecting similar argument with respect to nursing home screenings for individuals with intellectual disabilities and granting certification under Rule 23(b)(2), even though the class included a population of thousands of individuals with intellectual disabilities dispersed throughout the state of Texas with different medical needs).[34] Finally, this Court will not have to mandate and monitor every facet of HHSC's mental health facilities as Defendant claims. Resp. 26. Defendant universally places each incompetency detainee and NGRI

---

[32] *See supra* note 4.

[33] Mot., ECF No. 104 at 11.

[34] The injunctive remedies that the courts in *Perry* and *Steward* found to be consistent with Rule 23(b)(2) were significantly more complex than the simple time limits proposed here. *See Perry*, 294 F.R.D. at 47 (considering "a number of appropriate injunctions" such "setting maximum caseloads, hiring more caseworkers, or some overflow procedure that distributes cases so as to ensure that no caseworker is especially overburdened"); *Steward*, 315 F.R.D. at 492 (multiple injunctions targeting various deficiencies in Medicaid service system).

acquittee on waiting lists which operate on a first-come, first-served basis.[35]

The prayed-for injunction would redress Plaintiffs' injuries as they would no longer be confined in jail settings where the punitive nature and duration of their confinements bear no reasonable relation to the competency restoration or NGRI evaluation and treatment purposes of their confinements.  Plaintiffs have thus satisfied their obligations under Rule 23(b)(2).

## CONCLUSION

Based on the arguments set forth above and in their Motion for Class Certification and Appendix, Plaintiffs' Motion for Class Certification should be granted.

Respectfully submitted,

_____

BETH MITCHELL
State Bar No. 00784613
PETER HOFER
State Bar No. 09777275
LISA SNEAD
State Bar No. 24062204
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)
bmitchell@drtx.org
phofer@drtx.org
lsnead@drtx.org

COTY MEIBEYER
State Bar No. 24085469
DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691 (Phone)

---

[35]In contrast to Defendant's practice of placing criminal defendants on the waiting lists on a first-come, first-served basis, the Maryland defendants in the case Defendant referenced considered current acuity of a detainee and determined the order of admissions based on individual detainees' needs, not simply by who got there first.  *See Powell*, 163 A.3d 882 (Getty, J. dissenting).

(713) 974-7695 (Fax)
cmeibeyer@drtx.org

JOHN MICHAEL GADDIS
State Bar No. 24069747
WINSTON & STRAWN LLP
2121 N. Pearl St., Suite 900
Dallas, Texas 75201
(214) 453-6500 (Phone)
(214) 453-6400 (Fax)
mgaddis@winston.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2019, a true and correct copy of the foregoing document

was electronically filed using the Court's CM/ECF filing system, thus providing notice of

electronic filing to the following:

Michael R. Abrams
Thomas A. Albright
Christopher D. Hilton
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

BETH MITCHELL