IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH WARD, by his next friend FRANCES BOURLIOT, *et al.* | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | |
| COURTNEY PHILLIPS, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission, | § § § § § | Civil Action No. 1:16-cv-00917-LY |
| *Defendant*. | § § § | |

---

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

MICHAEL R. ABRAMS
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24087072
CHRISTOPHER D. HILTON
Assistant Attorney General
Texas Bar No. 24087727
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 (Telephone)
(512) 320-0667 (Facsimile)
Michael.Abrams@oag.texas.gov
Christopher.Hilton@oag.texas.gov
Thomas.Albright@oag.texas.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH WARD, by his next friend FRANCES BOURLIOT, *et al.* | § § § | |
| *Plaintiffs*, | § | |
| v. | § § | |
| COURTNEY PHILLIPS, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission, | § § § § | Civil Action No. 1:16-cv-00917-LY |
| *Defendant*. | § § § | |

## I. FINDINGS OF FACT

1.      The Texas Health and Human Services Commission ("HHSC") oversees the Health and Specialty Care Systems, of which the state hospitals are a part. Declaration of Timothy E. Bray ("Bray Dec.") ¶ 2.

2.      The Texas Legislature has funded HHSC to operate approximately 2,269 inpatient beds at its ten state hospitals, which serve both the forensic and civil populations, as well as persons who are voluntarily self-admitted. *Id.*

3.      HHSC is staffed by diligent professionals, including, among others, psychiatrists, nurses, educators, and administrators, who are charged with making the best use of the limited resources available to them. *Id.* ¶ 7.

4.      HHSC has increased the number of forensic patients (i.e., incompetent detainees and insanity acquittees) it serves, which now accounts for approximately sixty-five percent of the inpatient beds at its hospitals and approximately thirty-five percent to civil patients. *Id.* ¶¶ 2, 4.

5.      HHSC maintains two separate master tracking lists of pending forensic admissions: one for pending admissions for persons requiring placement in a maximum security unit (the MSU

tracking list), and one tracking list for the admission of persons determined incompetent to stand trial for non-violent offenses or otherwise requiring placement in a non-MSU facility, which is referred to as the "Clearinghouse" list. *Id.* ¶ 3.

6.     Beginning on September 1, 2019, HHSC has the flexibility to determine whether an incompetent detainee charged with a violent offense is admitted to an MSU or a non-MSU facility. Acts 2019, 86th Leg., S.B. 562, § 4, eff. Sept. 1, 2019. Defendants who are not charged with offenses requiring commitment to an MSU are served in other state hospitals or state-supported living centers pursuant to Article 46B.073(d). HHSC expects this change to provide its experienced clinicians the flexibility to ensure that proposed patients are placed in appropriate facilities based on unique medical conditions as opposed to offense categories. Bray Dec. ¶ 12. It is anticipated that this change will reduce the number of individuals needing admission to a maximum-security unit. *Id.*

7.     HHSC currently operates two MSU facilities: one at North Texas State Hospital–Vernon Campus ("Vernon") and another at Rusk State Hospital. *Id.* ¶ 5.

8.     As a general matter, HHSC operates the forensic Clearinghouse on a first-come, first-served basis, and patients receive admission to a non-MSU unit at a state hospital or at a contracted facility that serves forensic commitments. *Id.* ¶ 3.

9.     HHSC generally operates the MSU waitlist on a first-come, first-served basis with respect to incompetent detainee admissions. *Id.* ¶ 8.

10.     With respect to insanity acquittees, HHSC has prioritized that population to meet the 14-day length of stay statutory provision found in the Texas Criminal Code. *See id.*; Tex. Code Crim. Pro. art. 46C.160(a).

11.     Wait times for admission to a non-MSU facility are generally shorter than wait

times for admission to an MSU facility. Bray Dec. ¶ 9.

12.     The reduced wait times for non-MSU patients can be attributed to various factors. Only two state hospitals have maximum security units, and the Rusk facility only accepts adult males. *Id.* ¶ 5.

13.     Furthermore, in order for patients to "step-down" to a non-MSU unit at a state hospital, patients must go through a dangerousness review process that adds additional time to the treatment process in a maximum-security facility. *Id.*

14.     When HHSC receives a commitment order, not only must HHSC secure an available bed, but it must also ensure that the programs and services the individual needs are not occupied to capacity by others in need. Declaration of Dr. Matthew Faubion ("Faubion Dec.") ¶ 3.

15.     To that end, HHSC offers a wide range of services: state hospital patients receive services that include adult and forensic competency restoration services, forensic and residential psychiatric services, specialty psychiatric services for people who have an intellectual or developmental disability, and child, adolescent, and geriatric psychiatric services. *Id.* ¶ 2.

16.     Each of these services is tailored to ensure that each patient receives the highest quality care and individualized attention. For example, competency restoration services may include an educational class, taught by an experienced HHSC employee, that provides a mock courtroom environment. *Id.* Psychiatric services may include adjunctive psychosocial rehabilitation programs such as a music, shop, or T-shirt printing class if appropriate for that individual. *Id.*

17.     Recognizing that HHSC can improve on its forensic admission process and reduce wait times further, HHSC has expanded the North Texas State Hospital unit for persons with multiple disabilities, established a new 16-bed unit at the Kerrville State Hospital (which is an all-

forensic facility), and established a new 20-bed unit at the Terrell State Hospital that serves forensic patients who have served in the armed forces. HHSC is also implementing aggressive recruitment and staffing strategies, and taking measures to reduce overall lengths of stay, which will make more beds and programs available to more individuals. Bray Dec. ¶ 11.

18.    And, importantly, the Texas Legislature has appropriated funds for the creation of a 70-bed maximum security unit at Kerrville State Hospital, the construction of a new hospital facility at Rusk State Hospital that will increase maximum-security capacity by 60 beds, and a 40-bed expansion at the San Antonio State Hospital. *Id.*

19.    Plaintiffs filed their Fifth Amended Complaint on May 9, 2019. Doc. 97. Every current named plaintiff has already been admitted to a state hospital. *See id.* ¶¶ 10-16; Doc. 104-4 ¶ 6.

## II.    CONCLUSIONS OF LAW

20.    Plaintiffs bear the burden of proving that they satisfy the prerequisites to class certification outlined in Rule 23 of the Federal Rules of Civil Procedure. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

21.    Rule 23(a)'s prerequisites to certification are: (1) "numerosity"—the class must be "so numerous that joinder of all members is impracticable"; (2) "commonality"—there must be "questions of law or fact common to the class"; (3) "typicality"—the representative parties' claims or defenses must be "typical of the claims or defenses of the class"; and (4) "adequate representation"—the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

22.    Additionally, Plaintiffs must establish that one of the prerequisites of Rule 23(b) is

satisfied. Here, Plaintiffs contend that their proposed class satisfies Rule 23(b)(2)'s requirement that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### *Numerosity*

23.     Certification of a class is only appropriate when the class is so numerous that joinder of all members is impractical. *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016).

24.     To satisfy Rule 23(a)(1)'s numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

25.     In addition, "the mere possibility that the class of potential plaintiffs might be so large that joinder would be impracticable is not the same as proof of such numerosity." *Anderson v. Donovan*, No. 06-3298, 2011 WL 798118, at *3 (E.D. La. Feb. 28, 2011).

26.     "Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir. 1980).

27.     Where similar purported claimants are few in number and their identities are readily ascertainable, the numerosity requirement is not satisfied. *See Cooper v. Kliebert*, No. 14-507, 2014 WL 7338846 (M.D. La. Dec. 22, 2014).

28.     Plaintiffs have failed to demonstrate that their proposed insanity acquitee class is sufficiently numerous to satisfy Rule 23(a)'s numerosity requirement.

29.     There are only two named plaintiffs for the insanity acquittee class, and a limited number of potential class members, all of whom are readily identifiable and can be located with

relative ease, as Defendants' evidence demonstrates.

30.     Accordingly, Plaintiffs' proposed insanity acquitee class has not satisfied the numerosity requirement.

*Commonality*

31.     Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 349-50 (citation omitted).

32.     That requirement demands more than showing that the class members "have all suffered a violation of the same provision of law." *Id.* at 350.

33.     Rather, the class members' claims "must depend upon a common contention" of fact or law that "is capable of classwide resolution." *Id.*

34.     In other words, determining whether that contention is true must "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *Id.*

35.     In conducting the requisite rigorous analysis of commonality, then, a district court must "explain" or "delineate" how answering a proposed common factual or legal question will resolve at once a key element of all class members' claims. *M.D.*, 675 F.3d at 841, 843.

36.     Relevant to that explanation is whether "'[d]issimilarities within the proposed class'" will "'impede the generation of common answers.'" *Wal-Mart*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)); *see also id.* at 359 (noting that "[w]e consider dissimilarities" among class members to decide whether a common question exists).

37.     Accordingly, if a district court rejects the defendant's argument that variations within the class defeat commonality, "it must do so with reference to the elements and defenses and requisite proof for each of the proposed class claims in order to ensure that differences among

the class members do not preclude commonality." *M.D.*, 675 F.3d at 843-44.

38.     *Jackson v. Indiana*, 406 U.S. 715 (1972), requires an individualized inquiry into the circumstances of a detainee's delayed admission to a state facility.

39.     Indeed, numerous individual factors are relevant in addressing whether a delay in transfer to a state mental health facility is unreasonable, including, for example, "the nature of the defendant's disorder, the circumstances of the defendant's confinement at the pretrial detention facility, the treatment needs of the defendant, the treatment needs of other patients at the hospital facility, the need to provide a setting to deal with the nature of the dangerousness found by the court with respect to that defendant, the basis for a policy that results in a waiting list, and the experience under that policy." *Powell v. Md. Dep't of Health*, 455 Md. 520, 552, 168 A.3d 857 (2017).

40.     Plaintiffs have not presented evidence sufficient to demonstrate that they and each member of the proposed class have suffered the same alleged injury. *See Wal-Mart*, 564 U.S. at 349-50.

41.     Allowing this matter to proceed as a class action will not facilitate the resolution of the putative class members' alleged claims because the individual circumstances of each member of the proposed class must be considered in order to determine whether a constitutional violation has occurred. *See Jackson*, 406 U.S. 715.

42.     Because the unique circumstances of each putative class members' detention are central to each element of their claims, the dissimilarities among them will impede the generation of common answers among the class. *See Wal-Mart*, 564 U.S. at 350.

43.     Plaintiffs have not demonstrated that there are issues capable of classwide resolution. *See id.*

44. Accordingly, Plaintiffs have not carried their burden of establishing commonality among their proposed class.

### *Typicality*

45. In determining whether Rule 23(a)'s typicality requirement is satisfied, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)).

46. That same rule also requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

47. The Supreme Court in *Jackson* specifically declined to "prescribe arbitrary time limits," recognizing that individual inquiry is required in order to determine whether a violation has occurred for these types of plaintiffs. *See Jackson*, 406 U.S. at 738.

48. Recognizing that the "commonality and typicality requirements of Rule 23(a) tend to merge," for the same reasons described above in connection with commonality, Plaintiffs have also failed to demonstrate typicality among the claims of the putative class members. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Wal-Mart*, 564 U.S. at 349 n.5.

### *Adequacy of Representation*

49. "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Comp. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (citation omitted).

50. The "adequacy requirement mandates an inquiry into . . . the zeal and competence of the representative[s]' counsel and . . . the willingness and ability of the representative[s] to take an active role in and control the litigation and protect the interests of the absentees[.]" *Id*. at 479

(quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).

51.     "The adequacy inquiry also 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Id.* at 480.

52.     Because "absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Id.*

53.     Plaintiffs have failed to demonstrate that they can serve as adequate class representatives. None of them are currently in the proposed class, as all of them have been admitted to state hospitals. Thus, they will be less inclined to pursue adequately and vigorously the claims for a class to obtain prospective injunctive relief that they do not stand to benefit from. *See Kase v. Solomon Smith Barney, Inc.*, 218 F.R.D. 149, 159 (S.D. Tex. 2003) (finding a class representative inadequate where the representative's claim was "an unusual remedy election which ignores other available forms of damages); *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529 (N.D. Tex. 2005).

54.     Moreover, Plaintiffs' "next friends" in most cases have no legal or familial relationship to the Plaintiffs or any other putative class members. Plaintiffs' "next friends" are thus wholly unlike the close relationships cited by Plaintiffs, such as parent-child or court-appointed attorney ad litem. *Cf.* ECF No. 113 at 18 (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5th Cir. 1982); *M.D. v. Perry*, 294 F.R.D 7 (S.D. Tex. 2013)). The Court finds that there is nothing to support Plaintiffs' next friends' adequacy to assist in this litigation, which means that Plaintiffs cannot carry their burden under Rule 23(a).

55.     Plaintiffs have not demonstrated how they and their next friends will adequately

protect the interests of the class. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

56.     Likewise, Plaintiffs' proposed class counsel, Disability Rights Texas ("DRTX"), cannot adequately serve as counsel for the proposed class. Plaintiffs apparently propose to reduce the number of beds available for civil commitments in order to serve putative class members, but DRTX also owes an obligation to individuals who would be served in those beds by virtue of its role as the federally designated protection and advocacy agency for the State. DRTX notes that there is no pending litigation which would create a conflict, but it does not address the potential conflict created by its separate duties under federal law as the State's protection and advocacy agency.

57.     Accordingly, Plaintiffs have not proven that DRTX can adequately represent the putative class. *See Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002).

### *Propriety of Classwide Injunctive Relief*

58.     Plaintiffs have proposed a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, which requires them to establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

59.     "In other words, Rule 23(b)(2) applies only when a single injunction . . . would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

60.     The Fifth Circuit has interpreted Rule 23(b)(2) to create two relevant requirements when a proposed class seeks classwide injunctive relief: (1) the "class members must have been harmed in essentially the same way," *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007), and (2) "the injunctive relief sought must be specific." *Id.* (citing Fed. R. Civ. P.

65(d)); *see M.D.*, 675 F.3d at 845. Plaintiffs have failed to meet both of these requirements.

61.    Plaintiffs have not presented evidence sufficient to demonstrate that they and each member of the proposed class have suffered the same alleged injury, *see Wal-Mart*, 564 U.S. at 349-50, in part because the individual circumstances of each member of the proposed class must be considered in order to determine whether a constitutional violation has occurred, *see Jackson*, 406 U.S. 715.

62.    Likewise, Plaintiffs have failed to specify the injunctive relief—and the basis therefore—that they are requesting. Plaintiffs' requested time limits for moving putative class members to state hospitals—regardless of the circumstances that they face or their needs— are arbitrary, and Plaintiffs have failed to demonstrate how such a time limit could be imposed, justified, or effective at remedying the diverse purported harms allegedly suffered by class members.

63.    Accordingly, Plaintiffs have failed to carry their burden with respect to both requirements for meeting Rule 23(b)(2).

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

*/s/ Christopher D. Hilton*
MICHAEL R. ABRAMS
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24087072

CHRISTOPHER D. HILTON
Assistant Attorney General
State Bar No. 24087727
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 (Telephone)
(512) 320-0667 (Facsimile)
Michael.Abrams@oag.texas.gov
Christopher.Hilton@oag.texas.gov
Thomas.Albright@oag.texas.gov

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record on October 4, 2019, via the court's electronic filing system.

*/s/ Christopher D. Hilton*
Christopher D. Hilton
Assistant Attorney General