IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

MAR 2 9 2022

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

| | |
|---|---|
| JOSEPH WARD, BY HIS NEXT FRIEND FLOYD JENNINGS; MARC LAWSON, BY HIS NEXT FRIEND KRISTA CHACONA; JENNIFER LAMPKIN, BY HER NEXT FRIEND ELSIE CRAVEN; CECIL ADICKES, BY HIS NEXT FRIEND NEXT FRIEND ELSIE CRAVEN; KENNETH JONES, BY HIS NEXT PATRICIA SEDITA; MARY SAPP, BY HER NEXT FRIEND, LOURDES RODRIGUEZ; AND JULIAN TORRES, BY HIS NEXT FRIEND MELISSA SHEARER, PLAINTIFFS, V. CECILE ERWIN YOUNG,[1] IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF TEXAS HEALTH AND HUMAN SERVICES COMMISSION, DEFENDANT. | § § § § § § § § § § § § § § § § § § § § § § §   CIVIL NO.  1:16-CV-917-LY |

## ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Before the court are Plaintiffs' Motion for Class Certification filed June 17, 2019 (Doc. #104); Defendant's Response to Plaintiffs' Motion for Class Certification filed July 17, 2019 (Doc. #110); and Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Class Certification filed July 31, 2019 (Doc. #112). Also before the court are Plaintiffs' Proposed Findings of Fact and Conclusions of Law filed October 4, 2019 (Doc. #121) and Defendant's Proposed Findings of Fact and Conclusions of Law filed October 4, 2019 (Doc. #120). On November 19,

---

[1] On August 19, 2020, Cecile Erwin Young, in her official capacity as the Executive Commissioner of the Texas Department of State Health Services, was substituted as Defendant in this action (Doc. #136).

2019, the court held a hearing on the motion, at which counsel appeared for all parties. Having

considered the motion, response, reply, the arguments of counsel at the hearing, the parties' proposed

findings of fact and conclusions of law, and the record in this case, the court will grant the motion

for class certification in part for the reasons to follow.

*Background*

      This cause was originally brought pursuant to Section 1983 of Title 42 of the United States

Code on behalf of seven incarcerated individuals. Two putative classes are comprised of (1)

individuals found not guilty by reason of insanity and (2) individuals found incompetent to stand

trial, who assert that their Fourteenth Amendment Due Process rights are violated when they are

housed for prolonged periods in Texas jails without adequate mental-health treatment while waiting

for a bed to become available in a Texas Department of State Health Services facility. Defendant

Cecile Erwin Young is the Executive Commissioner of the Texas Department of State Health

Services (the "Department") and is sued in her official capacity.

      In Texas, the Department oversees state hospitals and behavioral-health programs. The

Texas Legislature has funded the Department to operate approximately 2,269 inpatient beds at its

10 state hospitals, which serve both the forensic[2] and civil populations, as well as persons who are

voluntarily self-admitted. The Texas Legislature has given the Department the discretion to

determine how to divide the total number of Department inpatient mental-health beds between the

civil and forensic population. The number of forensic patients served by the Department accounts

---

   [2] The forensic population of the state hospitals is comprised of incompetent detainees
and insanity acquittees.

for approximately 65 percent of the inpatient beds at its hospitals and approximately 35 percent to civil patients.

There are no formal criteria for determining the distribution of forensic versus civil beds. The Department does not have sufficient capacity to admit all incompetent detainees committed to its care for competency-restoration services immediately upon commitment.

The Department maintains two separate master tracking lists of pending forensic admissions: one for pending admissions for persons requiring placement on a maximum-security-unit tracking list ("MSU waitlist"), and one tracking list for the admission of persons determined incompetent to stand trial for non-violent offenses or otherwise requiring placement in a nonmaximum-security facility ("Clearinghouse waitlist").

When an individual charged with a crime is found incompetent to stand trial, all criminal proceedings are stayed,[3] and the individual must be transferred to a Department facility for further examination and treatment toward the specific objective of attaining competency to stand trial or released on bail subject to conditions. *See* Tex. Code Crim. Proc. art. 46B.071-073 (West 2018 & Supp. 2020). An order committing a defendant for restoration of competency "must place the defendant in the custody of the sheriff for transportation to the facility in which the defendant is to receive treatment for purposes of competency restoration." Tex. Code Crim. Proc. art. 46B.075 (West 2018). The Department is granted the flexibility to determine whether an incompetent detainee charged with a violent offense is admitted to an MSU or a non-MSU facility.[4] Tex. Code

---

[3] Tex. Code Crim. Proc. art. 46B.004(d) (West 2018).

[4] The Department asserts that the recent amendment will provide its experienced clinicians the flexibility to ensure that proposed patients are placed in appropriate facilities based on unique medical conditions as opposed to offense categories, and the Department anticipates that the

Crim. Proc. Art. 46B.073(c) (West Supp. 2020).   Defendants who are not charged with offenses requiring commitment to an MSU are served in other state hospitals or state-supported living centers. Tex. Code Crim. Proc. art. 46B.073(d).

An individual found not guilty by reason of insanity stands acquitted of the offense charged and may not be considered a person charged with an offense.   *See* Tex. Code Crim. Proc. art. 46C.155(a) (West 2018).   In accordance with Texas law, if a court determines that the acquittee's offense caused, placed another in, or threatened serious bodily injury, the individual must, within 14 days, be transferred to the maximum-security unit designated by the Department for evaluation of the person's present mental condition and for treatment.   *See* Tex. Code Crim. Proc. art. 46C.157, 46C.251-252(a), and 46C.160 (West Supp. 2020).   Once transferred, the Department is required to evaluate the acquittee for 30 days,[5] after which the acquittee must be released if, after a hearing, the state fails to prove by clear and convincing evidence that the individual has a mental illness and is dangerous.   *See id.* at 46C.252–258 (West 2018).

The Department operates the Clearinghouse waitlist on a first-come, first-served basis, and patients receive admission to a non-MSU unit at a state hospital or at a contracted facility that serves forensic commitments.[6]   The Department likewise generally operates the MSU waitlist on a first-

---

amendment will reduce the number of individuals needing admission to a MSU facility.

   [5] *See* Tex. Code Crim. Proc. art. 46C.251(a), (d).

   [6] As of March 15, 2019, there were 318 detainees found incompetent to stand trial and placed on the Department's Clearinghouse waitlist. Of those 318 detainees, 58 percent (186 detainees) remained incarcerated in county jails for more than 21 days from the day the Department received the court order to the day it notified the jail that the person could be admitted to a facility.

come, first-served basis with respect to incompetent detainee admissions.[7] Wait times for admission

to a non-MSU facility are generally shorter than wait times for admission to a MSU facility.  As for

insanity acquittees who have not been convicted and are no longer charged, the acquittee can be

detained in jail for no more than 14 days pending transfer to an mental-health facility. *See* Tex. Code

Crim. P. art. 46C.160(a).  As of July 15, 2019, only two insanity acquitees remained on the

Department's MSU waitlist.[8]

 Plaintiffs assert that Young's failure to timely accept transfer of incompetent detainees and

insanity acquittees to Department facilities and to provide timely restoration and evaluative treatment

forces Plaintiffs and proposed members of the classes they represent to remain incarcerated for

weeks or months in county jails without any of the treatment or evaluation services Young and her

Department are statutorily required to provide.  Plaintiffs further argue that because incompetent

criminal defendants have not been convicted of any crime and insanity acquittees have been absolved

of criminal responsibility, both classes of persons have a liberty interest in freedom from

incarceration and a liberty interest in the receipt of restorative treatment.  Plaintiffs seek a declaration

of their rights and an order enjoining Young from violating their rights.  Specifically, Plaintiffs seek

to enjoin Young (1) from failing to make a bed available for persons found incompetent to stand trial

---

 [7] As of March 15, 2019, there were 453 detainees found incompetent to stand trial or not guilty by reason of insanity and placed on the Department's MSU waitlist. Of those 453 detainees, 94.7 percent (429 individuals) remained incarcerated in county jails for more than 21 days from the day the Department received the court order to the day it notified the jail that the person could be admitted to a facility.

 [8] However, as recently as May 20, 2019, Young admitted that "insanity acquittees who are required to be admitted to MSUs within 14 days frequently have to wait weeks or months for admission after the[ir] adjudication."

and order to a Department mental-health facility no later than 21 days from the date the Department receives notice of a criminal court's commitment order under Chapter 46B of the Texas Code of Criminal Procedure, and (2) from failing to make a bed available for persons found not guilty by reason of insanity an order to a Department mental-health facility not later than 14 days from the date the Department receives notice of a criminal court's commitment order under Chapter 46C of the Teas Code of Criminal Procedure.

Plaintiffs' proposed classes are as follows:

1. All persons who are now or will be in the future charged with a crime in the State of Texas, and: (a) who are ordered to a Texas Department facility where they are to receive competency restoration services; and (b) for whom the Department receives the court order; but (c) who remain detained in a Texas county jail for more than 21 days.

2. All persons who are now, or will be in the future, charged with a crime in the State of Texas and who are found not guilty by reason of insanity, and: (a) who are ordered to receive evaluation or treatment services at a Department facility; (b) for whom the Department receives the court order; but (c) who remain detained in a Texas county jail for more than 14 days.

This court granted Plaintiffs' original Motion for Class Certification. On interlocutory appeal, the Fifth Circuit vacated the certification order, remanding the case to this court to perform a "rigorous analysis" of whether Plaintiffs have satisfied the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. *Ward v. Hellerstedt*, 753 Fed. App'x 236, 250 (5th Cir. 2018). Plaintiffs subsequently filed a second motion for class certification (Doc. #104), to which Young responded (Doc. #110) and Plaintiffs' replied (Doc. #112). The parties also filed proposed findings of fact and

conclusions of law (Doc. ## 120 and 121). The court held a hearing on the motion on November 19, 2019.

***Analysis***

"While retaining broad discretion to certify a class, '[a] district court must rigorously analyze Rule 23's prerequisites before certifying a class.'" *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 310 (5th Cir. 2000) (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). *See also Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 (5th Cir. 2020). Federal Rule of Civil Procedure 23 sets forth the rules for establishing a certifiable class in federal court. Section (a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Section (b) directs that a class action may only be maintained if one of the following is satisfied:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual

adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Accordingly, a class may be properly certified if it meets the requirements of Rule 23(a) and one or more of the provisions of Rule 23(b) are satisfied. The trial court "maintains substantial discretion in determining whether to certify a class action." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998) (citation omitted). "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007) (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004)).

Young opposes class certification on a number of grounds. Specifically, Young argues: (1) Plaintiffs have failed to demonstrate that their proposed insanity-acquitee class sufficiently

8

numerous; (2) Plaintiffs have failed to demonstrate that they and each member of the proposed class

have suffered the same alleged injury and that there are issues capable of class-wide resolution; (3)

because commonality and typicality requirements tend to merge, for the same reasons described in

connection with commonality, Plaintiffs have failed to demonstrate typicality among the claims of

the putative class members; (4) Plaintiffs have failed to demonstrate how they and their next friends

will adequately protect the interests of the class; and (5) Plaintiffs have failed to specify the

injunctive relief they are requesting as Plaintiffs' requested time limits for moving putative class

members to state hospitals are arbitrary.

> The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–701 (1979). To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The Rule "does not set forth a mere pleading standard." *Ibid.* Rather, a party must not only "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact," typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). *Ibid.* The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).

*Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Fifth Circuit requires district courts to "look

beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive

law in order to make a meaningful determination of the certification issues.'" *McManus v.*

*Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003) (quoting *Castano*, 84 F.3d at 744). *See*

*also M.D. ex re. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012).

*Numerosity*

A class can be certified only if "the class is so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). *See also Ibe v. Jones*, 836 F.3d 516, 5238 (5th Cir. 2016).

"[A] plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of

purported class members." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The Fifth Circuit has noted, however, that "the number of members in a proposed class is not determinative of whether joinder is impracticable." *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)). The court may consider a number of facts other than the actual or estimated number of purported class members, including the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *See Zeidman*, 651 F.2d at 1038.

Plaintiffs contend that as of March 2019, the putative-class members of incompetent detainees was 615, with an unknown number of future class members. Young does not contest that number. Given the undisputed number, the unknown number of future class members, and the fact that Plaintiffs presented evidence that the mental capacity of the incompetent detainees and their transient state creates a barrier to vindicating their interests, the court finds that the numerosity factor is met with regard to incompetent detainees.

Young asserts that Plaintiffs have failed to demonstrate that their proposed insanity-acquitee class is sufficiently numerous, arguing that as of the July 15, 2019, only two insanity acquittees remained on the MSU waitlist and noting that the Department has prioritized that population to meet the 14-day statutory requirement. Plaintiffs have not presented evidence to refute Young's evidence, arguing only that the future numbers are unknown and may rise. Future insanity acquitees can be readily identified through the Department's records. Given the limited number of insanity acquitees identified and the fact that future insanity acquitees can be easily identified and located, the court finds that Plaintiffs have failed to carry their burden of establishing that the insanity-acquitee class

is so numerous to render joinder impracticable.  *See Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980); *Cooper v. Kliebert*, 2014 WL 7338846, at *2 (M.D. La. Dec. 22, 2014).

*Commonality*

The crux of this case is commonality.  Under Federal Rule of Civil Procedure 23(a)(2), a class may be certified only if "there are questions of law or fact common to the class."  The parties agree that *Wal-Mart Stores, Inc. v. Dukes* establishes the standard for determining the commonality requirement.  564 U.S. 338, 349 (2011).  *See also Perry*, 675 F.3d at 837 (applying standard in *Wal-Mart Stores*).  Thus, the court will consider Young's claim that Plaintiffs fail to identify proper common questions of law and fact and offer no evidence to support their showing of commonality among incompetent pretrial detainees.

Young asserts that each incompetent-detainee claim must be resolved on a case-by-case basis based on an individualized inquiry into the circumstances of the detainee's delayed admission to a state facility pursuant to *Jackson v. Indiana*, 406 U.S. 715, 717–18 (1972).  Young argues that because the incompetent detainees are housed in different county jails, some of which provide medication therapies for the detainees while others do not, Plaintiffs cannot demonstrate that differences among these detainees do not preclude commonality.  In response, Plaintiffs assert that Young misstates the standard for evaluating commonality as requiring that the harm to class members must be the same regardless of the circumstances of their detention.  Plaintiffs argue that the standard articulated by the Fifth Circuit in *Yates v. Collier*, that commonality is satisfied as long as there is a single common question existing among the individual class members even where individuals do not have the exact same risk of injury, applies in this case.  868 F.3d 354, 363–34 (5th Cir. 2017) (class certification granted for class of prison inmates exposed to excessive heat even

though due to age, health, and individual biological responses to heat-mitigation measures taken by State all suffered different risk of harms). Further, Plaintiffs argue that the 21-day timeline for incompetent detainees is based on state-law standards that are relevant in determining whether continued detention in a county jail without transfer to one of the Department's facilities violates their substantive due process rights. The court agrees.

Having reviewed the pleadings and all supporting evidence in this case, and looking beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law, the court finds that Plaintiffs have asserted common questions of fact in this case. They are as follows: whether incompetent detainees who are committed to the custody of the Department for restoration of their mental capacity so they may be tried spend extended periods of time in county jails without receiving restoration or evaluation services; and, if so, whether Young uses a policy or procedure to ensure that any resulting delay in the implementation of such services and the place and manner in the implementation of those services are the product of the judgment rendered by a qualified professional. The answers to these questions of fact implicate a common question of law: whether Young violates the substantive due-process rights of incompetent detainees to be free from conditions or restrictions of confinement that amount to punishment absent criminal conviction by keeping such individuals in county jail more than 21 days while they wait to receive restoration and evaluation services that are the product of professional judgment.

Although "a court must trace the class claims and conclude that the common questions will resolve them without the need for additional extensive individualized inquiry," "[t]he existence of some variations within the class or individualized defenses do not necessarily make class certification improper." *M.D. v. Perry*, 294 F.R.D. 7, 28 (S.D. Tex. 2013). "It is not necessary that

members of the proposed class 'share every fact in common.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)). *See also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012). "So long as the common questions linking the putative class members are dispositive of their claim and the claim arises out of a single course of conduct and on a single theory of liability, Rule 23(a)'s commonality requirement is satisfied." *Perry*, 294 F.R.D. at 28 (citing *Young v. Nationwide Mutual Ins. Co.*, 693 F.3d, 532, 535 (6th Cir. 2012); *Evon*, 688 F.3d at 1029–30; *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 834 (9th Cir. 2013)).

To satisfy the commonality requirement, the class members' claims must "depend upon a common contention" that "is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Thus, establishing commonality entails satisfying two factors: "that there exists a common policy or practice, possibly an implicit one, that is the alleged source of the harm to class members, and that there are common questions of law or fact that will be dispositive of the class members' claim." *Perry*, 294 F.R.D. at 29.

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013) (internal citations omitted). Young's policy and practice of untimely transfer of incompetent detainees to a Department facility causing a common harm to the detainee's due-process rights establish the following common questions of facts and law: (1) whether the Department has failed to accept in a timely manner—

13

within 21 days from the date the Department is notified of the court's order to the date the Department makes a bed available—the admission of the incompetent-detainee-class members to its mental-health facilities for competency restoration treatment as ordered by the criminal courts; (2) whether the Department's failure to admit individuals determined incompetent to stand trial and ordered to the Department's mental-health facilities within a reasonably timely manner—within 21 from the date the Department is notified of the court's order to the date the Department makes a bed available—violates the Fourteenth Amendment to the United States Constitution; and (3) whether incompetent-detainee class members are entitled to the declaratory and injunctive relief they seek, including an order requiring the Department to admit incompetent detainees to its mental health facilities within 21 days from the date the Department is notified of the court's order to the date the Department makes a bed available. The court therefore concludes that Plaintiffs have satisfied the commonality requirement.

*Typicality*

The typicality requirement in Federal Rule of Civil Procedure 23(a)(3) requires that the class representatives "possess the same interest and suffer the same injury" as the prospective class members. *See General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). The United States Supreme Court has recognized that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge" and that "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc.*, 564 U.S. at 349. Young argues that

14

because the class members' claims in this case are not common there is no claim possessed by the general class against which to assess typicality.  *See id.*

The parties' arguments about typicality are in large part arguments about the appropriate level of generality at which to compare Plaintiffs to members of the proposed class of incompetent detainees.  Plaintiffs argue for typicality because of characteristics they share with the proposed class members.  Plaintiffs, like the proposed class members, have been found incompetent to stand trial, have been ordered by a court to be placed in a Department facility for evaluation and restoration services, and have been denied timely transfer to a Department facility.  The court is persuaded by Plaintiffs' argument.  Plaintiffs have the same interest as the proposed class—avoiding remaining in county jail without restoration or evaluation services for more than 21 days before they are admitted to one of the Department's facilities; and Plaintiffs have suffered the same injury as the proposed class—incarceration for more than 21 after the Department was notified of the court order to transfer.  For these reasons, the court concludes that Plaintiffs have demonstrated that, in all pertinent respects, they are typical of the proposed class.

*Adequacy*

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that "the representative parties will fairly and adequately protect the interests of the class."  The rule "mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees."  *Horton v. Goose Creek ISD*, 690 F.2d 470, 484 (5th Cir. 1982).  The court must find class counsel "qualified, experienced, and generally able to conduct the proposed litigation."  *North Am. Acceptance Corp. v. Arnall, Golden & Gregory*, 593 F.2d 642, 644 (5th Cir. 1979) (quoting

*Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969)). In addition, "the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation." *Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 129–30 (5th Cir. 2005) (internal quotations omitted). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 625–26 (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (considering whether named plaintiffs have "an insufficient stake in the outcome or interests antagonistic to the unnamed members" in evaluating adequate-representation requirement)).

Young argues that Plaintiffs are not proper class representatives because most, if not all, have already been transferred to a Department facility and therefore do not have the requisite interest in the case to serve as class representatives because their individual claims have been mooted. Young further argues that Plaintiffs have provided no authority to support the proposition that Plaintiffs' designated next friends can substitute for an inadequate group of individual Plaintiffs. In response, Plaintiffs argue that regardless of whether the individual Plaintiffs' claims have been mooted, their claims are capable of repetition. *See Honig v. Doe*, 484 U.S. 305, 319–20 (1988). Plaintiffs further argue that the injunctive relief they seek will benefit the individual Plaintiffs and all present and future class members as no current or future class members have an interest in maintaining unreasonably lengthy waiting periods for transfer to a Department facility. *Cf. Sosna v. Iowa*, 419 U.S. 393, 403 n.13 (1975). The court agrees. Moreover, Plaintiffs have provided the court with affidavit evidence that the individual Plaintiffs' next friends and counsel who represented the

individual Plaintiffs in their individual criminal cases are competent, experienced, and fully capable to represent the interests in the individual Plaintiffs and all class members.

Young next argues that Plaintiffs' counsel, Disability Rights of Texas, may not be able to adequately represent Plaintiffs because Disability Rights of Texas is charged with protecting both civil and criminal commitments to the Department.  Relying on *Krim v. pcOrder.com, Inc.*,[9] Young asserts that the relief sought in this case would at least implicitly eliminate the Department's bed capacity for civil commitments, creating a potential conflict of interest.  In response, Plaintiffs note that the relief sought requires only the enforcement of a time limit for how long the class members can remain on a waitlist for placement in a Department facility.  Plaintiffs do not seek to reduce the number of civil-commitment beds.  Moreover, Young offers no evidence or authority for the proposition that class counsel can be found inadequate based on an implicit conflict of interest involving persons not involved in this case or any other pending litigation.  Young's reliance on *Kim* is misplaced.  Because the interests of Plaintiffs are aligned with the proposed class members, and Plaintiffs' counsel can adequately represent Plaintiffs and the class members, the court finds that the requirements of Rule 23(a)(4) are satisfied.

*Federal Rule of Civil Procedure 23(b)(2)*

Plaintiffs seek class-action certification under Federal Rule of Civil Procedure 23(b)(2), authorizing certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  "Rule 23(b)(2) applies only when a single injunction . . . would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360.  The

---

[9]  210 F.R.D. 581, 589 (W.D. Tex. 2002).

Fifth Circuit has interpreted Rule 23(b)(2) to create two relevant requirements when a proposed class seeks classwide injunctive relief: (1) the "class members must have been harmed in essentially the same way," *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007), and (2) "the injunctive relief sought must be specific." *Id.* (citing Fed. R. Civ. P. 65(d)).

The court finds that the requirements of Rule 23(b)(2) have been satisfied. Young seemingly holds incompetent detainees in county jails for extended periods after they have been committed to the Department's custody for restorative or evaluation services pursuant to a first come, first served policy generally applicable to all proposed class members. Therefore, the proposed class members injuries are similar.

In addition, the proposed class members' injuries can be remedied through an injunction that does not differentiate between class members. If Plaintiffs can establish that Young violates the due-process rights of the proposed class members, the court may render an injunction that will state with specificity the acts to be restrained or required without the need for specific relief tailored to each class member. Therefore, the court concludes that class certification is appropriate.

### *Conclusion*

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification filed June 17, 201 (Doc. #104) is **GRANTED IN PART AS FOLLOWS**:

This action shall proceed as a class action with one class certified under Rule 23(c) of the Federal Rules of Civil Procedure consisting of:

All persons who are now, or will be in the future, (a) charged with a crime in the State of Texas, (b) ordered by a Texas court to a Texas Department of State Health Services facility where they are to receive competency-restoration services; but (c) because the Texas Department of State

Health Services maintains insufficient forensic capacity, (d) remain detained in a Texas county jail more than 21 days from the day the Texas Department of State Health Services receives the court order to the day the Texas Department of Health Services makes a bed available in a Texas Department of Health Services mental health facility; and

**IT IS FURTHER ORDERED** that Disability Rights Texas and Winston & Strawn, L.L.C. are  appointed as class counsel for the above class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

At the time Plaintiffs' Fifth Amended Complaint for Injunctive and Declaratory Relief was filed on May 9, 2019 (Doc. #97), the named individual Plaintiffs were members of a class of incompetent detainees who remained housed for prolonged periods in Texas county jails without adequate mental-health treatment for a bed to become available in a Department facility, or who had been awaiting transfer at the time they were added to the case by amendment, and the record does not indicate whether at least one of named individual Plaintiffs is still housed in a county jail as of the date of this order.  Because the length of time in county jail cannot be ascertained at the outset, and it may be ended at any time by transfer to a mental-health facility, it is by no means certain that any of the named individual Plaintiffs would be in pretrial custody long enough for a this court to certify the class.  Thus, this case belongs to a narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class.  *See Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).  Therefore,

**IT IS FURTHER ORDERED** that Plaintiffs Joseph Ward, Marc Lawson, Kenneth Jones, Jennifer Lampkin, and Julian Torres are conditionally appointed to represent the class of persons found incompetent to stand trial.

In all other respects, Plaintiffs' motion is **DENIED**.

**IT IS FINALLY ORDERED** that a Conference after Class Certification is set in Courtroom

No. 7, Seventh Floor of the United States Courthouse, 501 West 5th Street, Austin, Texas, on **April**

**19, 2022, at 9:30 a.m.**

SIGNED this _29th_ day of March, 2022.

_____

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

20