IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH WARD, by his next friend<br> Barbara Drumheller; | § § § | |
| MARC LAWSON, by his next friend<br>KRISTA CHACONA; | § § § | |
| JENNIFER LAMPKIN, by her next<br>friend ELSIE CRAVEN; | § § § | CIVIL ACTION NO. 1:16-cv-00917-LY |
| KENNETH JONES, by his next friend<br>PATRICIA SEDITA; | § § § | |
| MARY SAPP, by her next<br>friend, LOURDES RODRIGUEZ; and | § § § | |
| JULIAN TORRES, by his next<br>friend MELISSA SHEARER | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| Cecile Young, in her official<br>capacity as Executive Commissioner of the<br>Texas Health and Human Services<br>Commission, | § § § § | |
| | § | **CLASS ACTION** |
| Defendant. | § § | |

**PLAINTIFFS' SIXTH AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and in accordance with the Court's

Orders dated March 29, 2022 (ECF No. 137) and June 10, 2022 (ECF No. 147) certifying the class

of incompetency detainees and naming class representatives, Plaintiffs Joseph Ward, Marc Lawson,

Jennifer Lampkin, Kenneth Jones, Mary Sapp, and Julian Torres, who appear individually and on

behalf of the Class, hereby file their Sixth Amended Complaint against Cecile Young, Executive

Commissioner of the Texas Health and Human Services Commission, and allege as follows:

## INTRODUCTION

1.      When an individual charged with a crime is found to be incompetent to stand trial, all criminal proceedings cease, and the sole purpose for the person's continued detention is "[*f*]*or purposes of further examination and competency restoration services with the specific objective of the defendant attaining competency to stand trial*." TEX. CODE CRIM. PROC. art. 46B.073(b). Texas law further requires that the criminal court order these specialized competency restoration services be provided in a Texas Health and Human Services Commission ("HHSC")[1] operated and contracted mental health facility[2] or in an HHSC funded jail-based or community-based competency restoration program. In practice, these services are provided primarily in HHSC mental health facilities, with jail-based and community-based programs serving defendants found incompetent to stand trial in only limited circumstances.

2.      Because HHSC lacks sufficient forensic capacity, HHSC refuses to accept custody of those ordered into its care and instead places persons found incompetent to stand trial on waiting lists until a bed at an HHSC mental health facility becomes available. It is common for these individuals, after the issuance of the orders committing them to HHSC facilities, to wait in jail for many months until HHSC accepts custody of them.

3.      Often, incompetency detainees, despite being presumed innocent, are ultimately incarcerated in jail prior to adjudication and awaiting treatment longer than if they had been found guilty of the alleged crime.

4.      This situation is not new. To manage forensic access to its mental health facilities, HHSC created its waiting lists for individuals found incompetent to stand trial and ordered to an

---

[1] As of September 1, 2017, oversight of the state hospitals and behavioral health programs, formerly the purview of the Department of State Health Services, was moved under the oversight of the Health and Human Services Commission.

[2] When Plaintiffs refer to HHSC mental health facilities, this term encompasses the entire system of all HHSC operated, funded, and contracted inpatient psychiatric beds.

HHSC mental health facility in 2006. Since 2006, the number of criminal defendants found incompetent and ordered to an HHSC mental health facility for competency restoration services has only increased.

5. As a result of the delays caused by HHSC, incompetency detainees languish in county jails absent criminal convictions until beds become available at HHSC mental health facilities. These delays harm Plaintiffs and the Class Members because Texas jails are not designed or authorized to provide competency restoration treatment for incompetency detainees, outside of the handful of jail-based competency restoration programs available in the State which serve a limited number of individuals. As a result, Plaintiffs and the Class Members are left with no meaningful competency restoration services while they wait in jail for a bed at an HHSC mental health facility. As such, Plaintiffs and the Class Members suffer needless deterioration of their mental health as they wait for many months in county jails, often in prolonged isolation, before they receive the services HHSC is responsible for providing.

6. The delays caused by HHSC violate the due process rights of incompetency detainees as guaranteed by the Fourteenth Amendment. Defendant has a duty to accept and provide state-mandated restoration services to detainees committed to its care within a reasonable period of time, which must be measured in days, not months. Defendant's failure to timely accept transfer of incompetency detainees to its facilities and to provide timely restoration services, however, forces Plaintiffs and Class Members to remain incarcerated for many months in county jails absent criminal convictions and without any of the court-ordered competency restoration services that Defendant and HHSC are statutorily required to provide. Accordingly, Plaintiffs and Class Members seek a declaration of their rights and an order enjoining Defendant from violating their rights.

## JURISDICTION AND VENUE

7.     This civil action is authorized by 42 U.S.C. § 1983 to redress the deprivation under color of law of rights guaranteed by the United States Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

9.     Plaintiff Joseph Ward was a defendant in a criminal case in the 351st Judicial District Court in Harris County, Texas. On or about February 17, 2016, Mr. Ward was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Ward to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Mr. Ward to an HHSC mental health facility; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Harris County Jail for fifty-nine (59) weeks before being admitted to North Texas State Hospital-Vernon on April 4, 2017. Mr. Ward did not and could not receive competency restoration services in jail. Because Plaintiff Ward's mental state limits his ability to protect his legal interests, a next friend is necessary to represent his interests. Plaintiff Ward's defense attorney was the Harris County Public Defender. Barbara Drumheller, Harris County Public Defender, has volunteered and agreed to serve as Plaintiff Ward's next friend.

10.     Plaintiff Marc Lawson is a defendant in a criminal case in the 390th Judicial District Court in Travis County, Texas. On or about May 11, 2016, Mr. Lawson was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Lawson to an HHSC mental health facility. Despite the criminal court's

order, HHSC did not allow Travis County to timely transfer Mr. Lawson to an HHSC mental health facility; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Travis County Jail for sixty (60) weeks before being admitted to North Texas State Hospital-Vernon on July 20, 2017. Mr. Lawson did not and could not receive competency restoration services in jail. Because Plaintiff Lawson's mental state limits his ability to protect his legal interests, a next friend is necessary to represent his interests. Plaintiff Lawson's defense attorney, Krista Chacona, has volunteered and agreed to serve as Plaintiff Lawson's next friend.

11.     Plaintiff Jennifer Lampkin was a defendant in a criminal case in the 403rd Judicial District Court in Travis County, Texas. On or about March 31, 2016, Ms. Lampkin was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Ms. Lampkin to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Travis County to timely transfer Ms. Lampkin to an HHSC mental health facility; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated in the Travis County Jail for sixty-five (65) weeks before being admitted to North Texas State Hospital-Vernon on July 6, 2017. Ms. Lampkin did not and could not receive competency restoration services in jail. Because Plaintiff Lampkin's mental state limits her ability to protect her legal interests, a next friend is necessary to represent her interests. Plaintiff Lampkin's defense attorney, Elsie Craven, has volunteered and agreed to serve as Plaintiff Lampkin's next friend.

12.     Plaintiff Kenneth Jones is a defendant in a criminal case in the 185th Judicial District Court in Harris County, Texas. On or about August 10, 2017, Mr. Jones was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Jones to an HHSC mental health facility. Despite the criminal court's

order, HHSC did not allow Harris County to timely transfer Mr. Jones to an HHSC mental health facility; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Harris County Jail for forty-nine (49) weeks before being admitted to Rusk State Hospital on July 19, 2018. Mr. Jones did not and could not receive competency restoration services while in jail.

13. After returning from Rusk State Hospital, Mr. Jones was again found incompetent to stand trial on or about April 1, 2021 and was again ordered to be committed to a mental health facility. The order also required the Sheriff to transport Mr. Jones to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Mr. Jones to an HHSC mental health facility; instead, he was placed on an HHSC waiting list. As a result, he has been incarcerated in the Harris County Jail for eighty-two (82) weeks as of the filing of this complaint, waiting to be accepted to an HHSC mental health facility. Because Plaintiff Jones's mental state limits his ability to protect his legal interests, a next friend is necessary to represent his interests. Plaintiff Jones's defense attorney, Patricia Sedita, has volunteered and agreed to serve as Plaintiff Jones's next friend.

14. Plaintiff Mary Sapp is a defendant in a criminal case in the 185th Judicial District Court in Harris County, Texas. On or about June 22, 2016, Ms. Sapp was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Ms. Sapp to an HHSC Mental Health Facility. Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Ms. Sapp to an HHSC mental health facility; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated in the Harris County Jail for eight (8) weeks before being admitted to North Texas State Hospital-Vernon on August 23, 2016. Ms. Sapp did not and could not receive competency restoration services in jail. Because Plaintiff Sapp's mental state limits her ability to protect her legal interests, a next friend is necessary to

represent her interests. Plaintiff Sapp's defense attorney, Lourdes Rodriguez, has volunteered and agreed to serve as Plaintiff Sapp's next friend.

15.     Plaintiff Julian Torres was a defendant in a criminal case in the 5th County Court at Law in Travis County, Texas. On or about April 16, 2019, Mr. Torres was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Torres to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Travis County to timely transfer Mr. Torres to an HHSC mental health facility; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Travis County Jail for four (4) weeks before being admitted to the Montgomery County Mental Health Treatment Facility, an HHSC-contracted mental health facility, on May 14, 2019. Mr. Torres did not and could not receive competency restoration treatment in jail. Because Plaintiff Torres's mental state limits his ability to protect his legal interests, a next friend is necessary to represent his interests. Plaintiff Torres's defense attorney was the Travis County Mental Health Public Defender's Office. Melissa Shearer, Director of the Travis County Mental Health Public Defender's Office, has volunteered and agreed to serve as Plaintiff Torres's next friend.

16.     Defendant Cecile Young is currently the duly appointed Executive Commissioner of the Texas Health and Human Services Commission and has been delegated the administration of that agency. As Executive Commissioner, Defendant Young is ultimately responsible for ensuring that HHSC is in full compliance with federal and state law, as well as agency rules, regulations, and policies. Defendant Young is responsible for "administering human services programs regarding mental health, including: administering and coordinating mental health services at the local and state level; operating the state's mental health facilities," and "designat[ing] the state hospitals to which persons with mental illness from each district shall be admitted." TEX. HEALTH & SAFETY CODE §

1001.072 and § 552.001. Defendant Young is sued in her official capacity and is served with this Sixth Amended Complaint through her attorneys of record, Kimberly Gdula, William Wassdorf, and Christopher Hilton of the Texas Attorney General's Office.

## CLASS ACTION ALLLEGATIONS

17. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated as members of the following plaintiff class:

Class for Incompetent Detainees with Named Plaintiffs Joseph Ward, Marc Lawson, Jennifer Lampkin, Kenneth Jones, Mary Sapp, and Julian Torres, through their next friends, being appointed as class representatives:

> All persons who are now, or will be in the future, (a) charged with a Texas crime, (b) court-ordered to an HHSC mental health facility for competency restoration services; but, (c) because of HHSC's insufficient forensic capacity, (d) remain incarcerated in a county jail more than twenty-one (21) days from the day HHSC receives the court order to the day HHSC notifies the jail the person can be admitted to an HHSC mental health facility.

18. On March 29, 2022, the Court issued an order (ECF No. 137), finding that Plaintiffs satisfied the elements of class certification, certifying the class of Incompetency Detainees as described above, and conditionally naming Joseph Ward, Marc Lawson, Jennifer Lampkin, Kenneth Jones, and Julian Torres as class representatives. On June 10, 2022, the Court issued an order (ECF No. 147) correcting its March 29, 2022 order to also conditionally name Mary Sapp as a class representative.

19. The Court found that the Class was sufficiently numerous such that joinder of all members is impracticable. At the time the Court considered class certification, there were over 615 putative members of the Class, with an unknown number of future Class Members. Consistent with these findings, as of October 2022, there were over 2500 individuals on HHSC's waiting lists who, although ordered to an HHSC mental health facility to receive competency restoration services,

remained incarcerated in jail. Most have been waiting in jail longer than twenty-one (21) days; in fact, many have been waiting for over a year. As before, there continues to be an unknown number of future Class Members.

20. The Court found the Plaintiffs' claims are typical of the claims of all Class Members. Because of Defendant's insufficient forensic capacity, the individual Plaintiffs and the Class Members have all been adjudicated, or will be adjudicated, incompetent to stand trial and are, or will, remain incarcerated in jail more than twenty-one (21) days waiting for a bed at an HHSC mental health facility to begin receiving the statutorily required competency restoration services. Plaintiffs and Class Members have similarly suffered harm or will suffer harm in the future arising from Defendant's actions and inaction.

21. The Court found that common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members. These common legal and factual questions include:

> Whether HHSC has failed to accept in a timely manner – within twenty-one (21) days from the date HHSC is notified of the court's order to the date HHSC makes a bed available – the ordered admission of Plaintiffs and other Class Members to its facilities for competency restoration treatment;

> Whether HHSC's failure to admit Plaintiffs and other Class Members in a reasonably timely manner—within twenty-one (21) days from the date HHSC is notified of the court's order to the date HHSC makes a bed available—causing them to remain incarcerated in county jails, violates the Fourteenth Amendment to the United States Constitution;

> Whether Plaintiffs and other Class Members are entitled to the declaratory and injunctive relief they seek, including an order requiring HHSC to admit incompetency detainees to its mental health facilities within twenty-one (21) days from the date HHSC is notified of the court's order to the date HHSC makes a bed available; and

> Whether Plaintiffs and other Class Members are entitled to an award of reasonable attorneys' fees and costs.

22.     Likewise, the Court found the Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. There are no conflicts of interest between the Plaintiffs and the other Class Members. The Plaintiffs will vigorously prosecute this action on behalf of the other Class Members. The Plaintiffs are represented by competent counsel with considerable skill and experience in civil rights and mental health litigation who will vigorously prosecute this case on behalf of the Plaintiffs and Class Members.

23.     The Court found HHSC has acted or failed or refused to act on grounds generally applicable to the entirety of the Plaintiffs and the Class Members.

24.     The Court found the claims asserted herein are capable of repetition yet evading review and inherently transitory. There is a continuing and substantial public interest in these matters, justifying declaratory and injunctive relief in favor of Plaintiffs and the Class Members.

25.     The Court found this suit may be maintained as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure because Plaintiffs and Class Members seek declaratory and injunctive relief and all of the necessary factors of numerosity, commonality, typicality, and adequacy are present.

26.     A class action is the best available method for adjudication of these legal issues because individual litigation of these claims would be impracticable and would be unduly burdensome to the courts. Further, this suit is maintained as a class action because common questions of law and fact predominate over questions affecting only individual class members, and individual litigation would increase the likelihood of inconsistent or contradictory judgments. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## FACTUAL ALLEGATIONS

27.     Defendant and HHSC, through their actions and inaction, cause Plaintiffs and Class Members to be incarcerated for weeks, months, or even years, before HHSC makes a bed available for their court-ordered competency restoration treatment services.

**A.      Defendant Has a Duty to Timely Admit Detainees Found Incompetent to Stand Trial to an HHSC Mental Health Facility for Competency Restoration Services.**

28.     Under state and federal law, individuals who lack the ability to understand the nature of the criminal court proceedings against them may not be tried.

29.     Article 46B of the Texas Code of Criminal Procedure sets forth the procedures that Texas courts must follow when a criminal defendant's mental competency is challenged during criminal proceedings.

30.     A person is incompetent to stand trial if he or she does not have "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding," or "a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. art. 46B.003(a).

31.     "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant *may* be incompetent to stand trial." *Id.* at art. 46B.004(a) (emphasis added). "If the court determines there is evidence to support a finding of incompetency, the court . . . *shall stay all other proceedings in the case*." *Id.* at (d) (emphasis added). An attorney is appointed, as well as an expert to conduct an examination of the defendant, and a hearing is held on the defendant's competency. *Id.* at arts. 46B.004, 46B.005, 46B.021, 46B.051. "If the defendant is found incompetent to stand trial, the court shall proceed under Subchapter D" of Article 46B. *Id.* at art. 46B.055.

32.     The defendant's detention after a finding of incompetency is for solely "[*f*]*or purposes of further examination and competency restoration services with the specific objective of the defendant attaining competency to stand trial*." *Id.* at art. 46B.073(b) (emphasis added).

33.     In keeping with this purpose, Subchapter D requires a court to order the defendant committed to a mental health facility, residential care facility, outpatient competency restoration program, or jail-based competency restoration program. *Id.* at art. 46B.071.

34.     The order committing the defendant "must place the defendant in the custody of the sheriff for transportation to the facility in which the defendant is to receive treatment" for purposes of competency restoration. *Id.* at art. 46B.075.

35.     The court's determination regarding which facility or program a defendant will go to is based largely on the alleged crime and the availability of outpatient and/or jail-based programs. For example, for a criminal defendant charged with an offense punishable as a Class B misdemeanor, the court shall either release the defendant on bail to an outpatient competency restoration program or commit the defendant to a jail-based competency restoration program. *Id.* at arts.46B.0711, 46B.073(e). However, if an outpatient program or jail-based program is not available, the court shall commit the defendant to a mental health facility. *Id.* at art. 46B.073(f). In practice, most Class B misdemeanors are still committed to HHSC mental health facilities.

36.     The court's order also contains an expiration date—for incompetency detainees committed to an HHSC mental health facility or jail-based competency restoration program, the commitment period is not to exceed sixty (60) days for misdemeanor offenses and 120 days for felonies. Incompetency detainees committed to outpatient competency restoration programs are committed not longer than sixty (60) days for class B misdemeanors and up to 120 days for all more serious offenses. These time periods do not begin to run until the date the person arrives at the mental health facility, jail-based competency restoration program, or outpatient competency restoration program. *Id.* at art. 46B.0735. This makes it essentially impossible for these defendants to make progress towards the goal of being restored to competency while they are waiting in jail.

37.     Courts release few defendants to outpatient competency restoration programs, mostly due to their limited availability in the State. As of July 2021, Texas had only eighteen (18) outpatient competency restoration programs.

38.     This is also true of jail-based competency restoration programs, as they are available in only six Texas jails as of July 2021 and serve a limited number of incompetency detainees. Even where jail-based programs are available, defendants charged with a "violent offense" as listed in Article 17.032(a) or whose indictment alleges an affirmative finding under Article 42A.054(c) or (d) (regarding use or display of a deadly weapon) are automatically ineligible for competency restoration services in a jail-based competency restoration program. *Id*. at art. 46B.071(c), (e).

39.     As a result of the limited availability of outpatient competency restoration programs and jail-based competency restoration programs, most defendants found incompetent to stand trial are committed to HHSC mental health facilities.[3]

40.     Once the defendant arrives at the mental health facility, the facility staff must: develop an individual program of treatment, assess and evaluate whether the defendant is likely to be restored to competency in the foreseeable future, and report to the court and local mental health or intellectual and developmental disability authority on the defendant's progress toward achieving competency. *Id*. at art. 46B.077(a).

41.     Not later than the 15th day before the date on which the restoration period is to expire, the head of the facility must notify the court that the restoration period is about to expire. *Id*. at art. 46B.079(a). Further, the head of the facility must also "promptly" notify the court when the defendant has attained competency to stand trial or upon a determination that the defendant is not likely to attain competency in the foreseeable future. *Id*. at art. 46B.079(b).

---

[3] A small minority of individuals whose incompetency to stand trial is due to an intellectual disability rather than mental illness will be committed to residential care facilities, also operated by Texas HHSC, for their competency restoration services.

42.     On the return of the defendant to the court, the court must determine whether the defendant has become competent to stand trial. *Id.* at art. 46B.084(a-1)(1). The court must make this determination not later than the 20th day after the court received the notice from the head of the facility required by article 46B.079. *Id.* at art. 46B.084(a). If the defendant is found competent to stand trial, criminal proceedings may be resumed; if the defendant is again found incompetent to stand trial, the court may determine whether the defendant should be subject to civil commitment. *Id.* at art. 46B.084(d) and (e).

**B.     County Jails are Unable to Provide Competency Restoration Services to Individuals Found Incompetent to Stand Trial.**

43.     County jails in Texas are inappropriate settings for the care and treatment of individuals with mental illness and/or intellectual disabilities (formerly called "mental retardation") and for restoring a defendant to competency.

44.     Adequate competency restoration treatment can occur only in a setting conducive to mental health treatment. A jail setting is neither conducive to health treatment nor competency restoration treatment. Jail crowding, the threat of violence, the culture of punishment that permeates the facilities, the relative inadequacy of programs and treatment, and the lack of officers have a very detrimental effect on the mental states of incompetency detainees and on their abilities to participate effectively in competency restoration. This detrimental effect is often manifested by either increased symptoms of their underlying psychiatric disorders or lack of improvement regarding their current symptoms.

45.     Studies and reports conclude that jail officers use more force and more excessive force against detainees with serious mental illness and engage in more human rights abuses against this population.[4]

---

[4] *See e.g.* Jamie Fellner, Human Rights Watch, *Callous and Cruel: Use of Force against Inmates with Mental Disabilities in US Jails and Prisons*, May 2015, *available at*

14

46.	In contrast, at HHSC mental health facilities, clinical staff typically handle discipline problems with treatment goals in mind and rarely call security officers.

47.	Because of crowding, violence, isolation, the frequent use of force by detention officers and relatively inadequate mental health treatment and rehabilitation programs, individuals with serious mental illness are at risk of harm while incarcerated in jail.

48.	Detainees who are found incompetent to stand trial are often the inmates experiencing the most severe symptoms of mental illness in Texas jail settings; thus they are often the inmates experiencing the most abuses and deterioration as detailed above.

49.	By refusing to timely take custody of incompetency detainees, Defendant causes such persons to be incarcerated in county jails under conditions nearly certain to exacerbate their mental health conditions. Because county jails are often unable to provide even basic mental health care, incompetency detainees frequently end up between a rock and a hard place: either they are housed in the general jail population—often with convicted offenders—or they are placed in solitary confinement, which causes their mental health to further deteriorate. This deterioration conflicts with the State's interest in prompt evaluation and treatment so that incompetency detainees may be brought to trial.

50.	Nevertheless, Defendant knowingly, intentionally, and deliberately refuses to timely accept incompetency detainees court-ordered into one of its HHSC mental health facilities in violation of the requirements of Chapter 46B of the Texas Code of Criminal Procedure and the U.S. Constitution.

---

https://www.hrw.org/report/2015/05/12/callous-and-cruel/use-force-against-inmates-mental-disabilities-us-jails-and#8653.

**C.** **Defendant Has Failed to Timely Admit Incompetency Detainees Who Have Been Ordered to an HHSC Mental Health Facility.**

51.     Texas is one of only thirteen states that provides inpatient psychiatric care at a level less than the estimated need and is among the stingiest states in per capita mental health spending.[5]

52.     In February 2006, due to its insufficient forensic capacity, HHSC implemented waiting lists to track detainees (both incompetency detainees and insanity acquittees)[6] who remain in jail while waiting for beds in an HHSC mental health facility. HHSC created two waiting lists to manage its lack of forensic capacity: the Maximum Security Unit ("MSU") Admission List and the Forensic Clearinghouse List.

53.     HHSC requires all incompetency detainees committed to an HHSC mental health facility to be placed on one of the waiting lists. HHSC uses these waiting lists to manage admissions to their HHSC mental health facilities. Admissions to an HHSC mental health facility are made almost exclusively on a first-come, first-served basis, contingent upon the capacity of an appropriate HHSC mental health facility. HHSC generally places individuals charged with misdemeanor and non-violent offenses on the Forensic Clearinghouse List and places individuals charged with violent offenses on the MSU Admission List, though HHSC has discretion to determine which of the two lists it places an incompetency detainee on.

54.     In June 2014, the number of incompetency detainees waiting to be transferred to an HHSC mental health facility was about 170; by February 2016, the number had risen to more than

---

[5] C.G. Hudson, *Benchmarks for Needed Psychiatric Beds for the United States: A Test of a Predictive Analytics Model*. 18 INT J ENVIRON RES PUBLIC HEALTH 12205 (Nov. 2021) *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8625568/; Substance Abuse and Mental Health Services Administration, *Funding and Characteristics of Single State Agencies for Substance Abuse Services and State Mental Health Agencies, 2015*, HHS Pub. No. (SMA) SMA-17-5029 (2017) *available at* https://store.samhsa.gov/sites/default/files/d7/priv/sma17-5029.pdf.
[6] While HHSC places insanity acquittees on its lists, because the certified Class represents only those defendants found incompetent to stand trial, discussion of the waiting lists is limited to incompetency detainees.

380; as of the filing of this Sixth Amended Complaint, that number has increased six-fold, to over 2500.

55.     In September 2017, 283 individuals were waiting in county jails for a maximum-security bed; as of the filing of this complaint, that number has increased to approximately 995 individuals, many if not most of whom had been waiting in a county jail longer than twenty-one (21) days.

56.     As for the waitlist for a non-maximum-security bed, the waitlist has increased sixteen times over, from ninety-six (96) individuals in September 2017 to 1,547 as of October 2022. While only four (4) individuals had been waiting longer than twenty-one (21) days for a non-maximum-security bed in September 2017, many if not most of the 1,547 individuals currently waiting have waited longer than twenty-one (21) days.

57.     In April 2016, the longest wait time for a non-maximum-security bed was 122 days or approximately four (4) months. As of September 2022, the average wait time had doubled to 241 days, or approximately eight (8) months, with some waiting longer. For maximum security beds, the average wait time in April 2016 was 275 day, approximately nine (9) months; as of September 2022, the average wait time for a maximum-security bed had more than doubled to 699 days, or approximately twenty-three (23) months.

58.     Defendant's delay in admitting those found incompetent to stand trial infringes on their rights to be free from incarceration absent a criminal conviction as well as their abilities to receive their court-ordered competency-restoration treatment, which necessarily extends the time within which an individual can be tried once restored to competency.

59.     Because criminal defendants found incompetent to stand trial have not been convicted of any crime, they have a liberty interest in freedom from incarceration. Because the detention of

incompetency detainees is solely for the purpose of restorative treatment, Defendant's lack of funds, staff, or facilities are not legitimate excuses that justify Defendant's failures.

60.     As a direct and proximate result of the foregoing, the Plaintiffs and Class Members will continue to be deprived of their liberty without due process of law, in violation of their constitutional rights.

**D.     Defendant Has Failed to Provide Competency Restoration Services to the Class Plaintiffs in a Timely Manner.**

### 1.     *Plaintiff Joseph Ward*

61.     Plaintiff Joseph Ward was a defendant in a criminal case in the 351st Judicial District Court in Harris County, Texas. On or about February 17, 2016, Mr. Ward was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Ward to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Mr. Ward to an HHSC mental health facility; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Harris County Jail for fifty-nine (59) weeks before being admitted to North Texas State Hospital-Vernon on April 4, 2017.  Mr. Ward did not and could not receive competency restoration treatment in jail.

62.     Mr. Ward has been diagnosed with schizoaffective disorder, epilepsy, asthma, and hypertension. Harris County Jail staff noted that Mr. Ward has a history of neurocognitive impairment. In February 2016, during a mental health assessment, staff noted Mr. Ward's confusion and inability to remember information such as street names, locations, and names of doctors.  Staff noted that "competency restoration may be unlikely or slow based on current clinical presentation of the assessment."

63.     Mr. Ward has a long psychiatric history and previous incarcerations where he has been found incompetent to stand trial. During his most recent incarceration, Mr. Ward requested and voluntarily took his psychotropic medications; however, he continued to report command auditory hallucinations throughout his incarceration.

## 2. *Plaintiff Marc Lawson*

64.     Plaintiff Marc Lawson is a defendant in a criminal case in the 390th Judicial District Court in Travis County, Texas. On or about May 11, 2016, Mr. Lawson was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Lawson to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Travis County to timely transfer Mr. Lawson to an HHSC mental health facility; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Travis County Jail for sixty (60) weeks before being admitted to North Texas State Hospital-Vernon on July 20, 2017. Mr. Lawson did not and could not receive competency restoration treatment in jail.

65.     Mr. Lawson was twenty-two (22) years old at the time of his detention, had never previously been incarcerated, and had been in the Texas Child Protective Services system since age five. Mr. Lawson is diagnosed with an intellectual disability, pervasive developmental disorders, attention deficit hyperactivity disorder, bipolar disorder, conduct disorder, antisocial personality disorder, epilepsy/seizure disorder, and Hepatitis C. Mr. Lawson has a history of treatment at psychiatric hospitals and receiving psychotropic medication from a young age.

66.     During Mr. Lawson's incarceration, jail personnel reported that he had obvious cognitive deficits and poor social skills. He was categorized as vulnerable, and jail personnel documented concerns over his being housed in a cell with other inmates due to his vulnerability. Upon his admission, Mr. Lawson was initially placed in full suicide precaution and/or psychiatric

lockdown housing for about one (1) week. While in psychiatric lockdown and full suicide precaution housing, Mr. Lawson was permitted outside of his cell for only one (1) hour a day, and it was not guaranteed that he would receive any time outdoors. He was then transferred to and housed in a single cell for over two (2) months. Mr. Lawson was prescribed two (2) medications for his medical conditions and one (1) antipsychotic. The Travis County Jail classified his mental health and medical needs as "severe."

### 3. *Plaintiff Jennifer Lampkin*

67.     Plaintiff Jennifer Lampkin was a defendant in a criminal case in the 403rd Judicial District Court in Travis County, Texas. On or about March 31, 2016, Ms. Lampkin was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Ms. Lampkin to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Travis County to timely transfer Ms. Lampkin to an HHSC mental health facility; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated in the Travis County Jail for sixty-five (65) weeks before being admitted to North Texas State Hospital-Vernon on July 6, 2017. Ms. Lampkin did not and could not receive competency restoration treatment in jail.

68.     Ms. Lampkin is diagnosed with an intellectual disability and bipolar disorder. She also has a history of psychosis, resulting in numerous emergency psychiatric hospitalizations. She has a long history of mental illness and has a history of being treated by Integral Care, the local mental health authority for Travis County.

69.     While incarcerated, Ms. Lampkin exhibited symptoms of and behaviors related to her mental health condition. Records by the jail counselor indicated that Ms. Lampkin has obvious cognitive deficits and is low functioning. Ms. Lampkin was housed exclusively in psychiatric housing

and, in July 2016, the jail counselor reported that she is "struggling due to isolation." Moreover, the jail conditions affected Ms. Lampkin's physical condition. Over the duration of her incarceration, Ms. Lampkin lost over thirty pounds.

### 4. *Plaintiff Kenneth Jones*

70.     Plaintiff Kenneth Jones is a defendant in a criminal case in the 185th Judicial District Court in Harris County, Texas. On or about August 10, 2017, Mr. Jones was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Jones to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Mr. Jones to an HHSC mental health facility; instead, he was placed on an HHSC waiting list. As a result, he was incarcerated in the Harris County Jail for forty-nine (49) weeks before being admitted to Rusk State Hospital on July 19, 2018. Following his return from Rusk State Hospital, Mr. Jones was again found incompetent to stand trial on or around April 1, 2021. Though committed to a mental health facility and ordered into the custody of the Sheriff for transport to an HHSC mental health facility, Mr. Jones remains in jail. Mr. Jones did not and could not receive competency restoration treatment in jail.

71.     Mr. Jones has a long psychiatric history and has been diagnosed with bipolar disorder and post-traumatic stress disorder. During his first incarceration, Mr. Jones requested and voluntarily took his psychotropic medications; however, in May of 2017, he reported that his medication was not working and that he had become suicidal. Mr. Jones's medications were adjusted, but he continued to report visual hallucinations and delusions during his incarceration. Mr. Jones also had several altercations with other inmates resulting in at least three disciplinary charges.

### 5.  *Plaintiff Mary Sapp*

72.     Plaintiff Mary Sapp was a defendant in a criminal case in the 185th Judicial District Court in Harris County, Texas. On or about June 22, 2016, Ms. Sapp was found incompetent to stand trial and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Ms. Sapp to an HHSC mental health facility.  Despite the criminal court's order, HHSC did not allow Harris County to timely transfer Ms. Sapp to an HHSC mental health facility; instead, she was placed on an HHSC waiting list. As a result, she was incarcerated for eight (8) weeks before being admitted to North Texas State Hospital-Vernon on August 23, 2016.  Ms. Sapp did not and could not receive competency restoration treatment in jail.

73.     When she was incarcerated and waiting for a bed after being found incompetent to stand trial, Ms. Sapp was sixty-six (66) years old and was diagnosed with schizoaffective disorder, COPD, diabetes, stage three chronic kidney disease, asthma, hypertension, osteoarthritis, and spinal degeneration. Prior to being incarcerated, Ms. Sapp was receiving outpatient psychiatric services. Ms. Sapp had a number of falls while incarcerated at Harris County Jail waiting for a bed at an HHSC mental health facility.

### 6.  *Plaintiff Julian Torres*

74.     Plaintiff Julian Torres was a defendant in a criminal case in the 5th County Court at Law of Travis County, Texas. Within five (5) days of his arrest, Mr. Torres was found incompetent to stand trial and, on or about April 16, 2019, and was ordered to be committed to a mental health facility for further examination and treatment toward the specific objective of attaining competency to stand trial. The order also required the Sheriff to transport Mr. Ward to an HHSC mental health facility. Despite the criminal court's order, HHSC did not allow Travis County to transfer Mr. Torres to one of its mental health facilities; instead, he was placed on an HHSC waiting list.  As

a result, he was incarcerated in the Travis County Correctional Complex for four (4) weeks before being admitted to the Montgomery County Mental Health Treatment Facility, an HHSC-contracted mental health facility, on May 14, 2019. Mr. Torres did not and could not receive competency restoration treatment in jail.

75.     Mr. Torres is diagnosed with schizophrenia. His mental health condition was so deteriorated that he spent the first week of his incarceration on the acute psychiatric unit at the Travis County Jail. He was then transferred to a single-cell mental health pod where he spent twenty-two (22) hours a day isolated in his cell. This is at least the third time Mr. Torres has been found incompetent to stand trial, having spent several months at Austin State Hospital in 2017 and Montgomery County Mental Health Treatment Facility in 2018 on competency restoration commitments.

## CAUSE OF ACTION:
### Fourteenth Amendment to the U.S. Constitution

**Defendant Has Violated, and Continues to Violate Incompetency Detainees' Rights Under the Fourteenth Amendment to the U.S. Constitution.**

76.     The allegations contained in paragraphs 1 through 75 above are incorporated herein.

77.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

78.     Criminal defendants who have not been convicted and have been adjudicated incompetent to stand trial have liberty interests in freedom from incarceration, in receiving restorative treatment, in the right not to be punished, and in safe conditions of confinement.

79.     To ensure Plaintiffs and Class Members are not punished prior to an adjudication of guilt, due process requires that the nature and duration of confinement bear a reasonable relation to the purpose for which they are confined.

80. On a suggestion that an individual is found unable to aid and assist in their own defense, all criminal proceedings must stop. The only stated lawful purpose for their continued confinement after an incompetency determination is commitment for restorative treatment so as to return them to competency

81. With limited exceptions where there are jail-based competency restoration programs, county jails do not provide Plaintiffs or Class Members with the restorative treatment required by state law. Instead, facilities funded by Defendant provide restorative treatment to the vast majority of Class Members. No legitimate state interest justifies the continued incarceration of Plaintiffs and Class Members in county jails for months on end after they are found incompetent to stand trial, especially when there are state-mandated, less harsh alternatives.

82. Defendant's insufficient forensic capacity therefore punishes the Plaintiffs and Class Members by forcing them to languish in county jails for months without state-mandated restorative treatment before making a bed available at one of its facilities where they can receive such treatment.

83. The nature and duration of Plaintiffs' and Class Members' incarcerations bear no reasonable relation to the restorative purpose for which the courts have committed these individuals, violating their Fourteenth Amendment due process rights.

84. The Plaintiffs and Class Members are entitled to an order of the Court declaring that, by requiring persons found incompetent to stand trial to remain in county jails for protracted periods and by failing to provide restorative treatment in a reasonably timely manner, Defendant has violated the Fourteenth Amendment due process rights of the Plaintiffs and Class Members.

85. Unless enjoined by the Court, Defendant will continue to violate the constitutional rights of the Plaintiffs and Class Members. The Plaintiffs and Class Members are therefore entitled to an order of the Court enjoining Defendant from further violations of the Plaintiffs' and Class

Members' rights to due process in relation to their continued incarceration in jail while awaiting beds at HHSC mental health facilities where they can receive the state-mandated restorative treatment.

## ATTORNEYS' FEES

86.    Plaintiffs are entitled to recover their attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs respectfully request this Court to:

A.    Enter an Order declaring that, by requiring Plaintiffs and other Class Members to remain incarcerated in county jails for protracted periods and not timely making a bed available to them for purposes of state-mandated restorative treatment services—within twenty-one (21) days of receiving the court order committing them to an HHSC mental health facility, Defendant is depriving them of their due process rights under the Fourteenth Amendment to the United States Constitution;

B.    Issue preliminary and permanent injunctive relief restraining Defendant from failing to make a bed available to detainees found incompetent to stand trial for purposes of the state-mandated restoration services within a reasonable time period—within twenty-one (21) days from the date HHSC is notified of the court's order to the date HHSC makes a bed available—or enter other injunctive relief sufficient to prevent Defendant from violating the Fourteenth Amendment to the United States Constitution in relation to the confinement of individuals awaiting competency restoration treatment;

C.    Award Plaintiffs their reasonable attorneys' fees and costs; and

D.    Grant all relief in law or equity that the Court may deem just and proper.

Respectfully submitted,

_____

BETH MITCHELL
State Bar No. 00784613
bmitchell@drtx.org

PETER HOFER
State Bar No. 09777275
phofer@drtx.org

LISA SNEAD
State Bar No. 24062204
lsnead@drtx.org

DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)

COTY MEIBEYER
State Bar No. 24085469
DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691 (Phone)
(713) 974-7695 (Fax)
cmeibeyer@drtx.org

JOHN MICHAEL GADDIS
State Bar No. 24069747
WINSTON & STRAWN LLP
2121 N. Pearl St., Suite 900
Dallas, Texas 75201
(214) 453-6500 (Phone)
(214) 453-6400 (Fax)
mgaddis@winston.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2022, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF filing system, thus providing notice of electronic filing to the following:

Kimberly Gdula
William D. Wassdorf
Christopher Hilton
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

BETH MITCHELL