IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PLAINTIFF JOSEPH WARD, by his next Friend, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHANIE MUTH, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission,<br><br>Defendant | § § § § § § § § § § § § § § | CIVIL ACTION NO. 1:16-cv-00917-DAE |

**DEFENDANT'S OPPOSED MOTION TO STAY PENDING APPEAL**

Defendant hereby moves to stay the final judgment in this case pending resolution of her appeal to the United States Court of Appeals for the Fifth Circuit, and in support thereof shows the Court as follows.

## I. INTRODUCTION

Texas has spent the last decade pulling its forensic mental-health system out of a crisis, not sliding into one. The Legislature has invested billions of dollars to add hundreds of state-hospital beds, and Defendant is funding and contracting for hundreds more. That work takes years because it must: a single state hospital takes roughly four years and nearly half a billion dollars to build, funded one biennium at a time, and staffed from a national shortage of nurses and psychiatrists.

The Court's final judgment requires Defendant to rebuild that system on a court-set schedule, and it does so by fixing a single number for an entire class: every incompetency detainee must be admitted within 21 days of a commitment order. No court of appeals has held that the Due Process

Clause compels a specific class-wide admission deadline. Whether a district court may do that, however detailed its record, is a serious and unsettled question that the Fifth Circuit should decide before the judgment in this case reshapes a state institution.

Whether the final judgment is legally and factually supportable should be decided first because compliance cannot be undone. The judgment's compliance clock is already running: within weeks, Defendant must sit down with Plaintiffs to negotiate a court-supervised timetable for rebuilding its hospital system, and to hold to any deadline, Defendant must begin committing unrecoverable funds while its appeal is pending. As discussed herein, Defendant satisfies the requirements for a stay pending appeal.

Defendant respectfully requests a ruling on this Motion on or before August 24, 2026.

## II. BACKGROUND

On July 7, 2026, this Court entered a final judgment finding Defendant liable for substantive due-process violations as to Plaintiffs and ordering Defendant to "admit each incompetency detainee detained in a Texas jail and committed to one of its mental health facilities for competency restoration services within 21 days of HHSC's receiving a state court order committing that person to receive competency restoration services from HHSC…" ECF 266 at p. 116. Defendant filed a timely notice of appeal on July 24, 2026. ECF 267.

Defendant has raised substantial arguments on the merits of the Court's judgment. As such, a stay pending appeal is warranted to allow the Fifth Circuit to evaluate the merits of the Court's judgment.

## III. STANDARD

Prior to seeking relief from the Fifth Circuit, "[a] party must ordinarily move first in the district court" for "a stay of the judgment or order" pending appeal. Fed. R. App. P. 8(a)(1). The

Supreme Court has detailed a four-factor test that "governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Transocean Deepwater Drilling, Inc.*, 537 F.App'x 358, 360 (5th Cir. 2013) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). In cases involving state actors, the second and fourth factors are combined, as harm to the state is harm to the public. *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curium). The first two factors are "the most critical." *Nken*, 556 U.S. at 434.

Application of these factors is not rigid and mechanical; "the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981)).

## IV. ARGUMENT

### A. Defendant presents a substantial case involving serious legal questions, satisfying the first factor.

Defendant presents serious, unsettled questions about the constitutional limits on the remedy the judgment imposes and about Plaintiffs' entitlement to class-wide relief. Under *Ruiz* and *Baylor*, that showing, coupled with the heavy equities set out below, satisfies the first factor. *See Baylor*, 711 F.2d at 39.

1. There is a substantial question as to whether the Court correctly determined that Defendant failed to satisfy a rational basis review.

The Due Process Clause of the Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. "To establish a substantive due process violation, a plaintiff must first both carefully describe that right and establish it as "deeply rooted in this Nation's history and tradition." *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir. 2006) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). Second, the Supreme Court has "required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Washington*, 521 U.S. at 721. "If the right is so deeply rooted—if it is fundamental—we subject it to more exacting standards of review. If it is not, we review only for a rational basis." *Malagon*, 462 F.3d at 505. (citing *Brennan v. Stewart*, 834 F.2d 1248, 1255–57 (5th Cir.1988)).

Pre-trial confinement does not necessarily threaten an individual's fundamental right to liberty. *United States v. Salerno*, 481 U.S. 739, 750–51 (1987). There is also no 14th Amendment constitutional right to the provision of mental health services—in fact, there is no entitlement to government services, at all. *DeShaney v. Winnebago Cnty. Dep't of Social Work*, 489 U.S. 189, 195 (1989); *Griffith v. Johnston*, 899 F.2d 1427, 1438 (5th Cir. 1990).

"The government [] has legitimate interests that stem from its need to manage the facility in which the individual is detained. These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up at trial." *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). "So long as the policies which caused [Plaintiffs'] continued detention are not 'imposed for the purpose of punishment' but instead reasonably relate to a legitimate government objective, the policies are constitutional and [Plaintiffs']

claims fail." *Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, 732 Fed. Appx. 624, 632 (10th Cir. 2018) (quoting *Bell*, 441 U.S. at 538) (internal citations omitted).

The judgment's finding that continued detention is "not rationally related to any legitimate government interest," ECF 266 at 86, appears to conflate what is regrettable or not ideal with constitutionally irrational. This is a substantial question that must be addressed on appeal.

2. There is a substantial question as to whether the Court incorrectly applied the *Jackson* standard and abused its discretion in doing so.

While Defendant does not concede that the *Jackson* standard applies to this case, there is a substantial question as to whether the Court erred in holding that it was not met. Under *Jackson*, the duration of a competency commitment must "bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). That is a standard of individualized reasonableness. The serious question the appeal presents is not whether that standard governs, but whether a court may satisfy it by decreeing one fixed number of days for an entire class, enforceable by contempt.

A federal court that imposes a structural remedy on a State must respect federalism and confine the remedy to what the violation requires, no more. *See Rizzo v. Goode*, 423 U.S. 362, 379–80 (1976); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (the remedy "must . . . be limited to the inadequacy that produced the injury in fact that the plaintiff has established"). Here, judgment's 21-day deadline fails to meet that requirement. The Court identified the purpose of the pre-admission period as arranging a detainee's transfer, ECF 266 at 113 (citing *United States v. Donnelly*, 41 F.4th 1102, 1106 (9th Cir. 2022)); found that "the logistics of transfer and admission can be accomplished within an average of 14 days or less," *id.* at 80, 88; observed that HHSC had once admitted detainees within a comparable 21-day time, *id.* at 88; and stated that it derived the deadline by "balancing the interests

of the class members and the state," *id.* at 81. From those findings, together with the deadlines other states have adopted, the Court derived a single class-wide number.

But a balance struck once, for the class as a whole, still yields a fixed ceiling that admits no individualized variance, and that is the tension with *Jackson*. The Court's own calculation is an *average*, ECF 266 at 88, which necessarily means some detainees' transfers take longer; yet the 21-day mandate, enforceable by contempt, allows for none of that case-specific variation. Whether the reasonable-relation standard permits a court to displace that individualized inquiry with a uniform, contempt-enforced ceiling, however carefully calibrated to the average case, is the serious question. That the timeline is administratively feasible in the average case, or that other states have chosen similar numbers, does not make it the constitutional floor.

To be clear, Plaintiffs' proposed 21-day deadline is not one that has been recognized by any court as constitutionally mandated, as courts have consistently refused to create a hard deadline for when a delay in hospitalization violates due process, even under the more rigorous *Jackson* standard. *See, e.g., United States v. Calderon-Chavez*, 688 F.Supp.3d 472, 483 (W.D. Tex.—El Paso 2023) (holding that a nine-month delay in hospitalizing an individual being held under the federal Insanity Defense Reform Act (IDRA) violates due process rights while also acknowledging that a two-and-a-half month delay may not); *United States v. Lara*, 671 F.Supp.3d 1257, 1264 (D. N.M. 2023) (without establishing a hard deadline, acknowledging that the delay in hospitalization should generally not extend beyond the maximum time permitted by IDRA for the hospitalization itself and holding that eight months was unreasonable); *Disability Rights N.C. v. N.C. Dep't of Health & Human Servs.*, No. 1:24CV335, 2025 WL 1665327 (M.D.N.C. June 12, 2025). Here, Plaintiffs are asking the Court to fix an arbitrary deadline that, if enforced, would overwhelm the state hospitals, decrease quality of care,

and create greater safety risks to staff, current patients, and incoming individuals. Trial Tr. 12/18/2025 128:3–19; Trial Tr. 12/22/2025 136:2-21.

The Court, apparently recognizing Defendant's continued arguments as to the propriety of a fixed, immovable deadline, found that, "[u]nlike the Supreme Court in *Jackson*, . . . this Court has before it a comprehensive and detailed record," and so was "not prescribing an arbitrary time limit" but "conducting a fact-intensive inquiry . . . to find the proper limit under these facts." ECF 266 at 81 n.41. That answer frames the serious question rather than resolving it. Whether a comprehensive record of aggregate and comparative facts can substitute for the individualized reasonable-relation inquiry *Jackson* requires is precisely the question the Fifth Circuit has not decided.

3. <u>There is a substantial question as to whether Plaintiffs have standing in this case.</u>

To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and Plaintiffs bear the burden to establish them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

As to the first element, Plaintiffs have, at best, provided anecdotal evidence that some of the class representatives decompensated in jail while waiting for admission to a state hospital bed. However, Plaintiffs have not established that this harm is shared across the class. For example, Plaintiffs' expert, Dr. Murrie, acknowledged that the ability of jails to treat individuals varies from jail to jail and individual to individual. Trial Tr. 12/18/2025 (Amended) 8:13-22. He also acknowledged that some individuals are able to restore competency through basic care, without tailored competency restoration services. Trial Tr. 12/18/2025 (Amended) 9:2-15.

Additionally, there is a serious question as to whether Plaintiffs' alleged harm can be redressed when there are multiple stakeholders whose behavior directly impacts the number of individuals requiring competency restoration services and who are not a part of this lawsuit. The size and composition of the class turn on decisions Defendant does not make: which defendants courts find incompetent and order restored, which jails can provide interim care, and which detainees clinically need restoration at all. Plaintiffs' own expert acknowledged that jails' capacity to treat detainees, and detainees' need for restoration, vary from jail to jail and person to person, Trial Tr. 12/18/2025 (Am.) 8:13–22, 9:2–15, and the record establishes that the waitlist "was not created by HHSC and cannot be solved by HHSC alone," Trial Tr. 12/22/2025 165:7–10. A decree fixing only the speed at which Defendant admits those the system sends it leaves the drivers of the class-wide injury untouched and, on this record, "may actually cause more harm" by forcing Defendant to reorder its own priorities. Trial Tr. 12/18/2025 (Am.) 128:3–19. Whether Plaintiffs carried their burden to show that class-wide relief against only Defendant redresses, rather than merely rearranges, the injury is a substantial question for appeal.

4. <u>There is a serious question as to whether the Court should have refrained from exercising jurisdiction under *Younger*.</u>

"Under the rule set out by the United States Supreme Court in *Younger v. Harris*, federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted." *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004). In *Younger*, the Court identified one of the primary sources of the policy as the "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."

*Younger v. Harris*, 401 U.S. 37, 43–44 (1971). The *Younger* abstention doctrine requires federal courts to decline to exercise jurisdiction over lawsuits when three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (internal quotations omitted) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)).

Here, there is a serious question as to whether the Court erred in determining *Younger* did not apply. As to the first factor, there are two state proceedings at issue here: Plaintiffs' underlying criminal proceedings; and the related commitment proceedings which are also judicial in nature. This litigation, which seeks to regulate Defendant's role in those proceedings, clearly interferes in that process by attempting to impose a one-size-fits-all standard to what is undeniably an inquiry that must be done on a case-by-case basis.

With regards to the second prong of *Younger* abstention, the Supreme Court "repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12–13 (1987) (citing *Trainor v. Hernandez,* 431 U.S. 434, 441 (1987); *Middlesex,* 457 U.S. at 432). "The government's interest in preventing crime by arrestees is both legitimate and compelling." *United States v. Salerno*, 481 U.S. 739, 749 (1987) (citing *De Veau v. Braisted,* 363 U.S. 144, 155, (1960)). Additionally, the government "has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences, or that confinement of such persons pending trial is a legitimate means of furthering that interest." *Bell v. Wolfish*, 441 U.S. 520, 534 (1979).

Finally, as to the third factor, "[t]he gist of *Younger*'s test for availability [of state remedies], however, lies in the fact that errors can be rectified according to state law, not that they must be rectified virtually immediately." *Daves v. Dallas Cnty., Tex.*, 64 F.4th 616, 633 (5th Cir. 2023), cert. denied, 144 S. Ct. 548 (2024). Plaintiffs have multiple options for seeking judicial review of their confinement in jail pending admission to a state mental health facility for competency restoration. Texas law contemplates that the criminal court may, in an appropriate case, release an individual found incompetent to stand trial on bail. Tex. Code Crim. Proc. Art. 46B.071–46B.072. Bail proceedings are an adequate state remedy to satisfy *Younger*. *Daves*, 64 F.4th at 629. Additionally, Plaintiffs are always entitled to seek habeas relief which is an also adequate opportunity to raise constitutional challenges in order to support *Younger* abstention. *Id.* at 629–30. Texas courts can and do review habeas petitions in the context of incompetent detainees. *See, e.g.*, *Ex parte Burton*, No. 02-23-00215-CR, 2023 WL 6889957, at *1 (Tex. App.—Fort Worth Oct. 19, 2023, no pet.); *Ex parte Valero*, No. 08-22-00172-CR, 2023 WL 1972016, at *1 (Tex. App.—El Paso Feb. 13, 2023), petition for discretionary review dismissed, No. PD-0123-23, 2023 WL 4611749 (Tex. Crim. App. July 19, 2023), cert. denied sub nom. *Valero v. Tex.*, 144 S. Ct. 385, 217 L. Ed. 2d 208 (2023).

Federal interference with state operations has increasingly been under scrutiny, *see Daves*, 64 F.4th 616, and since all three *Younger* factors are satisfied, there is a serious question on appeal as to whether the Court should have exercised jurisdiction over this case.

**B. Absent a stay, Defendant will suffer irreparable injury because the judgment compels Defendant to take irreversible steps to avoid contempt.**

The second *Nken* factor, "the most critical" alongside the first, decisively favors a stay. *Nken*, 556 U.S. at 434. The judgment does not wait to bite. It compels Defendant to act now, and what it compels cannot be undone.

1. <u>The judgment's compliance clock is running, and it forces the State to negotiate a court-supervised remedy while its appeal is pending.</u>

Within 45 days, Defendant must meet and confer with Plaintiffs toward benchmarks and a monitoring plan, and within 60 days the parties must submit a joint proposed compliance schedule. ECF 266 at 116. Those deadlines run now, from a judgment Defendant is appealing. Accordingly, absent a stay, Defendant must negotiate against its adversary the terms of a court-supervised timetable for rebuilding its hospital system, take positions that will shape the Court's ensuing order, and do so under the threat of contempt that attends any judgment, all before the Fifth Circuit can consider whether the judgment should stand. That is the very compulsion a stay exists to relieve.

2. <u>To meet any compliance schedule, Defendant must commit resources and allocate funding immediately that cannot be recovered if it prevails on appeal.</u>

The judgment's 21-day mandate cannot be met without a dramatic expansion of capacity, and the record establishes that such expansion takes years and hundreds of millions of dollars. A typical construction project for a state hospital takes about four years, with projects sometimes extending to four-and-a-half or five years. Trial Tr. 12/18/2025 207:4–7; *see* Exhibit A (Schalchlin Declaration). Contracting for private forensic beds requires funding Defendant does not yet have and partners who may not exist at state rates, and procurement alone routinely takes more than a year. Trial Tr. Vol. 3 101:1–106:17, 131:18–133:13; *see* Exhibit A (Schalchlin Declaration). Other alternatives, such as jail-based programs, come with a high cost and are not something Defendant is statutorily authorized to fund or require. *See* Tex. Code Crim. Proc. art. 104.002.

However, within 60 days, Defendant must propose a compliance schedule, ECF 266 at 116. To propose, and then hold to, a court-supervised trajectory toward the 21-day mandate, Defendant must begin now to determine and obligate what it will build and contract for, because procurement and construction lead times run in years. These commitments, once made, will result in an outlay of

funding and resources that cannot be recovered if the judgment is reversed or altered. *See* Exhibit A (Schalchlin Declaration).

Complying with a judgment later held invalid "almost always produces the irreparable harm of nonrecoverable compliance costs," because sovereign immunity bars the state from recouping them. *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021); *accord Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016). Nonrecoverable costs of this magnitude, incurred to satisfy a judgment the Fifth Circuit may reverse, are the paradigm of irreparable harm.

3. The judgment injures Defendant's sovereign interests by compelling it, or the State, to override its own appropriations and reorder a core institution.

When a federal court compels an arm of the State to redirect appropriated funds and restructure a core institution on a court-set schedule, it displaces the State's own judgments about how to allocate its resources. This concept frequently comes up when an arm of the State is enjoined from enforcing its laws: "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *accord Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). This case involves a final judgment that creates judicial displacement of Defendant's—and the State's—control over its own institutions and appropriations, which is an irreparable injury the stay factors must weigh.

### C. A stay will not substantially injure Plaintiffs.

A stay will not substantially injure Plaintiffs because it preserves rather than defeats the relief they obtained. A stay suspends the judgment's operation and its compliance deadlines alike; Defendant asks the Court to toll those deadlines for the duration of any stay, through issuance of the Fifth Circuit's mandate. So tolled, Plaintiffs loses nothing they won: the judgment's full remedy, and

its full compliance schedule, resume intact in the event the judgment returns unchanged following an appeal. In the meantime, Plaintiffs' position is the status quo, which a stay preserves rather than worsens, and which continues to improve as Defendant's capacity expands under the investments already underway. Defendant does not minimize the Court's findings about the harm of prolonged detention, and it does not suggest the appeal will be brief. But the equities turn on the harms a stay actually changes: for the class, awaiting the appeal means the same relief, preserved and deferred; for Defendant, the absence of a stay means unrecoverable commitments. That asymmetry, between deferred relief and irretrievable loss, is what the balance of equities captures, and it weighs heavily toward a stay.

## V. CONCLUSION

The judgment requires Defendant to begin imminently the irreversible work of rebuilding an institution on a court-set schedule, and to sink unrecoverable funds toward a remedy the Fifth Circuit may hold the Constitution never required. Defendant asks only to preserve the status quo while the serious questions raised by the judgment are decided.

Defendant respectfully requests that the Court stay the final judgment, including its injunctive provisions and compliance deadlines, pending resolution of the appeal; that, in the exercise of the Court's equitable authority over its own injunction, the judgment's compliance deadlines be tolled through issuance of the Fifth Circuit's mandate; and that the Court rule on this motion on or before August 24, 2026.

Respectfully submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Kimberly Gdula*
Kimberly Gdula
Texas Bar No. 24052209
Chief, General Litigation Division
William D. Wassdorf
Texas Bar No. 24103022
Associate Deputy Attorney General for Civil Litigation
Amy S. Hilton
Chief, Health Programs Enforcement Division
Texas Bar No. 24097834
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
kimberly.gdula@oag.texas.gov
will.wassdorf@oag.texas.gov
amy.hilton@oag.texas.gov

**Certificate of Conference**

I hereby certify that I have conferred with counsel for Plaintiffs via email on July 27, 2026, about the subject of this motion, and Plaintiffs' counsel is opposed to the relief requested herein.

*/s/ Kimberly Gdula*
Kimberly Gdula
Chief, General Litigation Division

**Certificate of Service**

I hereby certify that on July 27, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Kimberly Gdula*
Kimberly Gdula
Chief, General Litigation Division