IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH WARD, by his next friend, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHANIE MUTH, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:16-cv-00917-DAE |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING APPEAL**

The Court should deny Defendant's motion to stay pending appeal, Dkt. #268.

## I. SUMMARY OF THE ARGUMENT

Defendant seeks the extraordinary remedy of staying the final judgment during its appeal, including all interim steps in the Court's injunction that precede full implementation. The Court should deny Defendant's motion for two reasons.

First, Defendant fails to show a substantial case, much less a likelihood of success on appeal. *Jackson v. Indiana* supplies the reasonable-relationship standard; it does not prohibit this Court from finding a class-wide maximum reasonable wait time of 21 days based on the constraints of the system itself as supported by overwhelming trial evidence. Defendant's remaining merits arguments largely rehash arguments this Court has already considered and rejected, so they likewise do not satisfy Defendant's burden to obtain a stay.

Second, Defendant has not shown irreparable harm, much less any that outweighs the imminent, irreparable, and ongoing harm HHSC continues to perpetuate against the Plaintiff Class. Because Defendant has not carried its heavy burden, the Court should deny Defendant's motion.

## II. FACTS AND PROCEDURAL BACKGROUND

This Court certified a Plaintiff Class of persons ordered to HHSC mental health facilities for competency-restoration services who remain detained in jails more than 21 days after HHSC received their commitment orders because HHSC maintains insufficient forensic capacity. *See* Dkt. #266, pp. 2, 3, 51-52. The Court found that the only purpose of the period between HHSC's receipt of a commitment order and the incompetency detainee's admission to an HHSC facility is completing the administrative and logistical tasks necessary to transport and admit the detainee. *Id*. at pp. 77-81, 88. After a six-day bench trial, including "listen[ing] to hours of expert testimony and review[ing] thousands of pages of documentary evidence,"[1] the Court found that 21 days is the maximum time necessary for HHSC to accomplish these tasks and thus the maximum time reasonably related to that limited purpose. *Id*. at pp. 80-88.

The Court did not order Defendant to immediately comply. Rather, the Court's order provides Defendant four years for full compliance and directs the parties to meet and confer regarding interim benchmarks Defendant can meet during the four years as well as a monitoring plan and to submit that joint proposed schedule to the Court, after which the Court will enter a separate order. *Id*. at pp. 111-17. Defendant appealed, Dkt. #267, and now asks the Court to stay the judgment in its entirety while that appeal proceeds. Dkt. #268.

## III. LEGAL STANDARD

A non-prevailing party is not entitled to a stay pending appeal as a matter of right. *Nken v. Holder*, 556 U.S. 418, 427 (2009). Because a stay pending appeal is an "extraordinary remedy," the movant bears the "substantial" burden to show she is entitled to one. *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022). In evaluating a stay, a court considers: "(1) whether the stay

---

[1] Dkt. # 266, pp. 81-82, n.41.

applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426. The first two factors are "the most critical," and a mere possibility of success or irreparable injury is insufficient. *Id.* at 434–35.

## IV. ARGUMENT

Defendant has not carried her heavy burden to obtain a stay pending appeal, thus the Court should deny her motion.

### A. The fact that this case involves a serious legal issue on its own does not entitle Defendant to a stay.

While Defendant frames her argument around the wrong legal issues, this case does involve a serious legal issue: HHSC's decades' long violation of the constitutional rights of thousands of pretrial detainees confined in jails without competency restoration services for months to years waiting for admission to HHSC mental health facilities. *See* Dkt. #266, pp. 73-99. But the fact that this case involves a serious legal question does not relieve Defendant of her burden to show both a substantial case on the merits and that the balancing of equities weighs "heavily" in her favor. *Baylor Med. Ctr.*, 711 F.2d at 39. She has satisfied neither element here.

### B. Defendant has not shown a likelihood of success or a substantial case involving a serious legal question.

Defendant's merits arguments fall far short of the demanding threshold needed to support a stay.

#### *1.* **Jackson v. Indiana** ***permits the Court's class-wide maximum time limit.***

Defendant fails to present a substantial case as to its argument that *Jackson* requires a separate determination of permissible delay for every incompetency detainee and thus prohibits

the Court's 21-day class-wide outside limit. *Contra* Dkt. #268, pp. 5-7. Defendant's attack on the judgment is incorrect for two reasons.

a. *Jackson* and similar due process cases can and do authorize maximum, system-wide time limits.

As this Court already correctly concluded, *Jackson v. Indiana* requires that the nature and duration of confinement bear a reasonable relationship to the purpose for which the person is committed. 406 U.S. 715, 738 (1972); Dkt. #266, p. 67. *Jackson* did not hold that constitutional reasonableness must remain numerically undefined after trial or that a court cannot establish an outside limit based on evidence concerning the purpose of the confinement and the duration reasonably necessary to accomplish it for three reasons.

First, as the Court observed, Dkt. #266, pp. 69-73, numerous authorities support the Court's analysis and contradict Defendant's misreading of *Jackson*. For example, in *Oregon Advocacy Center v. Mink*, the district court held a bench trial and then found that Oregon's practice of warehousing incompetency detainees in jail for weeks or months after their competency restoration commitments violated due process and entered a statewide injunction requiring admission within seven days. 322 F.3d 1101, 1105, 1121-23 (9th Cir. 2003). The Ninth Circuit affirmed because the purpose of the detainees' commitments and the harms they experienced during the delay supported a reasonably short time limit and statewide relief. *Id*. at 1122. *Mink*'s selection of a seven-day period was, like this Court's order, specific to that state's system and the feasibility of admission within that time period[2]—but it was nonetheless a statewide maximum for the same type of systemic, unconstitutional post-commitment order detention at issue here, not a person-by-person

[2] While Oregon previously had a statutory seven-day limit on the time between its state agency receiving a commitment order and admission to one of its hospitals, at the time of the appeal, that limit no longer appeared in the state statute, but the Ninth Circuit nonetheless upheld seven days as the outer constitutional limit. *Mink*, 822 F.3d at 1122 n.13.

deadline. *See also Stiavetti v. Clendenin*, 65 Cal. App. 5th 691, 718-19 (2021) (affirmed a statewide requirement that restoration services begin within 28 days, concluding that individualized and county-by-county enforcement lacked the uniformity and predictability necessary to remedy a longstanding systemic violation).[3]

Second, Defendant's argument also conflicts with decisions outside the context of competency restoration that adopted specific time limits to enforce other, similar constitutional standards. For example, in *County of Riverside v. McLaughlin*, the Supreme Court gave concrete meaning to the "prompt" probable-cause determination required by *Gerstein v. Pugh* by adopting a 48-hour limit. 500 U.S. 44, 56-57 (1991) (discussing *Gerstein,* 420 U.S. 103 (1975)). The possibility that an unusual case might require more time did not prevent the Court from establishing the generally applicable deadline. *Id.* Likewise, in *Zadvydas v. Davis*, the Supreme Court identified six months as the presumptively reasonable period of post-removal-order detention and required further justification after that point. 533 U.S. 678, 701 (2001). In *Zurak v. Regan*, the Second Circuit affirmed, in-part, an injunction imposing a 60- to 90-day limit on New York to process prisoners' conditional-release applications over a dissent making essentially the same argument Defendant makes here that there can be no class-wide deadline unless the Constitution itself prescribes it. 550 F.2d 86, 88, 94–95 (2d Cir. 1977) *cert. denied Regan v. Zurak*, 433 U.S. 914 (1977); *Id*. at 96-98 (Van Graafeiland, J., concurring in part and dissenting in part);

---

[3] Other courts have imposed comparable fixed admission requirements in similar cases. *Trueblood v. Washington State Department of Social & Health Services* likewise required incompetency detainees to be admitted within seven days, absent individualized clinical good cause. 101 F. Supp. 3d 1010, 1023-24 (W.D. Wash. 2015). And in *Advocacy Center for the Elderly & Disabled v. Louisiana Department of Health & Hospitals*, the court applied *Jackson* to materially similar continued jail detention without competency-restoration services and ordered all current detainees transferred within 21 days and future detainees admitted no later than 21 days after their commitment orders. 731 F. Supp. 2d 603, 621-24, 626-27 (E.D. La. 2010).

*see also Doe v. Gallinot*, 657 F.2d 1017, 1019-25 (9th Cir. 1981) (affirming seven-day deadline for probable cause hearing after mental health emergency detention, specifically rejecting argument that due process clause required case-by-case analysis).[4]

Third, Defendant's cited authorities do not contradict these principles. *United States v. Calderon-Chavez* and *United States v. Lara* were individual criminal cases and so do not hold that *Jackson* requires every unreasonable-delay claim to be decided person-by-person. To the contrary, both applied *Jackson* and imposed concrete admission deadlines—21 days in *Calderon-Chavez* and seven days in *Lara*. 688 F. Supp. 3d 472, 478–89 (W.D. Tex. 2023); 671 F. Supp. 3d 1257, 1262–65 (D.N.M. 2023). *Disability Rights North Carolina v. North Carolina Department of Health & Human Services* likewise does not help Defendant; it denied preliminary relief on a preliminary record including that State's ongoing efforts to reduce delays and expressly did not decide that the due-process claim would fail. 2025 WL 1665327, *17–*23 (M.D.N.C. June 12, 2025), *adopted as modified,* 2026 WL 880084 (M.D.N.C. Mar. 30, 2026).

Nor do *Rizzo v. Goode* and *Lewis v. Casey* require the Constitution itself to supply every numerical limit in an injunction or prohibit class-wide relief; instead, they simply require any remedy to fit the violation proved. *See Rizzo*, 423 U.S. 362, 379–80 (1976); *Lewis*, 518 U.S. 343, 357 (1996). Unlike the Plaintiffs here, the plaintiffs in both the *Lewis* and *Rizzo* cases "fail[ed] to identify anything more than isolated instances of actual injury" rather than class-wide injuries meriting system-wide solutions. *Compare* Dkt. #266, pp. 73-99 *with Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Rizzo v. Goode*, 423 U.S. 362, 371, 377-78 (1976) ("[T]he District Court found that none of the [defendants] had deprived the [plaintiff] classes of any rights secured under the

[4] *See also Luna v. Van Zandt*, 554 F. Supp. 68, 76–77 (S.D. Tex. 1982) (relying in part on *Gallinot* and imposing a 72-hour outside limit in a Rule 23(b)(2) challenge to Texas's involuntary-commitment procedures).

Constitution" thus "present[ing] no occasion for the District Court to grant equitable relief" against those defendants). Presented with, at best, only isolated instances of constitutional violations, those district courts abused their discretion by ordering sweeping, system-wide relief. *Rizzo*, 423 U.S. at 379-80; *Lewis*, 518 U.S. at 358. In contrast here, the Court found that every member of the Plaintiff Class has suffered constitutional injuries, thus its ordered system-wide remedy fits the system-wide scope of the violation. Dkt. #266, pp. 101-02, 111-117.

Accordingly, Defendant's disagreement with the Court's application of *Jackson* to the trial record thus does not establish a substantial case on the merits.

b. Defendant's arguments attack a strawman, not the Court's actual judgment.

Defendant's *Jackson* argument leans heavily upon a misreading of the Court's order in three ways.

First, contrary to Defendant's characterization, the Court's judgment does not establish 21 days as a universal constitutional limit for every state's competency restoration system. Instead, the Court assessed the evidence about *this* competency system and found that confinement exceeding 21 days after a state criminal court has found the person incompetent, determined that inpatient restoration is appropriate, and committed the person to an HHSC mental health facility is not reasonably related to the competency restoration purpose of their commitment. Dkt. #266, pp. 113-15. This Court's judgment does not determine incompetency, whether inpatient restoration is appropriate, the assigned facility or security classification, treatment, or the permissible duration of restoration. Those decisions remain individualized. *Id*. at pp. 12, 14-16, 22-24, 97.

Second, Defendant mistakenly argues that because the time necessary to complete admission may vary among individuals, a uniform 21-day outside limit necessarily fails to account for "case-specific variation." Dkt. #268, p. 6. That argument disregards the narrow class definition.

The Court's order only addresses only incompetency detainees who remain in jail beyond 21 days after HHSC receives their commitment orders *because* HHSC maintains insufficient forensic capacity. Dkt. #266, pp. 2, 51-52. Differences in diagnoses, medical conditions, security needs, or facility assignments may affect how HHSC carries out a particular commitment order, yet the Court found that these differences did not change the purpose of the post-commitment order period, cause the constitutional limit of that period to exceed 21 days, or otherwise cause continued jail detention between 21-days to advance the purpose of the commitments. *See* Dkt. 266, pp. 24, n.23. But in the rare, exceptional case where an independent legal, medical, or physical circumstance accounts for a particular detainee's continued detention beyond 21 days, that circumstance affects whether the delay is attributable to Defendant's insufficient forensic capacity and thus whether the person falls within the class. *See, e.g.*, Dkt. #266, p. 25, n.25. These are precisely the kind of issues and cases addressed by the Court's order for the parties to confer on benchmarks and monitoring as well as the four-year phase-in for the injunction. *Id*. at pp. 111-16. Thus, at best, Defendant's speculative argument merely identifies a hypothetical person who is by definition excepted from the Court's order—not a basis to overturn the order. Further, these sorts of exceptional cases are precisely why the parties are ordered to confer on administrability concerns.

Third, Defendant also mischaracterizes the 21-day limit as a mere average converted into constitutional law. Dkt. #268, pp. 5-7. HHSC's own employees admitted that facility assignment and transfer ordinarily can be completed in approximately 14 days. Dkt. 266, pp. 80, 88, ¶¶ 65–66, 85. But this was not the lynchpin in the Court's judgment; the Court also considered HHSC's historical 19-to-21-day admission performance, the limited tasks remaining after HHSC's receipt of a commitment order, the absence of restoration services in jails outside of JBCR programs, the

significant length and harmful consequences of the existing delays, experience in other jurisdictions, and HHSC's asserted operational concerns. Dkt. #266, pp. 16, 19, 27-28, 33-39, 51, 55 n.32, 81, 88, 89. In other words, the Court appropriately relied on extensive evidence to find 21 days is the maximum duration that could constitutionally be reasonably related to the administrative and logistical functions remaining after HHSC receives the commitment order. *Id*. 81, 89, 114 Far from showing clear error, Defendant's motion identifies no evidence to the contrary.[5] Shortages in resources, self-inflicted or not,[6] do not show that warehousing Plaintiffs in jails without restoration services advances the purpose of their commitments.

As Defendant's motion fundamentally misapprehends the Court's findings to support its application of *Jackson*, it cannot show a substantial case on appeal.

***2. Defendant's rational-basis argument does not present a substantial case.***

Defendant's arguments concerning the correct constitutional standard to apply—*Jackson* versus *Bell's* rational basis—also do not present a substantial case. *Contra* Dkt. #268, pp. 4–5. The Court has already considered and rejected that argument and, in any event, independently held that HHSC's significant delay fails even rational-basis review. Dkt. #266, pp. 68-73, 86-99.

Defendant's contention that the Court treated what is merely "regrettable or not ideal" as constitutionally irrational ignores the Court's clear, unequivocal findings. The Court considered the governmental interests HHSC asserted and found that warehousing incompetency detainees in jail for months or years without restoration services does not rationally advance those interests. *Id.*

---

[5] Although the Court's legal conclusions are reviewed *de novo,* its factual findings are reviewed only for clear error. *Deloach Marine Services, L.L.C. v. Marquette Transp. Co., L.L.C.*, 974 F.3d 601, 606–07 (5th Cir. 2020) ("[W]e employ a strong presumption that the court's findings must be sustained even though this court might have weighed the evidence differently.") (internal quotation marks omitted). Defendant therefore cannot establish a likelihood of success or a substantial case on the merits merely by rearguing factual propositions the Court rejected after trial.
[6] *See, e.g.,* Dkt. #266, p. 93, n.46.

at pp. 86-99. Nor do HHSC's longstanding capacity and funding constraints establish a rational relationship between the Plaintiffs' continued detention and its purpose; the Court found that HHSC had known for years that its inpatient capacity was insufficient and could not rely on those conditions to justify the resulting constitutional violations. *Id.* at pp. 32, 41, 91–94, 95–99, 103. *DeShaney*, *Griffith*, and *Salerno* do not change this analysis. Plaintiffs do not assert a general right to government-provided mental-health services; instead, they challenge the duration of their confinements as persons already committed for competency restoration services. *Id*. at pp. 67–69, 84, 85. Defendant's arguments concerning rational basis thus do not present either a likelihood of success on the merits or a "substantial case."

***3. Defendant's standing argument remains meritless.***

This Court has already twice rejected Defendant's standing argument and should do so again. Dkt. #186, pp. 10-14; Dkt. #266, pp. 52–60. Once again, Defendant's arguments rely on mischaracterizing Plaintiffs' injuries as only the psychiatric decompensation experienced by some class members. Dkt. #268, p. 7. But, as the Court expressly held, the injury-in-fact for the purpose of standing is that class members remain in jail beyond 21 days without the competency-restoration services that are the purpose of their commitments. Dkt. #266, pp. 54-55. That injury is concrete and shared by every class member. The increased risk of psychiatric deterioration and longer incarceration is an additional harm the Court found but is not necessary for standing. *Id.* at pp. 36-39, 54-55, 76.

Defendant likewise offers no basis to disturb the Court's finding of redressability. The Court found, based on Texas law, stipulated facts, and the extensive trial record, that timely admission would redress Plaintiff's injuries. *Id.* at pp. 58-60, 108-09. Defendant's assertion that the judgment might instead "rearrange" the waitlist simply disputes the Court's factual finding. It

does not establish either a substantial case on the merits or a likelihood of success on appeal.

#### *4. The* **Younger** *abstention does not justify the requested stay.*

Defendant likewise presents no new or compelling basis for revisiting the Court's ruling that *Younger* does not require abstention. Dkt. #186, pp. 14-21. The judgment does not interfere with any state criminal proceeding or disturb any competency or commitment decision. Instead, it requires HHSC to carry out state courts' commitment orders within 21 days, allowing criminal proceedings—which cannot move forward while a defendant remains incompetent—to resume.

As the Court also previously held, bail is not generally available to persons already committed for inpatient competency restoration and depends on statutory eligibility and the availability of an appropriate outpatient program. Dkt. #186 at 19–20; TEX. CODE CRIM. PROC. arts. 46B.0711, 46B.072. *Daves* does not change this finding. There, the plaintiffs sought federal relief regulating state judges' conduct in ongoing bail proceedings; here, the judgment regulates HHSC's conduct only after the state court has entered the commitment order. *See Daves v. Dallas County*, 64 F.4th 616, 623–30 (5th Cir. 2023) (en banc).

The Court has likewise already held that state habeas cannot provide the relief ordered here because the class members seek timely admission for competency restoration, not release from custody. Dkt. #266, pp. 105-06; *see Ex parte Ingram*, 533 S.W.3d 887, 892 (Tex. Crim. App. 2017). Defendant incorrectly argues Texas courts entertain incompetency detainees' habeas petitions, but the two decisions it cites expressly hold the opposite. *Compare* Dkt. #268, p. 10, *with Ex parte Burton*, No. 02-23-00215-CR, 2023 WL 6889957, at *3 (Tex. App.—Fort Worth Oct. 19, 2023, no pet.) ("a writ of habeas corpus is not the appropriate vehicle for the relief sought"—"enforcement of the trial court's order directing the sheriff's department to transport her to the state mental health facility") *and Ex parte Valero*, No. 08-22-00172-CR, 2023 WL 1972016, at

*3–4 (Tex. App.—El Paso Feb. 13, 2023) (petition for habeas corpus is "not cognizable" where applicant tried to challenge "the continued delay in transferring him to a state hospital"). Defendant's repetition of meritless arguments does not establish a substantial case on the merits.

**C. Defendant will not suffer irreparable injury without a stay.**

While nothing more is required for the Court to deny Defendant's motion as she has not shown either a likelihood of success on the merits or even a substantial case, the Court should also deny Defendant's motion because HHSC's harms are neither immediate nor irreparable for four reasons.

First, Defendant fails to explain how meeting and conferring with Plaintiffs and advising the Court on attainable interim benchmarks constitutes irreparable harm. *Contra* Dkt. #268, p. 11. Defendant characterizes this process as compelled negotiation "under the threat of contempt," but the Court has not ordered any interim benchmark or even identified any particular remedial measure. *Id.* The Court instead directed Defendant to participate in developing benchmarks before a separate implementation order is entered. Dkt. #266, pp. 113-17. The time and effort required of HHSC's employees and counsel to identify proposed benchmarks and confer about them is not harmful, much less irreparably so. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 746 (2023) (litigation expenses do not constitute irreparable injury); *Morgan v. Fletcher*, 518 F.2d 236 (5th Cir. 1975) (same).

Second, Defendant's alleged harms are inherently speculative and thus not irreparable. *See Nken*, 556 U.S. at 434-35 (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008)) ("some possibility" of irreparable injury is insufficient to satisfy second stay factor). HHSC's only evidence in support of its motion is couched in inherently speculative terms. *See* Dkt. #268-1, Schalchlin Declaration, p. 2, ¶¶ 6, 7 (discussing what could happen "if" the

Legislature does not appropriate funds and that HHSC "may" not be able to recoup funds). As to the alleged "threat" of contempt, it is entirely speculative that the Court will hold Defendant in contempt in the future for not meeting as-yet undetermined benchmarks, particularly given the Court's order that Defendant identify benchmarks it can actually meet to aid the Court in creating the order. *See* Dkt. #266, p.116; Dkt. #268, p. 11 (discussing the "threat of contempt.").[7]

Third, HHSC has not shown that compliance during the pendency of the appeal will require Defendant to expend resources in a manner that constitutes irreparable harm. As an initial matter, the Court's order does not require HHSC to fund any specific project like authorizing a new hospital, executing a specific contract, or even obligating any particular sum for construction, much less do so in a specific, short time period in order to come into compliance with the injunction. *See* Dkt. #266, pp. 110–17. Rather, it establishes a four-year phase-in and leaves the means of compliance to HHSC. *See id.*

Nor will the costs of HHSC's chosen means of compliance during the injunction constitute irreparable harm. In its order, the Court found HHSC has at its immediate disposal numerous options other than construction to begin to redress the violation of Plaintiffs' rights, including staffing its 237 existing offline beds, discharging the hundreds of current state hospital patients who no longer require hospital care into appropriate and less expensive community placements, using its existing step-down programs, changing the percentage of beds allocated between civil and forensic patients, increasing contracted beds at private mental health facilities, and funding and encouraging expansion of OCR and JBCR programs. Dkt. # 266, pp. 47-49, ¶ 134. HHSC's

---

[7] This hypothetical future harm is also not irreparable when HHSC can seek relief from any contempt order imposing sanctions when the Court issues one, if ever. *See Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 399 (5th Cir. 1987) (contempt orders imposing sanctions are appealable).

expenditure of funds during the appeal on those contracts and projects which result in members of the Plaintiff Class receiving competency restoration services cannot constitute irreparable harm because HHSC already has an obligation to provide restoration services to incompetency detainees under state law. *See* TEX. HEALTH & SAFETY CODE §533.051(a); TEX. CODE CRIM. PROC. art. 46B.073(b), (c); *see also* Dkt. #266, p. 107; *Thomas v. Johnston*, 557 F.Supp. 879, 918-19 (W.D. Tex. 1983) (Nowlin, J.) (preliminary injunction requiring State to comply with federal law by developing plan for certain Medicaid reimbursement rates imposed "minimal" burden compared with irreparable harm faced by those plaintiffs if no injunction issued); *United States v. Texas*, 523 F.Supp.703, 730 (E.D. Tex. 1981) (Justice, C.J.) (stay not justified where state would not suffer irreparable harm absent a stay where new state law imposed many of the same requirements as Court's order). Put differently, HHSC was always going to incur expenses providing competency restoration services to the Plaintiff class members and thus is not irreparably harmed by expending these same funds during this appeal.

Likewise, HHSC will not be harmed by having to expend funds to plan future construction. At trial, Assistant Commissioner Schalchlin described HHSC's multi-stage process for constructing a state mental health facility including preplanning, planning, construction, and operation. Trial Tr. Vol 3 at 188:6-22 (Schalchlin). He also testified that the Texas Legislature historically funded HHSC only one or two of these stages per biennia—allocating money for preplanning and planning in one session, followed by construction and operations in successive sessions. *Id.*; *see also* Pl. Tr. Ex. 84 (describing phased timeline of HHSC's recent and future construction). It is thus not the case that HHSC will be required to expend the entire "hundreds of millions of dollars" necessary to fully plan, construct, and operationalize a state hospital it had not already planned to contruct during the relatively short time this appeal is pending. *See contra* Dkt.

#268, p. 11. Instead, based on HHSC's own evidence at trial, during the pendency of the appeal, HHSC may expend only the funds necessary to identify the state hospital system's future construction needs[8] or, possibly, plan construction for future specific hospitals. HHSC will not be harmed by expending funds on such planning where, as this Court found, HHSC's current construction is insufficient to meet the demand for capacity and there is thus no danger the State will find itself with plans for a surplus of inpatient capacity. *See* Dkt. #266, pp. 40-42, 47, 93, ¶¶ 114-19, 133, 97.

This case is thus unlike *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130 (5th Cir. 2021) and *Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) relied upon by Defendant in which the appealing defendants in both cases were required to expend significant funds they otherwise would never have incurred and which threatened their continued operations. *Contra* Dkt. #268, p. 12; *Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1142; *Texas v. EPA*, 829 F.3d at 433. Here, HHSC has identified no particular construction project, contract, or appropriation that the judgment requires and that HHSC would not otherwise undertake during the appeal.[9] In any event, the State's obligation to remedy an ongoing constitutional violation does not depend on whether the

---

[8] For example, during the 2013 legislative session, the Texas Legislature directed HHSC to study the state's future needs, including its needs for inpatient capacity, and funded the study that became the Cannon Report. Pl. Tr. Ex. 70, p. 6. Though the 2013 legislative session ended in May 2013, the Canon Report was not complete until November 2014, 18 months after the session ended. *Id.*; Legislative Reference Library of Texas, "Legislative sessions and years," *available at* [http://lrl.texas.gov/sessions/sessionyears.cfm](http://lrl.texas.gov/sessions/sessionyears.cfm).

[9] Notably, HHSC's own projections indicate that construction costs are anticipated to escalate 7% in the next several years. Pl. Tr. Ex. 87, p. 1. To the extent HHSC complies with the Court's order by increasing its planned construction, HHSC will likely save money by incurring the costs of necessary construction sooner rather than later. Likewise, because Plaintiffs' lengthy wait times in jails without competency restoration services can result in longer (and thus more expensive) hospital stays to restore to competence, the Court's injunction reducing Plaintiffs' wait time for admission to HHSC's mental health facilities is more likely to result in cost *savings* to HHSC than the expenditure of unnecessary costs. *See* Dkt. #266, pp. 37, 87-88, 90-91, ¶¶ 108 nn.27, 81, 82, 93.

Legislature chooses to appropriate additional funds. *See Gates v. Collier*, 501 F.2d 1291, 1320 (5th Cir. 1974). Likewise, courts have rejected claims of irreparable injury where compliance principally requires the State to carry out obligations it already bears under law.[10]

Finally and similarly, Defendant will not suffer irreparable harm to its sovereign interests if the Court denies the stay. While complying with the Court's order may require HHSC to expend more funds on providing the Plaintiff class members with competency restoration services than it might otherwise have in the next four years, the Court's order did not "displace" Defendant's sovereign "control over its own institutions and appropriations." *Contra* Dkt. #268, p. 12. The Fifth Circuit in *Wyatt v. Aderholt* rejected the argument Defendant makes here that an injunction requiring a state to expend funds to ensure it does not violate the constitutional rights of its citizens impermissibly invades the exclusive province of state legislators and other decision makers. 503 F.2d 1305, 1315 (5th Cir. 1974); *see also* Dkt. #266, pp. 91-92, ¶¶ 95, 96 (discussing *Wyatt*).

In crafting the injunction, the Court expressly refrained from displacing Defendant's control over HHSC. *See* Dkt. # 266, pp. 116-17. Though the Court acknowledged the plethora of options HHSC has at its disposal in addition to construction to ensure Plaintiffs are timely admitted to its mental health facilities, the Court's order did not dictate that HHSC use any particular means to come into compliance with its injunction. *Compare* Dkt. # 266, pp. 47-49, ¶ 134 *with id.* at pp. 116-17; *see also, e.g., Alberti v. Klevenhagen*, 790 F.2d 1220, 1228 (5th Cir. 1986) (upholding

---

[10] HHSC's fulfilling its state-imposed obligations is not an irreparable harm. *See, e.g., Thomas v. Johnston*, 557 F.Supp. 879, 918-19 (W.D. Tex. 1983) (Nowlin, J.) (preliminary injunction requiring State to comply with federal law by developing plan for certain Medicaid reimbursement rates imposed "minimal" burden compared with irreparable harm faced by those plaintiffs if no injunction issued); *United States v. Texas*, 523 F.Supp.703, 730 (E.D. Tex. 1981) (Justice, C.J.) (stay not justified where state would not suffer irreparable harm absent a stay where new state law imposed many of the same requirements as Court's order).

injunction requiring hourly observation of prisoners where district court noted recommended elements of observations but ultimately left details of implementation to the sheriff). The cases Defendant relies upon in which a State was prevented from enforcing one of its laws are thus inapposite. *Contra* Dkt. #268, p. 12; *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J. in chambers) (evaluating injury to state from injunction enjoining California Automobile Franchise Act); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (acknowledging harm to State from order finding that Maryland's DNA Collection Act was unconstitutional).

Nor does the Court's direction to Defendant to confer and submit a monitoring proposal usurp Defendant's control; instead, the Court's order contemplates identifying benchmarks for monitoring compliance that leave Defendant free to determine the means by which HHSC will meet the benchmarks and comply with the injunction. Dkt. #266, pp. 116-17.

Because HHSC will not suffer any harm, much less any irreparable harms, Defendant has not carried her heavy burden to obtain a stay and the Court should deny Defendant's motion.

**D. As this Court has already found, a stay will continue to irreparably harm Plaintiffs.**

Because Defendant has not satisfied her burden to carry either of the first two factors, nothing further is required for the Court to deny Defendant's motion. Nonetheless, while only "substantial harm" to the Plaintiff Class is necessary to deny Defendant's motion to stay, the Court's findings concerning the Plaintiff class members' ongoing, imminent, and irreparable harm more than satisfy this standard and also justify denying the stay for three reasons.

First, the Court found and spelled out in detail how HHSC's "status quo" subjects and will continue to subject Plaintiff class members to "staggering" and "irreparable harm in the form of lack of competency restoration services, delayed criminal proceedings, delayed competency

restoration, and the risk of psychiatric complications." *See* Dkt. #266, pp. 39, 103, ¶¶ 111, 123; *see also id.* at pp. 35-39, ¶¶ 100-111. The "staggering" scale of the irreparable harm each Plaintiff class member has suffered and will continue to suffer is matched only by the staggering number of Plaintiff class members at immediate risk of irreparable harm: as of the time of trial, approximately 1,700 Plaintiff class members were currently experiencing these harms and thousands more will be subjected to them in just the next few years in the absence of the Court's relief. *See id.* at pp. 31, 40, ¶¶ 85, 114 n.29.

Second, Defendant's mischaracterization of a stay as merely "preserving and deferring" Plaintiffs' relief because the four-year compliance period would resume after appeal ignores the nature and duration of the violation the judgment remedies. *Contra* Dkt. #268 at 12–13. Here, time is inherently part of each Plaintiff class member's injury. The Court held that class members are being unconstitutionally detained for months while awaiting the only services that justify their continued confinement. Dkt. #266, pp. 73-85. Tolling implementation during an appeal does not preserve the ordered relief; instead, it continues to inflict that harm on current and future class members. Indeed, Defendant admits it will do exactly that in its motion. Dkt. 268-1, p. 2, ¶ 4 (HHSC will not even consider a change in plans until 2027 absent the injunction). Because HHSC receives more than 3,000 new forensic commitments per year, staying the Court's injunction and tolling its implementation will subject thousands of future class members to irreparable harms they would not have otherwise suffered or would have suffered for less time if the Court's injunction were not tolled. *See* Dkt. #266, pp. 31, 40, ¶¶ 85, 114 n. 29; *see also, e.g.,* Def. Ex. 137, p. 17.

Third, any class member—current or future—who spends additional months incarcerated without competency-restoration services cannot recover that lost liberty after the appeal concludes. This loss of constitutional rights, even for short periods, constitutes irreparable injury. *BST*

*Holdings, L.L.C. v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021); *U.S. Navy SEALs 1–26 v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022). In similar circumstances courts have recognized the substantial injury caused by staying an injunction entered to remedy ongoing constitutional violations. See *Certain Named & Unnamed Non-Citizen Children & Their Parents v. Texas*, 448 U.S. 1327, 1333–34 (1980) (Powell, J., in chambers); *United States v. Texas*, 523 F. Supp. 703, 733 (E.D. Tex. 1981); *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234–35 (2d Cir. 1999).

Because the entire Plaintiff Class will be substantially and irreparably injured by the stay, the Court should deny Defendant's motion.

**E. The public interest favors denying the stay.**

The public interest also favors denying a stay. The public interest is never served by State action that violates constitutional rights; rather, it is served by injunctions prohibiting such action. *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024); *Texans for Free Enterprise v. Texas Ethics Com'n*., 732 F.3d 535, 539 (5th Cir. 2013). Likewise, the public interest is served by denying stays of injunctions that protect constitutional rights. *U.S. Navy SEALs 1-26*, 27 F.4th at 353. Here, a stay of the injunction would prolong the same systemic conditions the Court found unconstitutional while class members continue to suffer irreparable, ongoing injury. The public interest thus favors denying Defendant's motion to stay.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to stay the injunction pending appeal, Dkt. #268.

Dated: August 10, 2026.

Respectfully submitted,


BETH MITCHELL
State Bar No. 00784613
PETER HOFER
State Bar No. 09777275
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)
bmitchell@drtx.org
phofer@drtx.org

BRITTANY NORMAN
State Bar No. 24116835
DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691 (Phone)
(713) 974-7695 (Fax)
bnorman@drtx.org

JEFF EDWARDS
State Bar No. 24014406
MICHAEL SINGLEY
State Bar No. 00794642
LISA SNEAD
State Bar No. 24062204
DAVID JAMES
State Bar No. 24092572
EDWARDS LAW
603 W. 17th St.
Austin, Texas 78701
(512) 623-7727 (Phone)
(512) 623-7729 (Fax)
jeff@edwards-law.com
mike@edwards-law.com
lisa@edwards-law.com
david@edwards-law.com

Kristin L. McGough
WINSTON & TAYLOR LLP
2121 N. Pearl St., Suite 900
Dallas, Texas 75201
(214) 453-6500 (Phone)
(214) 453-6400 (Fax)
kristin.mcgough@winstontaylor.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF filing system, thus providing notice of electronic filing to all counsel of record.



BETH MITCHELL