**FILED**
August 20, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
DEPUTY

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH WARD, by his Next Friend, et al., | § | No. 1:16-CV-00917-DAE |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | |
| | § | |
| STEPHANIE MUTH, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission, | § | |
| | § | |
| *Defendant*. | § | |

ORDER DENYING DEFENDANT'S OPPOSED
MOTION TO STAY PENDING APPEAL

Before the Court is Defendant Stephanie Muth's ("Defendant") Opposed Motion to Stay Pending Appeal ("Motion to Stay"), filed on July 27, 2026. (Dkt. # 268.) Plaintiffs Joseph Ward, Marc Lawson, Jennifer Lampkin, Kenneth Jones, and Julian Torres ("Named Plaintiffs"), appearing individually and on behalf of all Class members (collectively, with the Class members, "Plaintiffs"), filed a Response in Opposition on August 10, 2026. (Dkt. # 271.)

The Court finds this matter suitable for disposition without a hearing. After carefully considering the parties' briefing and the relevant law, the Court **DENIES** the Motion to Stay (Dkt. # 268) for the following reasons.

## BACKGROUND

On July 7, 2026, after holding a six-day bench trial, this Court entered a final judgment finding Defendant liable for substantive due-process violations as to Plaintiffs[1] and ordering Defendant to "admit each incompetency detainee detained in a Texas jail and committed to one of its mental health facilities for competency restoration services within 21 days of HHSC's receiving a state court order committing that person to receive competency restoration services from HHSC…" (Dkt. # 266 at 116.) The Court did not order Defendant to immediately comply but instead afforded Defendant four years by which to do so. (Id.) The Court further directed the parties to meet and confer regarding interim benchmarks Defendant can meet during the four years as well as a monitoring and/or reporting plan concerning Defendant's compliance. (Id. at 116–17.) The parties were ordered to submit a joint proposed schedule to the Court within 60 days of the final judgment, after which the Court will enter a separate order. (Id.)

[1] In March 2022, the Court certified a Plaintiff Class consisting of: "All persons who are now, or will be in the future, (a) charged with a crime in the State of Texas, (b) ordered by a Texas court to [an HHSC] facility where they are to receive competency-restoration services; but (c) because [HHSC] maintains insufficient forensic capacity, (d) remain detained in a Texas county jail more than 21 days from the day [HHSC] receives the court order to the day [HHSC] makes a bed available in [an HHSC] mental health facility." (Dkt. # 137 at 18–19.)

On July 24, 2026, Defendant filed a notice of appeal. (Dkt. # 267.) Defendant now asks to stay the final judgment in its entirety while the appeal proceeds. (Dkt. # 268.)

LEGAL STANDARD

A non-prevailing party is not entitled to a stay pending appeal as a matter of right. Nken v. Holder, 556 U.S. 418, 427, 433 (2009). Rather, a stay is "'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" Id. at 433 (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672–73 (1926)). Because a stay pending appeal is an "extraordinary remedy," the movant bears the "substantial" burden to show she is entitled to one. Texas v. United States, 40 F.4th 205, 215 (5th Cir. 2022).

The Fifth Circuit "consider[s] four factors in deciding whether to grant a stay pending appeal: (1) whether the stay applicant has made a strong showing that [she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." SEC v. Barton, 79 F.4th 573, 581 (5th Cir. 2023) (quoting Nken, 556 U.S. at 434). The first two factors are "the most critical," and a mere

possibility of success or irreparable injury is insufficient. Nken, 556 U.S. at 434–35.

DISCUSSION

Defendant argues that, under the Fifth Circuit's framework, a stay pending appeal is warranted in this case. (Dkt. # 268.) The Court addresses Defendant's arguments with respect to each factor below.

I. Likelihood of Success on the Merits

"[T]he likelihood of success is the 'main bearing wall' of the test." Belknap v. Bank of Am., N.A., No. G-12-198, 2012 WL 3150271, at *3 (S.D. Tex. Aug. 1, 2012) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)). Typically, on the first factor, a "strong showing" of likelihood of success on the merits is a "prerequisite" to relief. Nken, 556 U.S. at 434; Ruiz v. Estelle, 666 F.2d 854, 856–57 (5th Cir. 1982) ("Ruiz II"); see Ruiz v. Estelle, 650 F.2d 555, 565–66 (5th Cir. 1981) ("Ruiz I"); In re First S. Sav. Ass'n, 820 F.2d 700, 709 n.10 (5th Cir. 1987). However, "when a serious legal question is involved," the stay applicant "need only present a substantial case on the merits." Ruiz I, 650 F.2d at 565–66; Ruiz II, 666 F.2d at 856–57. Notably, the Fifth Circuit has emphasized that it is only the "unusual" case that will warrant a stay in the absence of a showing of a likelihood of success. In re First, 820 F.2d at 709 n.10. And even in that "unusual case," the Fifth Circuit requires that "'the

balance of equities (i.e. consideration of the other three factors) … [be] *heavily* tilted in the [applicant's] favor[.]'" Ruiz II, 666 F.2d at 857 (quoting Ruiz I, 650 F.2d at 565–66) (emphasis added); see also United States v. Baylor Univ. Med. Ctr., 711 F.2d 38, 39 (5th Cir. 1983) (per curiam).

Defendant contends that her appeal presents a substantial case involving serious legal questions. (Dkt. # 268 at 3.) According to Defendant, this showing, coupled with the heavy equities in favor of a stay, satisfies the first factor of the Fifth Circuit's framework. (Id.) Specifically, Defendant asserts that her appeal involves four "substantial questions:" (1) whether the Court correctly determined that Defendant failed to satisfy a rational basis review; (2) whether the Court incorrectly applied the Jackson standard and abused its discretion in doing so; (3) whether Plaintiffs have standing in this case; and (4) whether the Court should have refrained from exercising jurisdiction under Younger. (Id. at 4–10.)

As an initial matter, the fact that a case involves a serious legal question does not, on its own, satisfy the first factor, even if the equities weigh heavily in favor of a stay. Rather, even in this instance, Defendant must meet her burden to show "a substantial case on the merits." Ruiz II, 666 F.2d at 856–57;

Ruiz I, 650 F.2d at 565–66; Baylor, 711 F.2d at 39. For the reasons described below, the Court finds that Defendant has not done so here.[2]

A. Rational Basis

Defendant begins by arguing that there is a substantial question as to whether the Court correctly determined that Defendant failed to satisfy a rational basis review. (Dkt. # 268 at 4–5.) According to Defendant, continued detention while awaiting admission to HHSC's mental health facilities is rationally related to the government's legitimate interest in managing its facilities. (Id.) Concluding otherwise "conflate[s] what is regrettable or not ideal with constitutionally irrational," Defendant asserts. (Id. at 5.) This argument does not present a substantial case on the merits.

First, this Court has already twice considered and twice rejected Defendant's argument that rational basis—rather than the standard set forth in Jackson v. Indiana, 406 U.S. 715 (1972)—applies in this case. (Dkts. ## 266 at 66–73; 186 at 27–34.) Defendant merely repeats her argument here once more

[2] The Court notes that, because it does not find that Defendant has met the less stringent standard of "a substantial case on the merits," it need not and does not decide whether this case does in fact constitute the type of "unusual case" where a stay is warranted even in the absence of a showing of a likelihood of success on the merits. Cf. In re First, 820 F.2d at 709 n.10 ("Since we believe that the more stringent likelihood of success on the merits standard is satisfied here, we need not decide if this is an 'unusual' case such as to warrant a stay in the absence of a likelihood of success.").

(compare Dkt. # 268 at 4–5 with Dkt. # 255 at 3–6 (Defendant's closing argument)), and the Court rejects it again for the reasons explained in its prior orders (Dkts. ## 266 at 66–73; 186 at 27–34).

Second, Defendant's contention that the Court, in holding that Defendant is violating Plaintiffs' due process rights even under rational basis review, "conflate[d] what is regrettable or not ideal with constitutionally irrational" ignores the Court's findings. Contrary to Defendant's suggestion, the Court considered Defendant's asserted governmental interests and found that keeping incompetency detainees in jail for months to years without restoration services does not rationally advance those interests.[3] (Dkt. # 266 at 86–99.) Defendant offers no compelling reason to revisit the Court's findings on this issue. The Court therefore concludes that Defendant's arguments concerning rational basis do not present either a likelihood of success on the merits or a "substantial case."

B. Jackson Standard

Next, Defendant contends that there is a substantial question as to whether the Court incorrectly applied the Jackson standard and abused its

[3] Indeed, keeping incompetency detainees in jail for months to years without restoration services also arguably violates Defendant's statutory duty to "ensure the appropriate and timely provision of mental health services" to those court-ordered to receive them. TEX. HEALTH & SAFETY CODE §§ 533.051(a); see also TEX. CODE CRIM. PROC. art. 46.04 (providing that the transport of a patient from a jail to a mental health facility must occur "within a reasonable amount of time and without undue delay").

discretion in doing so. (Dkt. # 268 at 5–7.) Namely, in Defendant's view, the Court erred by "decreeing one fixed number of days for an entire class." (Id. at 5.) Doing so is not permissible under Jackson, Defendant argues, nor is it permissible under the principles of federalism or the requirement that the remedy be tailored to fit the violation. (Id. at 5–7.)

Defendant mischaracterizes the Court's order and the relevant law. To begin with, nothing in Jackson precludes the Court from setting an outer time limit based on a full evidentiary record. As the Court recognized in its final judgment, Jackson cautions against prescribing "arbitrary time limits." 406 U.S. at 738. But, here, the Court did not prescribe an arbitrary time limit. (See Dkt. # 266 at 81 n.41.) Instead, in view of the comprehensive record before it regarding the competency system in Texas and after holding a six-day bench trial, the Court made a reasoned and fact-based determination specific to the Texas system based on evidence concerning the purpose of Plaintiffs' confinement and the duration reasonably necessary to accomplish that purpose.[4] (Id.; see generally Dkt. # 266.) Such a determination is entirely in line with Jackson, and the Court rejects Defendant's contentions to the contrary. See Jackson, 406 U.S. at 738 ("*In light of*

[4] In doing so, the Court did not merely calibrate its ruling to the "average" case, as Defendant appears to contend, but instead relied on extensive evidence to find 21 days to be the maximum duration that could be reasonably related to the administrative and logistical tasks remaining after HHSC receives the commitment order. (Dkt. # 266 at 16, 19, 27–28, 33–39, 51, 77–81, 88, 89. 99–114.)

*differing state facilities and procedures and a lack of evidence in this record*, we do not think it appropriate for us to attempt to prescribe arbitrary time limits." (emphasis added)).

Indeed, other courts, applying Jackson, have set comparable fixed admission requirements in similar cases. See Oregon Advoc. Ctr. v. Mink, 322 F.3d 1101, 1122–23 (9th Cir. 2003) (affirming district court's statewide injunction requiring admission of incapacitated criminal defendants within seven days of a judicial finding of incapacitation); Advoc. Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps., 731 F. Supp. 2d 603, 621–24, 626–27 (E.D. La. 2010) (ordering all current incompetency detainees to be transferred within 21 days of the court's order and all future detainees to be transferred no later than 21 days after their commitment orders); Trueblood v. Washington State Dep't of Soc. & Health Servs., 101 F. Supp. 3d 1010, 1021–24 (W.D. Wash. 2015) ("Trueblood I"), vacated in part on other grounds by 822 F.3d 1037 (9th Cir. 2016) ("Trueblood III") (requiring admission of incompetency detainees within seven days of the signing of a court order calling for restoration services); Stiavetti v. Clendenin, 65 Cal. App. 5th 691, 704, 718–19 (2021) (affirming a statewide requirement that restoration services begin within 28 days); see also Trueblood v. Washington State Dep't of Soc. & Health Servs., No. C14-1178-MJP, 2016 WL 4268933, at *13–14, 16 (W.D. Wash. Aug. 15, 2016) ("Trueblood IV") (requiring competency

evaluations to be completed within fourteen days of a court order); Trueblood III, 822 F.3d at 1046 (9th Cir. 2016) (affirming that a permanent injunction "remains an appropriate vehicle for monitoring and ensuring that class members' constitutional rights are protected").

And, in other contexts, courts regularly and permissibly adopt specific time limits to enforce constitutional standards. See Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 56–57 (1991) (adopting a 48-hour time limit for probable cause determinations); Zadvydas v. Davis, 533 U.S. 678, 701 (2001) (adopting a presumptively reasonable period of 6 months for post-removal order detention); Zurak v. Regan, 550 F.2d 86, 89, 94–95, 96 (2d Cir. 1977) cert. denied Regan v. Zurak, 433 U.S. 914 (1977) (affirming in part a state court injunction imposing a 60- to 90-day limit on New York to process prisoners' conditional release applications); Doe v. Gallinot, 657 F.2d 1017, 1019–25 (9th Cir. 1981) (affirming seven-day deadline for a probable cause hearing after mental health emergency detention, finding that setting a general rule, rather than relying on each person to bring their own individual challenge, would better alleviate due process concerns); Luna v. Van Zandt, 554 F. Supp. 68, 69, 76–77 (S.D. Tex. 1982) (imposing a 72-hour outside limit in a Rule 23(b)(2) challenge to Texas' involuntary commitment procedures). The Court thus acted in accordance with

these authorities and with Jackson when it set a class-wide maximum time limit in this case.

Nor does the Court's 21-day class-wide deadline violate principles of federalism or the requirement that a remedy be limited to what the violation requires and no more. In making its determination, the Court considered a multitude of factors and facts, including HHSC's asserted operational concerns, HHSC's historical admission performance, experience in other jurisdictions, the evidence about the time needed to accomplish the logistics of transfer and admission, and the harms caused to Plaintiffs by their continued detention. (Dkt. # 266 at 16, 19, 27–28, 33–39, 51, 77–81, 88, 89. 99–114.) The Court specifically analyzed the constitutional violation at issue, finding that every member of the Plaintiff class suffered constitutional injuries, and tailored the remedy to that violation. (See id. at 99–114.) The Court therefore disagrees with Defendant that its judgment did not do so. Cf. Lewis v. Casey, 518 U.S. 343, 349, 357 (1996) (finding that the district court's ordered relief was too broad where the plaintiffs "fail[ed] to identify anything more than isolated instances of actual injury," and that to be entitled to systemwide relief, they must have shown widespread actual injury).

The Court also rejects Defendant's contention that it incorrectly *applied* the Jackson standard in this case. In her motion, Defendant argues that the

Jackson standard is one of "individualized reasonableness," and so the Court erred by "decreeing" a fixed number for an entire class rather than conducting an individualized inquiry for each class member. (Dkt. # 268 at 5–6.) To make this argument, Defendant appears to rely on the language of the Jackson standard itself; in her view, the presence of the word "individual" transforms the standard into one that can only be applied on a person-by-person basis. (Id. at 5.) Defendant therefore insists that there is a "substantial question" as to whether a court can permissibly "displace that individualized inquiry with a uniform, contempt-enforced ceiling[.]" (Id. at 6.) Defendant again mischaracterizes both the Court's order and the law.

Nowhere does Jackson hold that its standard must be applied on an individualized basis. 406 U.S. at 731–38. Rather, Jackson requires "that the nature and duration of [the] commitment bear some reasonable relation to the purpose for which the individual is committed." Id. at 738. That the standard includes the word "individual" does not in and of itself mandate that the standard can only be applied person-by-person. In fact, courts applying Jackson have not required an individualized determination for each person and have instead established system- or state-wide limits based on evidence concerning groups of individuals and facts common to the group. See Mink, 322 F.3d at 1105–07, 1122–23; Advocacy Center, F. Supp. 2d at 604–07, 621–24, 626–27; Trueblood I,

101 F. Supp. 3d at 1014, 1021–24; Trueblood IV, 2016 WL 4268933, at *2, 13–14, 16; Stiavetti, 65 Cal. App. 5th at 694, 699, 704, 718–19; see also Disability L. Ctr. v. Utah, 180 F. Supp. 3d 998, 1001–02, 1005–12 (D. Utah 2016) (on a motion to dismiss, analyzing the experience of incompetent defendants in the state generally to find that the plaintiffs had stated a plausible claim for relief under the due process clause). The Court's application of Jackson in this case is entirely consistent with these authorities and with Jackson itself.

Moreover, even if Defendant's contention had merit, the Court is not at all persuaded that it incorrectly applied Jackson by setting a class-wide limit when all the facts material to the Jackson inquiry are shared across the Plaintiff class. In this case, every member of the Plaintiff class is confined for precisely the same purpose (to obtain competency restoration services so that they may be restored to proceed to trial), the nature of each class member's confinement is materially identical (all class members are confined in county jails that are not designed, equipped, or required to provide competency restoration services and are not in fact receiving those services), and each class member has been confined for the same operative duration (more than 21 days after HHSC's receipt of the commitment order). TEX. CODE CRIM. PROC. art. 46B.073(b); (Dkts. ## 186 at 3–4;

266 at 73–77; 137 at 18–19.) Under such circumstances, the Court's application of the Jackson standard was proper.[5]

As a final matter, although Defendant complains that the "uniform" ceiling set by the Court fails to account for "case-specific variation," such an argument ignores the narrow class definition in this case. The Plaintiff class is limited to those individuals who are detained more than 21 days from the day HHSC receives the commitment order *because* HHSC maintains insufficient capacity. (Dkt. # 137 at 18–19.) Consequently, for those rare or exceptional cases where an independent legal, medical, or physical circumstance accounts for a

[5] Defendant's cited cases do not call this conclusion into question. United States v. Calderon-Chavez and United States v. Lara were criminal cases in which the individual criminal defendants challenged their lengthy pre-hospitalization detention. 688 F. Supp. 3d 472, 474–76 (W.D. Tex. 2023); 671 F. Supp. 3d 1257, 1258–59 (D.N.M. 2023). Neither case, both of which applied Jackson and held that the defendant's prolonged detention violated his due process rights, suggests that Jackson requires every unreasonable delay claim to be decided on a case-by-case basis or requires courts to undertake a person-specific inquiry in every case. See 688 F. Supp. 3d at 478–89; 671 F. Supp. 3d 1257, 1262–65. And although the court in Disability Rights North Carolina v. North Carolina Department of Health & Human Services expressed concerns over imposing a time limit, that decision was issued at the preliminary injunction stage based on a preliminary record where the plaintiff had not sufficiently demonstrated that the requested deadline was the appropriate remedy. No. 1:24CV335, 2025 WL 1665327, at *17–23 (M.D.N.C. June 12, 2025), report and recommendation adopted as modified, No. 1:24-CV-335, 2026 WL 880084 (M.D.N.C. Mar. 30, 2026) ("*[A]t this stage*, granting [the plaintiff's] 14-day injunction request would mean imposing an arbitrary time limit." (cleaned up, emphasis added)). Disability Rights therefore has limited application in this case, where the Court set its 21-day class-wide outside limit based on a full record and upon a demonstration by Plaintiffs of the adequacy of their requested deadline.

particular individual's detention continuing beyond 21 days, that person will, by definition, not be included in the class. (Id.) Defendant's arguments to this effect are therefore without merit.[6] Any other concerns Defendant may have regarding specific cases can and should be addressed when the parties meet and confer regarding interim benchmarks and the four-year-phase-in for the injunction. (Dkt. # 266 at 116–17.)

Based on the foregoing, the Court concludes that Defendant has not shown a "substantial case on the merits" with respect to its arguments concerning the Court's issuance of a 21-day class-wide deadline.

C. Standing

Defendant argues that there is also a substantial question as to whether Plaintiffs have standing in this case, specifically as to whether Plaintiffs have met their burden to establish the first or third elements of Article III standing. (Dkt. # 268 at 7–8.) With respect to the first element, Defendant contends that Plaintiffs have provided only anecdotal evidence regarding some of the class representatives and have not established that this harm is shared across the class. (Id. at 7.) With

[6] The Court also notes that its decision does not alter or remove the numerous individualized determinations that exist at various stages during the competency restoration process, such as the determination of incompetency, whether inpatient restoration is appropriate, the assigned facility or security classification, treatment, or the permissible duration of restoration. (See Dkt. # 266 at 12, 14–16, 22–24, 97.)

respect to the third element, Defendant asserts that there is a serious question as to whether Plaintiffs' alleged harm can be redressed in light of the existence of multiple stakeholders not a part of this lawsuit whose behavior directly impacts the number of people requiring competency restoration services. (Id. at 8.) Neither argument has merit.

As to injury, Defendant's argument is merely a verbatim recitation of the argument presented to and rejected by the Court at trial. (Dkt. # 266 at 52–55 (finding Plaintiffs satisfied the first element of standing and rejecting Defendant's argument that Plaintiffs offered only anecdotal evidence of harm to some of the class representatives).) The Court rejects it again now for the same reasons stated in its prior order. (Id.)

As to redressability, Defendant made an identical argument to the Court at trial, albeit in the context of the second element of standing. (Dkt. # 255 at 19–23.) Specifically, Defendant insisted that because "there are multiple stakeholders whose behavior directly impacts the number of individuals requiring competency restoration services," Plaintiffs' injuries are not attributable to HHSC. (Id.) The Court rejected this argument in its final judgment, finding that:

> where, under Texas law, HHSC is solely responsible for admitting incompetency detainees to its facilities and maintaining adequate capacity to serve those incompetency detainees, the fact that other entities influence the total number of incompetency detainees in the system or that incompetency detainees remain in the custody of other entities while they wait does not at all suggest that Plaintiffs' injuries are not fairly traceable to HHSC. Rather,

> as the evidence at trial established, it is HHSC that controls the time that incompetency detainees wait in jails after HHSC receives detainees' commitment orders, not these other entities. See TEX. HEALTH & SAFETY CODE § 533.051(a), (b)(2).

(Dkt. # 266 at 57 n.24; see id. at 55–60.)

Although Defendant now makes its argument in the context of redressability rather than traceability, the Court's reasoning still applies. The injury-in-fact for the purpose of standing is that class members remain in jails for longer than 21 days without access to competency-restoration services, contrary to the sole purpose of their commitments. (Dkt. # 266 at 54.) Under Texas law, HHSC is the entity solely responsible for admitting incompetency detainees to appropriate treatment facilities. TEX. HEALTH & SAFETY CODE §§ 533.051(a)(2), (b)(4); id. at 533.052. As part of this responsibility, HHSC—and only HHSC—is explicitly charged with "determin[ing]…the minimum number of beds that the state hospital system must maintain to adequately serve" forensic and civil patients and actually providing those beds. Id. at 533.051(a), (b)(2). And, as the Court found in its order, HHSC has at its disposal numerous tools to address the waitlist and eliminate wait times. (Dkt. # 266 at 20–21, 23, 47–49.) Thus, a court order requiring HHSC, the agency with the duty and the power to admit incompetency detainees to appropriate treatment facilities, to timely admit incompetency detainees to those mental health facilities will plainly redress Plaintiffs' injuries.

Defendant asserts that the Court's injunction "leaves the drivers of the class-wide injury untouched," but such an assertion is untenable. As this Court has already explained, it is Defendant's agency, not other stakeholders, that is statutorily required to provide competency restoration services to detainees committed to its mental health facilities for this purpose. TEX. HEALTH & SAFETY CODE §§ 533.051(a)(2), (b)(4); id. at 533.052. It is also Defendant's agency, not other stakeholders, that is statutorily mandated to "ensure the appropriate and timely provision of mental health services to patients . . . ordered by a court to receive those services" and to "plan for . . . the proper and separate allocation of beds in the state hospitals for . . . patients who are . . . committed to a state hospital or other facility to attain competency to stand trial under Chapter 46B, Code of Criminal Procedure." TEX. HEALTH & SAFETY CODE § 533.051(a). It is therefore Defendant's agency, not other stakeholders, that drives the class-wide injury. Consequently, an injunction requiring Defendant to timely admit the Plaintiff class members will not "leave[] the drivers" of the injury untouched but will instead directly redress the injury.

In so concluding, the Court of course does not deny that other individuals and agencies may impact the number of people who require competency restoration services in Texas. But simply because other entities play a role in the total number of people in the competency restoration system does not

render the injury non-redressable by an order directed at Defendant's agency alone. Here, HHSC is statutorily mandated to ensure the appropriate and timely provision of mental health services to incompetency detainees, no matter how many individuals are ordered to receive those services. See TEX. HEALTH & SAFETY CODE §§ 533.051; 533.052. In other words, HHSC's statutory duties do not rise and fall based on the number of total people in the competency restoration system. Defendant's argument on this point is therefore unavailing.

Accordingly, the Court finds that Defendant has failed to establish a "substantial case on the merits" based on an argument that Plaintiffs lack standing.

D. Younger Abstention

Finally, Defendant contends that there is a substantial question as to whether the Court should have refrained from exercising jurisdiction under Younger. (Dkt. # 268 at 8–10.) Under the Younger abstention doctrine, "federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted." Tex. Ass'n of Bus. v. Earle, 388 F.3d 515, 518 (5th Cir. 2004). The Younger abstention doctrine authorizes abstention only if all three of the following conditions are met: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate

opportunity in the state proceedings to raise constitutional challenges.'" Bice v. Louisiana Pub. Def. Bd., 677 F.3d 712, 716 (5th Cir. 2012) (quoting Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

This Court has already ruled that Younger abstention does not apply, and Defendant offers no compelling basis for revisiting this ruling. (Dkt. # 186 at 14–21.) First, contrary to Defendant's suggestion, the Court's judgment does not at all interfere with or disrupt Plaintiffs' underlying criminal proceedings or the related commitment proceedings. Instead, the Court's judgment merely requires HHSC to carry out state courts' commitment orders within 21 days, which in fact will allow the underlying criminal proceedings—which cannot move forward while a defendant remains incompetent—to resume. See TEX. CODE CRIM. PROC. arts. 46B.004(d), 46B.084(d), 46B.116. Second, although Defendant's asserted interests are certainly important interests to the State, the Court does not see how any of these interests are implicated where the Court's judgment does not interfere with the State's administration of its judicial systems, where Plaintiffs are not seeking release into the community but rather timely admission to HHSC's mental health facilities, and where Plaintiffs' timely admission would only ensure that the accused are made available for trial within a shorter timeframe. Id.; (see Dkt. # 186 at 14–21.) And third, Plaintiffs have no adequate state remedy because bail is not generally available to persons already committed for inpatient competency

restoration and depends upon statutory eligibility and the availability of an appropriate outpatient program, TEX. CODE CRIM. PROC. arts. 46B.0711, 46B.071, 46B.072; (Dkts. ## 186 at 19–20; 266 at 12), and habeas relief is unavailable where Plaintiffs are not seeking release or challenging the validity of their confinements[7] (Dkts. ## 266 at 105–106; 186 at 20). As such, Defendant also fails to present a "substantial case" on this basis.

## II. Irreparable Harm

On the second factor, Defendant argues that it will suffer irreparable injury absent a stay because "the judgment compels Defendant to take irreversible steps to avoid contempt." (Dkt. # 268 at 10.) According to Defendant, the Court's judgment causes Defendant harm because it (1) "forces the State to negotiate a court-supervised remedy while its appeal is pending;" (2) requires Defendant to commit resources and allocate funding that is not recoverable if Defendant prevails

[7] Indeed, the two cases Defendant cites in support of its argument that Texas courts review habeas petitions in the context of incompetent detainees expressly hold the opposite. Ex parte Burton, No. 02-23-00215-CR, 2023 WL 6889957, at *3 (Tex. App. — Fort Worth Oct. 19, 2023, no pet.) (finding that, because the petitioner "did not actually seek release from confinement or restraint but, instead, sought enforcement of the trial court's order directing the sheriff's department to transport her to the state mental health facility . . . a writ of habeas corpus is not the appropriate vehicle for the relief sought"); Ex parte Valero, No. 08-22-00172-CR, 2023 WL 1972016, at *3–4 (Tex. App. — El Paso Feb. 13, 2023, pet. dism'd) (holding that the petition for wit of habeas corpus was "not cognizable" where the petitioner challenged "the continued delay in transferring him to a state hospital" rather than his immediate release).

on appeal; and (3) "injures Defendant's sovereign interest by compelling it, or the State, to override its own appropriations and reorder a core institution." (Id. at 10–12.) These arguments are wholly without merit.

First, it is not clear to the Court how meeting and conferring with Plaintiffs and advising the Court on interim benchmarks constitutes "irreparable injury." Such an argument strains credulity and the Court will not consider it. See Coinbase, Inc. v. Bielski, 599 U.S. 736, 746 (2023) (litigation-related burdens do not constitute irreparable injury); F.T.C. v. Standard Oil Co. of California, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

Second, although Defendant argues that the final judgment requires HHSC to immediately commit unrecoverable resources, this argument is belied by the Court's order. In issuing its final judgment, the Court did not require Defendant to *immediately* admit incompetency detainees within 21 days, nor did it mandate the specific way in which Defendant must comply with the Court's order . Instead, it established a four-year[8] phase-in period and left the specific means of compliance to HHSC. (Dkt. # 266 at 116–17.) The Court has not ordered HHSC to fund a specific project, execute a specific contract, or even obligate a specific

[8] In fact, although Plaintiffs asked for a three-year outside time limit, the Court gave Defendant four years to come into compliance. It did so in explicit consideration of the obstacles and delays Defendant faces. (Dkt. # 266 at 114–15.)

sum for construction. As the order makes clear, HHSC has a multitude of tools at its disposal other than construction of new hospitals by which to decrease the waitlist. (Id. at 47–49.) The Court's judgment explicitly allows HHSC to choose the exact manner in which it complies with the Court's order and to do so over a prolonged period of time. (Id. at 116–17.) The Court is therefore entirely unconvinced that its order somehow requires HHSC to immediately expend significant funds and resources such that a stay pending appeal is justified. (See id.); see also Nken, 556 U.S. at 434–35 (a showing of "some 'possibility of irreparable injury'" is insufficient to satisfy the second factor).

Moreover, such an argument falls flat when the Court's judgment merely requires HHSC to do what state law already mandates it do: plan for and ensure the "appropriate and timely provision of mental health services" to all forensic detainees. TEX. HEALTH & SAFETY CODE § 533.051(a), (b); TEX. CODE CRIM. PROC. art. 46B.073(b), (c); see also Thomas v. Johnston, 557 F. Supp. 879, 918–19 (W.D. Tex. 1983) (finding that a preliminary injunction that required State to comply with federal law imposed "minimal" burden compared to the serious and irreparable harm the plaintiffs would likely suffer in the absence of injunctive relief); United States v. State of Tex., 523 F. Supp. 703, 730–33 (E.D. Tex. 1981) (finding State had failed to show irreparable harm absent a stay where many of the remedial measures ordered by the court were already mandated by a new state

law). As Plaintiffs explained, "HHSC was always going to incur expenses providing competency restoration services to the Plaintiff class members and is thus not irreparably harmed by expending these same funds during this appeal." (Dkt. # 271 at 14.)

Third, the Court does not agree with Defendant that she will suffer irreparable harm to HHSC's sovereign interests in the absence of a stay. Although the Court's order may require HHSC to expend more funds than it might otherwise have in the next four years, it does not enjoin HHSC from "effectuating statutes enacted by representatives of its people," nor does it "displace" Defendant's sovereign "control over its own institutions and appropriations." (Dkt. # 268 at 12.) In fact, as previously described, the Court's order expressly refrains from displacing Defendant's control over HHSC, leaving the particular means of compliance up to HHSC. (Dkt. # 266 at , 47–49, 116–17.) Defendant's argument is also one that has been rejected by the Fifth Circuit. In Wyatt v. Aderholt, the government similarly argued that the district court's injunction "invade[d] a province of decision-making exclusively reserved for the state legislature" and interfered with the state's ability to allocate its own funds as it sees fit. 503 F.2d 1305, 1314 (5th Cir. 1974). The Fifth Circuit rejected this argument, finding it "unpersuasive" and stating that, while the state is "ordinarily free to choose among various social services competing for legislative attention and state funds," it is not

"free, for budgetary or any other reasons, to provide a social service in a manner which will result in the denial of individuals' constitutional rights." Id. at 1314–15. The Court finds the Fifth Circuit's reasoning persuasive and applicable here.

Based on the foregoing, the Court thus concludes that HHSC has not met its burden to show that it will suffer irreparable harm in the absence of a stay.

III. Substantial Harm to Other Parties

As to the third factor, Defendant contends that a stay will not substantially injure Plaintiffs because "it preserves rather than defeats the relief they obtained." (Dkt. # 268 at 12–13.) This argument is disingenuous and completely ignores the concrete and immense harm Plaintiffs are currently experiencing and will continue to experience in the absence of the Court's injunctive relief. The Court has already outlined these harms in detail in its final judgment, and it will not repeat them here. (See Dkt. # 266 at 101–04.) For the same reasons described in its judgment, the Court finds that the Plaintiff class will be substantially and irreparably harmed by the stay. (Id.); see Certain Named & Unnamed Non-Citizen Child. & Their Parents v. Texas, 448 U.S. 1327, 1327–28, 1332–34 (1980) (Powell, J., in chambers) (where district court entered injunction to remedy ongoing constitutional violations, recognizing the irreparable harm caused by delaying the injunctive relief); United States v. State of Tex., 523 F. Supp. 703, 733 (E.D. Tex. 1981) (holding that the individuals whose constitutional

rights were being violated "deserve[d] to be accorded the special help they need to overcome the [harm] imposed by past discrimination as quickly as possible," and concluding that "[p]ostponing the commencement of equitable relief for an additional year, while the case is considered by the Court of Appeals, would irreparably harm the plaintiffs and the students they represent"); see also BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab., 17 F.4th 604, 618 (5th Cir. 2021) ("[T]he loss of constitutional freedoms for even minimal periods of time ... unquestionably constitutes irreparable injury." (internal quotations and citation omitted)).

IV. Public Interest

Finally, as to the fourth factor, the Court holds that the public interest favors denying a stay. Although Defendant states that "[i]n cases involving state actors, the second and fourth factors are combined, as harm to the state is harm to the public," that is incorrect. As the Fifth Circuit has explained, these factors merge "'when the Government is the opposing party[,]' *i.e.*, when the government is not the party applying for a stay." U.S. Navy Seals 1-26 v. Biden, 27 F.4th 336, 353 (5th Cir. 2022) (quoting Nken, 556 U.S. at 435) (emphasis in original). Because Defendant is requesting a stay and Plaintiffs are the opposing party, "[t]he public interest factor is therefore distinct." Id.

Regardless, as detailed in the Court's final judgment, the public interest is always served by injunctions that protect constitutional rights, and by the same token, by denials of stays of injunctions that protect those rights. Jackson Women's Health Org. v. Currier, 760 F.3d 448, 458 n.9 (5th Cir. 2014). ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

V. Balance of Equities

Applying the Fifth Circuit's framework, the Court finds that a stay is not at all warranted in this case. Here, the Court's order simply requires HHSC to do what state law already mandates. It does not require immediate compliance but instead gives HHSC a period of four years to comply with the Court's class-wide deadline. Indeed, all Defendant is asked to do in the immediate term is lay out a schedule for the Court with interim benchmarks for Defendant's agency to meet over the next four years. This is not irreparable injury. Plaintiffs, on the other hand, are likely to suffer grave and irreparable harm in the absence of injunctive relief. Moreover, Defendant has failed to show a "substantial case on the merits," much less a strong showing that she is likely to succeed on the merits of her appeal, and the public interest favors a denial of the stay. The balance of equities thus unequivocally and heavily weighs in favor of denying the stay pending appeal.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Stay. (Dkt. # 268.)

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, August 20, 2026.

David Alan Ezra
Senior United States District Judge